Julian Burns King (Bar No. 298617)
Julian@KingSiegel.com
Elliot J. Siegel (Bar No. 286798)
Elliot@KingSiegel.com
**KING & SIEGEL LLP**
724 South Spring Street, Suite 201
Los Angeles, California 90014
tel:   (213) 465-4802
fax:   (213) 465-4803

Xavier Villegas (Bar No. 293232)
xavier@xaviervillegaslaw.com
**LAW OFFICE OF XAVIER VILLEGAS, APC**
2390 Las Posas Road, C168
Camarillo, CA 93010
tel:   (805) 250-7488
fax:   (805) 250-7499

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Paula Norton**, individually and on behalf of all similarly situated individuals,<br><br>                Plaintiff,<br><br>        vs.<br><br>**Strategic Staffing Solutions-S3, L.C.C.,** a Florida corporation; **Cynthia J. Pasky**, an individual; and **Does 1-100**;<br><br>                Defendants. | CASE NO. 3:23-cv-06648<br><br>Assigned to Hon. Jacqueline Scott Corley<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1) **Failure to Pay Minimum Wages for All Hours Worked;**<br>2) **Failure to Pay Overtime Wages;**<br>3) **Failure to Provide Meal Periods or Premium Pay in Lieu Thereof;**<br>4) **Failure to Provide Rest Periods or Premium Pay in Lieu Thereof;**<br>5) **Failure to Reimburse Necessary Business Expenses;**<br>6) **Failure to Provide and Maintain Accurate Payroll Records;** |

7)  **Failure to Pay Wages When Due;**
8)  **Illegal Noncompete Agreements;**
9)  **PAGA Penalties; and**
10)    **Violation of California's Unfair Competition Law**

**Jury Trial Requested**

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Paula Norton, on behalf of herself and all other similarly situated current and former employees ("Class Members"), by and through her counsel of record, alleges as follows against Strategic Staffing Solutions-S3, L.C.C. ("Strategic" or Defendants"):

**INTRODUCTION**

1.    Plaintiff, on behalf of herself and Class Members, seeks her stolen wages from Defendants in this Action.

2.    Strategic—one of the largest and most financially successful staffing firms in the country—systematically misclassified its recruiters as exempt employees to wring out additional profits at their expense.

3.    Strategy's hard-working recruiters worked longer than eight-hour shifts trying to keep up with Strategy's ever-expanding demands for production. By misclassifying Plaintiff and Class Members as exempt employees, Strategy avoided paying them earned minimum and overtime wages, provide complaint meal and rest periods, and meal and rest premium wages owed, among violations of other wage and hour rights and protections.

4.    Strategy knew it was misclassifying Plaintiff and Class Members because Strategy paid Plaintiff and Class Members an annual salary that was below twice California's state minimum wage and required its recruiters to keep detailed logs of their activities that clearly showed that Plaintiff and Class Members spent more than 50% of their time on activities that were not directly related to the management policies or general business operations of Defendants or Defendants' customers.

5.    This action seeks redress for Strategy's willful misclassification and violation of the Labor Code with respect to Plaintiff and Class Members.

**PARTIES**

6.    From the start of her employment through late 2022, Plaintiff Paula Norton ("Plaintiff") as a resident of Ventura County, California. Plaintiff was employed as a recruiter by Strategic Staffing Solutions-S3, L.C.C. from approximately March 16, 2022 to September 15, 2023 earning a $55,000 annual salary plus commission. Plaintiff was subject to the policies and practices described in this Complaint at all times during her employment.

1

7.     Defendant Strategic Staffing Solutions-S3, L.C.C. ("S3") is a Florida limited liability company that provides staffing and consulting services with 20 locations in the United States, providing services in 49 out of 50 states, and another four locations in Europe, providing services in 22 countries internationally. On information and belief, S3 has employed at least 100 hourly, non-exempt employees in a variety of capacities through the four years leading to this Complaint in its California operations. S3 is a foreign stock corporation registered and organized under the laws of Florida. S3's principal place of business is 225 Bush Street, Suite 1860, San Francisco, CA 94104.

8.     Defendant Cynthia J. Pasky ("Pasky") is an individual, she is the Chief Executive Officer of S3, and on information and belief is a resident of the State of Ohio. Since Pasky is a managing agent, director, and/or officer of S3 and because she violated or caused to be violated the regulations and statutes described in greater detail below, she is personally liable for the Labor Code violations and PAGA penalties complained of herein per Labor Code section 558.1.

9.     Plaintiff is not currently aware of the names and true identities of defendants Does 1-100. Plaintiff reserves the right to amend this complaint to allege their true names and capacities when this information is available. Each Doe defendant is responsible for the damages alleged pursuant to each of the causes of action asserted, either through its own conduct, or vicariously through the conduct of others. Further references in this complaint to any named Defendants includes the fictitiously named defendants.

10.    At all times alleged herein, each Defendant was an agent, servant, joint employer, employee, partner, and/or joint venture of every other Defendant and was acting within the scope of the Defendants' relationship. Moreover, the conduct of every Defendant was ratified by each other Defendant.

## VENUE AND JURISDICTION

11.    The court has jurisdiction over all causes of action in this complaint pursuant to Article VI, § 10 of the California Constitution. No federal question is at issue; Plaintiff relies solely on California statutes and law, including the Labor Code and Business & Professions Code. Because Defendants conduct substantial business in San Francisco County, Defendants are within

1    the jurisdiction of the court for service of process. Moreover, Business & Professions Code §

2    17204 provides that any person acting on their own behalf may bring an action in any court of

3    competent jurisdiction.

4          12.    Venue as to Defendants is proper in this Superior Court pursuant to California Code

5    of Civil Procedure § 395. The unlawful acts alleged have directly affected Plaintiff, and similarly

6    situated employees, in California and Defendants maintain and operate their California

7    headquarters in San Francisco County. Accordingly, this Court maintains appropriate jurisdiction

8    over this dispute.

9    **CLASS ACTION ALLEGATIONS**

10    *Defendants Misclassifies its Recruiters as Exempt Employees*

11          13.    Plaintiff was employed by Defendants as a recruiter. Defendants misclassified

12    Plaintiff and similarly situated Class Members as exempt to avoid complying with minimum wage,

13    overtime, meal and rest periods, and other wage and hour laws and protections.

14          14.    However, Plaintiff and the Class were *not* properly classified as exempt because they

15    were paid less than twice the state minimum wage.[1] Plaintiff and Class Members were paid a base

16    salary that was consistently below two times the state minimum wage in each year relevant to this

17    Complaint.[2]

18          15.    Class Members also did not spend more than 50% of their time on work directly

19    related to the management policies or general business operations of Defendants or Defendants'

20    customers. *See* Code Regs. tit. 8, § 11040.

21          16.    As a recruiter, Plaintiff and Class Members are tasked with matching job seeking

22    candidates (their "consultants") with employers (their "customers") for a fee.

23          17.    Plaintiff and Class Members were given detailed and onerous requirements on how

24    to place candidates with potential employers and track those placements with the objective of

25

26    [1] For the administrative exemption to apply to an employee, "Such employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-

27    time employment is defined in Labor Code Section 515(c) as 40 hours per week." *See* Code Regs. tit. 8, § 11040(1)(A)(2)(g) (defining the "Administrative Exemption").

28    [2] Plaintiff and the Class were also paid commissions for their work in placing candidates.

turning placed candidates into hired employees by employers. In turn Defendants required Plaintiff and Class Members to keep up with an increasing demand to place candidates and/or convert candidates into hires.

18.    All told, Plaintiff and Class Members spent five or more hours of every shift performing the aforementioned activities.

19.    As such, Plaintiff and Class Members were not properly qualified as exempt under the administrative exemption and were subject to the IWC Wage Orders and other applicable labor statutes and regulations that govern wages and working conditions for non-exempt employees.

20.    After a successful matching, Class Members were paid additional, incentive compensation on a complicated schedule whereby they earned a specific "multiplier" amount that was multiplied by the "net" hourly rate to be paid to Defendants, with the multiplier increasing or decreasing based on the range of the net hourly rate. However, Class Members were only paid this incentive compensation if the placement worked a certain number of minimum hours and Defendants reserved the right to withhold incentive compensation in "grey areas" or where they felt insufficient documentation was maintained by a Class Member.

21.    Once a consultant was placed with a customer then Plaintiff and Class Members were required to document the engagement between customer and consultant on its internal Applicant Tracking System and perform a variety of administrative tasks as part of their job (the "Engagement Tasks"). Defendants further operated under an express policy that warned Plaintiff and Class Members that "[w]ithout such documentation, commission for a placement may not be awarded."

22.    This incentive compensation is *not* a true commission.

23.    In order for this payment to be considered a commission, it "must be a percent of the price of the product or service." *Ramirez v. Yosemite Water Co.*, 20 Cal.4th 785, 804 (Cal. 1999) ("First, the employees must be involved principally in selling a product or service, not making the product or rendering the service. Second, the amount of their compensation must be a percent of the price of the product or service."); *see also Harris v. Investor's Business Daily, Inc.*, 138

Cal.App.4th 28, 37 (Cal. Ct. App. 2006) ("There is no dispute that appellants sold a product — subscriptions to IBD. Whether all or part of their compensation may be characterized as a commission depends on whether they were paid on the basis of a percentage of the price of subscriptions sold.").

24.     Defendants did not compensate Plaintiff and Class Members based on a percentage of the amount earned by Defendants, and instead paid them alleged commission based on a pre-determined amount *times* the differential between Defendants' cost and Defendants' customer payment rates. Thus, Plaintiff and Class Members are essentially paid a floating rate based on the potential delta earned by Defendants on hourly placement. Further, the above calculation is also not a percentage at all because it is determined based on preset multipliers that are applied against Defendants net revenue on their consultants' hour rates.

25.     Defendants knew that Plaintiff and Class Members were misclassified as they paid them less than twice the California state minimum wage; and they did not spend more than 50% of their time on work directly related to the management policies or general business operations of Defendants or Defendants' customers because Defendants tracked Plaintiff's and Class Members' time through an internal database, meetings and updates, and other time reporting methods; and did not pay them on commission.

26.     As a result of the misclassification, Defendants failed to pay Plaintiff and Class members minimum and overtime wages for all hours worked and did not authorize or permit Plaintiff and Class Members to take 30-minute meal periods or provide paid 10-minute rest periods as required by law, among other wage and hour violations.

27.     Accordingly, Plaintiff brings this action on behalf of herself and as a class action on behalf of the following defined Class:

28.     **<u>Non-Exempt Employee Class</u>:**

> *All non-exempt persons who worked at least one 3.5-hour shift for Defendants, whether as a direct-hire or agency employee, in the State of California from the period of four years prior to the filing of the Action and the date of trial (the "Non- Exempt Class").*

29. **Exempt Employee Class**:

*All persons who worked at least one 3.5-hour shift for Defendants and were classified as an exempt employee in the role of "sourcer," "consultant," or "recruiter" in the State of California from the period of four years prior to the filing of the Action and the date of trial (the "Exempt Class").*

30. Common methods of proof exist for determining these issues on a class-wide basis, including but not limited to, Defendants' employment records, payroll records, timesheets, policies, and disciplinary records.

31. **Numerosity.** Plaintiff is informed and believes that, during the class period, at least 50 Class Members have been employed as non-exempt employees by Defendants within the state of California. The number of Class Members is sufficiently numerous such that joinder of all members is impossible or impracticable.

32. **Typicality.** Plaintiff's claims are typical of all Class Members. Plaintiff, like all other Class Members, was subjected to the policies and practices set forth above. Plaintiff's job duties were typical of Class Members in all relevant respects.

33. **Adequacy.** There are no material conflicts between the claims of the representative Plaintiff and Class Members that would make class certification inappropriate. Plaintiff understands his obligation to inform the Court of any relationship, conflicts, or differences with any Class Member. Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is invested in redressing Defendants' illegal practices on behalf of all Class Members. Moreover, Plaintiff has retained competent counsel experienced in both class action and employment litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement, and will vigorously assert the claims of all Class Members. Plaintiff has incurred, and will continue to incur, costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

34. **Existence and Predominance of Common Issues.** Common questions of law and

fact exist as to all Class Members and predominate over issues affecting individual Class Members, including, but not limited to:

    a.  Whether Defendants have a common policy and/or practice of misclassifying non-exempt employees as exempt;

    b.  Whether Defendants have a common policy and/or practice of misclassifying non-exempt employees as exempt under an administrative exemption;

    c.  Whether Defendants have a common policy and/or practice of misclassifying non-exempt employees as exempt under an executive exemption;

    d.  Whether Defendants have a common policy and/or practice of misclassifying non-exempt employees as exempt under a professional exemption;

    e.  Whether Defendants have a common policy and/or practice of misclassifying non-exempt employees as exempt under a salary exemption;

    f.  Whether Defendants have a common policy and/or practice employing recruiters, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they do not perform work directly related to management policies or general business operations of Defendant or Defendant's customers;

    g.  Whether Defendants have a common policy and/or practice employing recruiters, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they do not customarily and regularly exercise discretion and independent judgment;

    h.  Whether Defendants have a common policy and/or practice employing recruiters, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they do not regularly and directly assist a proprietor, or an employee employed in a bona fide executive or administrative capacity;

    i.  Whether Defendants have a common policy and/or practice employing

recruiters, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they do not perform under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge;

j.   Whether Defendants have a common policy and/or practice employing recruiters, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they are not primarily engaged in duties that meet the tests of the exemption;

k.   Whether Defendants incentive payment structure is a commission;

l.   Whether Defendants have a common policy and/or practice employing recruiters, and/or other employees classified by Defendants as exempt, who are misclassified as exempt because they did not earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment as full-time employment is defined by Labor Code Section 515(c) as 40 hours per week;

m.   Whether Defendants have a common policy and/or practice of failing to accurately record non-exempt employees' time;

n.   Whether Defendants have a common policy and/or practice of failing to accurately compensate non-exempt employees for all time worked;

o.   Whether Defendants have a common policy and/or practice of rounding non-exempt employees' time records to the detriment of those employees;

p.   Whether Defendants unlawfully and/or willfully failed to compensate Plaintiff and Class Members at a minimum wage for all hours worked as a result of its rounding policies;

q.   Whether Defendants unlawfully required Plaintiff and Class Members to remain under Defendants' control and direction while off-the-clock;

r.   Whether Defendants unlawfully and/or willfully failed to compensate Plaintiff

and Class Members at a minimum wage for all hours worked;

s.  Whether Defendants unlawfully and/or willfully failed to compensate Plaintiff and Class Members required overtime wages;

t.  Whether Defendants have a common policy and/or practice by which they implemented an "auto-deduct" of 30 minutes or more for employees for meal periods regardless of whether employees took a meal period or its actual length;

u.  Whether Defendants' auto-deduct policy and practice unlawfully deprives employees of wages earned;

v.  Whether Defendants have a common policy and/or practice of depriving Plaintiff and Class Members of compliant, off-duty meal and/or rest periods;

w.  Whether Defendants unlawfully and/or willfully deprived Plaintiff and Class Members of compliant, off-duty meal and/or rest periods;

x.  Whether Defendants paid Plaintiff and Class Members all required premium wages for non-compliant meal and/or rest periods;

y.  Whether Defendants have a common policy and/or practice of failing to pay employees wages earned in violation of Labor Code section 227.3;

z.  Whether Defendants unlawfully and/or willfully deprived Plaintiff and Class Members of earned wages in violation of Labor Code section 227.3;

aa. Whether Defendants have a common policy and/or practice of failing to pay employees earned pay time off;

bb. Whether Defendants unlawfully and/or willfully deprived Plaintiff and Class Members of earned paid time off wages;

cc. Whether Defendants have a common policy and/or practice of failing to pay employees earned vacation wages;

dd. Whether Defendants unlawfully and/or willfully deprived Plaintiff and Class Members of earned vacation wages;

ee. Whether Defendants operated under a common unlawful policy and/or practice

of requiring employees to forfeit their earned vacation wages;

ff. Whether Defendants have a common policy and/or practice of failing to reimburse employees for necessary business expenditures;

gg. Whether Defendants have a common policy and/or practice of failing to maintain accurate payroll records in the State of California;

hh. Whether Defendants unlawfully and/or willfully failed to maintain accurate payroll records in the State of California;

ii. Whether Defendants have a policy and/or practice of failing to provide accurate wage statements reflecting hours worked and wages earned to Plaintiff and Class Members;

jj. Whether Defendants unlawfully and/or willfully failed to provide accurate wage statements reflecting hours worked and wages earned to Plaintiff and Class Members;

kk. Whether Defendants have a policy and/or practice of failing to timely pay wages during employment in violation of Labor Code §§ 204, 210.

ll. Whether Defendants have a policy and/or practice of failing to pay Plaintiff and Class Members final wages owed upon termination;

mm.  Whether Defendants unlawfully and/or willfully failed to promptly pay compensation due to Plaintiff and Class Members upon termination of employment in violation of Labor Code §§ 201, 202, and 203;

nn. Whether Plaintiff and Class Members sustained damages as a result of any of the aforementioned violations, and, if so, the proper measure of those damages, including interest, penalties, costs, attorneys' fees, and equitable relief;

oo. Whether Defendants violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, by violating the above provisions of law; and

pp. Whether Defendants violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, by treating Plaintiff and Class Members unfairly by

1  depriving them of meal and/or rest periods, failing to provide them with

2  compensation in lieu of meal and/or rest periods, failing to pay all regular and

3  overtime wages earned, failing to pay wages upon termination, failing to furnish

4  accurate and timely itemized wage statements upon payment of wages, and

5  failing to pay all compensation due upon discharge.

6        35.    **Superiority.** A class action is superior to other available means for the fair and

7  efficient adjudication of this dispute. The damages suffered by individual Class Members, while

8  substantial, are small compared to the burden and expense of individual prosecution of the

9  complex and expensive litigation necessary to address Defendants' conduct. Even if Class

10  Members themselves could afford individual litigation, the court system would be overwhelmed

11  by individual lawsuits if all Class Members sought redress. In addition, individualized litigation

12  increases the delay and expense to all parties and to the court system resulting from the complex

13  legal and factual issues of this case. Individualized litigation also presents a potential for

14  inconsistent or contradictory judgments. By contrast, the class action device presents far fewer

15  management difficulties; it allows the hearing of claims which might otherwise go unaddressed

16  because of the relative expense of bringing individual lawsuits, and it provides the benefits of single

17  adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff

18  contemplates providing individual notice to members of the Class through Defendants' records.

19                              **CAUSES OF ACTION**

20                            **FIRST CAUSE OF ACTION**

21        *California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, and 1198*

22              *Failure to Pay Minimum Wages for All Hours Worked*

23                    **(Plaintiff and Classes Against Defendants)**

24        36.    Plaintiff repeats and incorporates by reference all allegations contained in the

25  preceding paragraphs as if fully set forth herein.

26        37.    California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 provide that

27  payment of a wage less than the minimum wage as set by statute, commission, or by the general

28

prevailing rate is unlawful. Compensable work time is defined in Wage Order No. 4 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code. Regs. tit. 8, § 11040(2)(K) (defining "Hours Worked").

38.     Plaintiff and Class Members were improperly classified exempt employees as they were (a) paid less than twice the minimum wage, (2) did not spend more than 50% of their time on work directly related to the management policies or general business operations of Defendants or Defendants' customers, or (c) a combination thereof.

39.     As such, Plaintiff and Class Members were improperly classified as exempt employees. As non-exempt employees, Plaintiff and Class Members were required to be paid for all hours work in addition to the base salary assigned by Defendants.

40.     Plaintiff and Class Members routinely spent multiple hours per day on non-management policies or non-general business operations tasks. Defendants did not adequately compensate Plaintiff and Class Members for their time spent on non-management or non-general business operations tasks despite Defendants' knowledge that Plaintiffs were engaged in performing numerous non-exempt tasks.

41.     By virtue of being misclassified, Defendants' meal period policies also resulted in Plaintiff and Class Members working during their putative meal periods, but they were not paid regular or premium wages owed for this time based on such time either not being recorded as time worked or due to Defendants' misclassification policy.

42.     By virtue of being misclassified, Defendants' rest period policies also resulted in Plaintiff and Class Members working during their putative rest periods, but they were not paid premium wages for this time based on such time either not being recorded as time worked or due to Defendants' misclassification policy.

43.     As an independent and separate violation of the California mandates regarding prompt and full payment of earned wages, Defendants operated an illegal vacation pay policy through the period in this Complaint. "It is the public policy of the State of California that vacation

pay is protected." DLSE Op. Ltr. (Sept. 24, 1990) at p. 3. More specifically, "[i]t is established that vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed." *Suastez v. Plastic Dress-Up Co.*, 31 Cal.3d 774, 779 (1982) (citing *People v. Bishop*, 56 Cal.App.3d 8, 11 (1976)).[3]

44.     This policy is encapsulated by Labor Code section 227.3, which provides that, "whenever a contract of employment or employer policy *provides for paid vacations*, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with [the employee's] contract of employment or employer policy respecting eligibility or time served." Lab. Code § 227.3. Because vacation pay qualifies as vested wages, "an employment contract or employer policy *shall not* provide for forfeiture of vested vacation time upon termination." *Id.* In interpreting these provisions, the Labor Commissioner and courts are directed to "apply the principles of equity and fairness."

45.     Accordingly, the Labor Commissioner has repeatedly found that "California law *requires* that vacation be earned *day-by-day* and that it vest in that manner as well." DLSE Op. Ltr. (Aug. 18, 1993) (emphasis original). "The acceptable methods of granting vacation *must* be based on a proportionate accrual and *cannot have a forfeiture component*." DLSE Op. Ltr. (Mar. 16, 1987) (emphasis added).

46.     In interpreting section 227.3, the court in *Suastez* observed that employers may come up with new and creative ways of depriving employees of earned vacation wages. In light of this concern, "the 'frustration of purpose' doctrine can also afford relief" to employees whose employers impose onerous or inequitable conditions on an employee's right to earned vacation time. In general, the *Suastez* court noted, "California courts have already recognized that the principles of equity and justice weight in favor of granting relief to employees who are denied payment for earned vacation pay." *Suastez*, 31 Cal.3d at 783–84.

---

[3]  "A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees and the continuance of harmonious relations between employer and employee." *Suastez*, 31 Cal.3d at 779 (quoting *In re Wil-Low Cafeterias*, 111 F.2d 429 (2d Cir. 1940)).

47.     Applying section 227.3 and *Suastez*, the Labor Commissioner has continually rejected employers' efforts to avoid paying employees for earned vacation wages. For instance, the DLSE opined on a so-called "unlimited" vacation policy in 1987. DLSE Op. Ltr. May 11, 1987. The employer claimed that because it provided "unlimited vacation" but required approval for amounts over four weeks per year, no vacation "vested" within the meaning of section 227.3. The Labor Commissioner disagreed. "Managers are told they have a basic entitlement of four weeks and more on approval. To approve your policy, as written, would make *Suastez* a dead letter since every employer would tell employees they have unlimited vacation (though none is accruing or vesting), but they can only take more than one or two or three weeks with approval."

48.     Defendants implemented an express policy and practice whereby they combined "Vacation & Sick/Personal Time…into one: Paid Time Off" policy and practice resulting in a so-called "unlimited vacation" policy that, on information and belief, denied earned wages owed to Plaintiff and Class Members: "Under our New S3 Paid Time Off Policy, effective February 1, 2023, you'll no longer need to worry about accruing vacation time, nor will you need to worry about previous sick day limits.").

49.     When this "unlimited" policy was implemented, Defendants forced Class Members to *forfeit* their accrued and vested PTO, rather than paying it out as required.

50.     Moreover, prior to the implementation of this "unlimited" policy, during the period when Defendants had a "traditional" earned vacation policy, Defendants *still* forced employees to forfeit accrued and vested PTO over time by illegally limiting the amount of carryover under that policy.

51.     Under that policy, "[u]pon initial eligibility the employee is entitled to 10 days (80 hours) of paid vacation for their first year, granted quarterly at the rate of 2 ½ days (20 hours)/quarter."

52.     However, Defendants' unlawful vacation policy expressly prevented employees from carrying over PTO and required them to forfeit excess balance: "[i]n the event that available Paid Vacation is not used by the end of the calendar year, employees may carry unused time

forward to the next calendar year to a maximum of 5 days (40 hours). Any year end balance over 40 hours will be forfeited."

53. Such policy is illegal: the "DLSE has repeatedly found vacation policies which provide that all vacation must be taken in the year it is earned (or in a very limited period following the accrual period) are unfair and will not be enforced by the Division." DIR, Vacation Policy FAQ, *available at* https://www.dir.ca.gov/dlse/faq_vacation.htm.

54. Defendants operated a policy and practice that denied Plaintiff and Class Members wages for earned paid time off.

55. Defendants operated a policy and practice that denied Plaintiff and Class Members wages for earned vacation hours.

56. Defendants knew or should have known that Plaintiff and Class Members were not being adequately and/or fully compensated for all time as required by law.

57. This conduct blatantly and willfully violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

58. Pursuant to California Labor Code section 1194.2, Plaintiff and Class Members are entitled to recover the amount of underpaid wages, plus liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon, along with other applicable penalties.[4]

## SECOND CAUSE OF ACTION

### *California Labor Code §§ 510 and 1198*

### *Failure to Pay Overtime Wages*

### (Plaintiff and Classes Against Defendants)

59. Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

60. California Labor Code sections 510, 1198, and Industrial Wage Order No. 4 provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked

---

[4] Defendants are liable for civil penalties in the amount of $100 per initial violation and $250 for each subsequent pay period, plus injunctive relief and reasonable attorney's fees and costs. Lab. Code § 1197.1.

by the person on a daily or weekly basis.

61.     Specifically, Industrial Wage Order No. 4 provides that Defendants were required to pay Plaintiff and Class Members working more than eight hours in a day or more than forty hours in a workweek, at the rate of time and one-half (1½) for all hours worked in excess of eight hours in a day or more than forty hours in a workweek.

62.     Throughout the Class Period, Class Members were not paid overtime premiums for all of the hours they worked in excess of eight hours in a day, in excess of twelve hours in a day, in excess of eight hours on the seventh consecutive day of work in a workweek, and/or in excess of 40 hours in a week because all hours worked were not recorded as compensable time as a direct consequence of Defendants' policies and practices, including without limitation its misclassification of non-exempt employees as exempt.

63.     Defendants knew or should have known that their policies and practices forced Class Members to work in excess of eight hours per workday and/or 40 hours per workweek without being compensated for all hours worked. Because Class Members worked shifts of more than eight hours a day or forty hours a week on the clock, some of this work qualified for overtime premium pay. Therefore, Class Members were not paid overtime wages at the correct rate of pay for all of the overtime hours worked.

64.     Pursuant to Labor Code section 1194, Class Members are entitled to recover their unpaid overtime compensation, as well as interest, costs, and attorneys' fees, and applicable civil penalties.

### THIRD CAUSE OF ACTION

*California Labor Code §§ 226.7, 512(a), and 1198*

*Failure to Provide Meal Periods or Premium Pay in Lieu Thereof*

**(Plaintiff and Classes Against Defendants)**

65.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

66.     Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five hours per day without providing the

FIRST AMENDED CLASS ACTION COMPLAINT

employee with a meal period of not less than thirty minutes, except that if the total work period per day of the employee is not more than six hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-104 (2012). An employee is also entitled to a second meal period for shifts in which the employee works in excess of ten hours.

67.    Labor Code section 226.7, 512(a), and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC, including Industrial Wage Order No. 16. "An off-duty meal period, therefore, is one in which the employee is relieved of all duty during the 30-minute meal period . . . an employer's obligation is to provide an off-duty meal period: an uninterrupted 30–minute period during which the employee is relieved of all duty." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1035 (2012). The employee must also be "free to leave the premises." *Id.* at 1036.

68.    By virtue of its misclassification policies and practices, Defendants also failed to relieve Plaintiff and Class Members from all duty when on their meal period by requiring Plaintiff and Class Members to comply with an unlawful and systematic policy and practice whereby Defendants required and/or pressured Plaintiff and Class Members to prioritize completing assigned work by working through their meal periods, or by interrupting their meal periods, and/or by taking them late. Numerous, Class Members, including Plaintiff, were required take late meal periods, interrupt them, and/or remain on duty due to the combination of Defendants' misclassification practices and policies.

69.    Defendants did not pay Plaintiff and Class Members all meal period premium wages when meal periods were missed, interrupted by work, and taken late, in violation of Wage Order No. 4 and Labor Code sections 226.7 and 512(a).

70.    Defendants' conduct violates Wage Order No. 4 and Labor Code sections 512(a), 226.7, and 1198. Plaintiff and Class Members are entitled to one additional hour of pay at their regular rate of compensation for each workday that a compliant meal period was not provided, and

1  interest thereon, along with applicable civil penalties.

2  **FOURTH CAUSE OF ACTION**

3  ***California Labor Code §§ 226.7 and 1198***

4  ***Failure to Provide Rest Periods or Premium Pay in Lieu Thereof***

5  **(Plaintiff and Classes Against Defendants)**

6      71.    Plaintiff repeats and incorporates by reference all allegations contained in the

7  preceding paragraphs as if fully set forth herein.

8      72.    At all times relevant to this complaint, Defendants knew it was obligated to provide

9  compliant rest breaks to its non-exempt employees pursuant to Labor Code § 226.7.

10      73.    Labor Code § 226.7 provides:

11      (a)    No employer shall require any employee to work during any meal

12  or rest period mandated by an applicable order of the Industrial Welfare

13  Commission.

14      (b)    If any employer fails to provide an employee a meal period or rest

15  period in accordance with an applicable order of the Industrial Welfare

16  Commission, the employer shall pay the employee one additional hour of

17  pay at the employee's regular rate of compensation for each work day that

18  the meal or rest period is not provided.

19      74.    Labor Code § 226.7, 512(a), and 1198 provide that no employer shall require an

20  employee to work during any rest or meal period mandated by an applicable order of the IWC,

21  including Wage Order No. 4. Employers must authorize and permit employees to be relieved of

22  all duty during their rest and meal periods: "A rest period, in short, must be a period of rest."[5]

23  *Augustus v. ABM Sec. Servs., Inc.*, 385 P.3d 823, 834 (2016).

24      75.    Wage Order No. 4 further mandates, in pertinent part, "Authorized rest period time

25

26  [5] Employees must also be free to leave the premises. *Augustus*, 2 Cal. 5th at 270; *see also* Department of Industrial Relations, "Rest Periods/Lactation Accommodations," *available at*

27  *https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm* ("Q. Can my employer require that I stay on the work premises during my rest period? A. No, your employer cannot impose any restraints not inherent in the

28  rest period requirement itself.")

shall be counted as hours worked for which there shall be no deduction from wages." Cal. Code. Regs. tit. 8, § 11090(12)(A) ("Rest Periods").

76.     Employees must also be free to leave the employer's premises during their rest period. *See id.* at 270 ("In the context of a 10-minute break that employers must provide during the work period, a broad and intrusive degree of control exists when an employer requires employees to remain on call and respond during breaks. An employee on call cannot take a brief walk—five minutes out, five minutes back—if at the farthest extent of the walk he or she is not in a position to respond. Employees similarly cannot use their 10 minutes to take care of other personal matters that require truly uninterrupted time."); *see also* Department of Industrial Relations, "Rest Periods," *available at https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm* ("Q. Can my employer require that I stay on the work premises during my rest period? A. No, your employer cannot impose any restraints not inherent in the rest period requirement itself.").

77.     By virtue of its misclassification, Defendants failed to relieve Plaintiff and Class Members from all duty when on their rest period by requiring Plaintiff and Class Members to comply with an unlawful and systematic policy and practice that interfered with their ability to take compliant rest periods whereby they required and/or pressured Plaintiff and Class Members to prioritize completing assigned work by working through their rest periods, or by interrupting their rest periods, and/or by taking them late.

78.     As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff and Class Members have sustained damages, including lost compensation resulting from missed or non-compliant rest periods, in an amount to be established at trial.

79.     Pursuant to Wage Order No. 4 and Labor Code § 226.7(b), Plaintiff and Class Members are entitled to recover from Defendants an additional hour of pay at their regular rates of pay for each shift that a compliant rest period was not provided. Defendant was aware that its actions were a violation of applicable law but consistently refused to pay premium pay as required by law.

## FIFTH CAUSE OF ACTION

### *California Labor Code § 2802*

### *Failure to Reimburse Necessary Business Expenses*

### (Plaintiff and Classes Against Defendants)

80.    Plaintiff repeats and incorporates by reference every allegation in this complaint as if fully set forth herein.

81.    Labor Code section 2802 provides that "[a]n employer shall indemnify his or his employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or his duties, or of his or his obedience to the directions of the employer." Lab. Code § 2802.

82.    Defendants failed to reimburse Plaintiff and Class Members for all business-related expenses that were necessary to perform their job, including but not limited to requiring Plaintiff and the Class to use of their personal cell phones for Defendants' business. *See Cochran v. Schwan's Home Services, Inc.*, 228 Cal. App. 4th 1137 (2014).

83.    By unlawfully failing to pay Plaintiff and Class Members, Defendants are liable for the costs Plaintiff and Class Members incurred plus attorneys' fees and costs. Lab. Code § 2802.

## SIXTH CAUSE OF ACTION

### *California Labor Code §§ 226(a)/(f)/(h), 226.3, and 1174(d)*

### *Failure to Provide and Maintain Accurate Payroll Records*

### (Plaintiff and Classes Against Defendants)

84.    Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

85.    Labor Code § 226 requires employers to furnish employees with an accurate, itemized statement in writing showing, among other things, (1) gross wages earned; (2) total hours worked by the employee (for hourly-paid, non-exempt employees); (3) net wages earned; and (4) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

86.    At all times relevant to this complaint, Defendants' failure to pay premium wages

for missed meal and rest periods and minimum and/or overtime wages for work-off-the-clock and/or rounded time rendered Class Members' wage statements inaccurate by failing to accurately reflect gross and net wages earned.

87.    <u>Injury.</u> Defendants knowingly and intentionally failed to comply with Labor Code § 226, causing injury and damages to Plaintiff and Class Members. Plaintiff and all those similarly situated were injured by these failures because, among other things, they were confused about whether they were paid properly and/or they were misinformed about how much compensation was owed.

88.    <u>Relief.</u> Labor Code § 226(e)(1) provides that an employee suffering injury as a result of not being provided with an accurate itemized wage statement is entitled to recover the greater of all actual damages suffered or fifty ($50) dollars for the initial violation and one hundred ($100) dollars for each subsequent violation, up to $4,000. Pursuant to Labor Code §§ 226(e) and (g), Plaintiff and all others similarly situated are entitled to injunctive relief to ensure Defendants' compliance with Labor Code § 226, as well as attorney's fees and costs of suit.

## <u>SEVENTH CAUSE OF ACTION</u>

### *California Labor Code §§ 201, 202, 203, 204, 204c, 210*

### **Failure to Pay Wages When Due**

### **(Plaintiff and Classes Against Defendants)**

89.    Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

90.    Labor Code § 201 provides, in relevant part, that:

> If an employee not having a written contract for a definite period quits his
> or her employment, his or her wages[6] shall become due and payable not later

---

[6] Labor Code § 200 defines "wages" as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." "Labor" is defined as "labor, work, or service . . . if the labor to be paid for is performed personally by the person demanding payment." Additionally, in *Naranjo v. Spectrum Security Services, Inc.,* 13 Cal. 5th 93 (2022), the California Supreme Court recently held that failure to pay premiums for violating the California Labor Code's meal and rest break provisions constitutes "wages" for purposes of waiting time penalties.

than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of quitting.

91.     Defendants do not include definite periods of service in their contracts of employment for Class Members employed at their California plant(s). Plaintiff's contract of employment did not include a definite term.

92.     Labor Code § 203 provides:

If an employer willfully fails to pay, without abatement or reduction, in accordance with § 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

93.     Labor Code § 204 provides that all wages, other than those mentioned in Section 201 and 202, are due and payable twice during each calendar month, on days designated in advance by the employer as regular paydays. "Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month. However, salaries of executive, administrative, and professional employees of employers covered by the Fair Labor Standards Act, as set forth pursuant to Section 13(a)(1)(a)(1) of the Fair Labor Standards Act . . . may be paid once a month on or before the 26th day of the month during which

FIRST AMENDED CLASS ACTION COMPLAINT

the labor was performed if the entire month's salaries, including the unearned portion between the date of payment and the last day of the month, are paid at that time." Lab. Code § 204.

94. <u>Failure to Timely Pay Wages Due.</u> As set forth above, Defendants failed to timely pay the minimum wages, overtime wages, and meal and rest period premiums resulting from its deficient timekeeping and meal and rest period policies and its practice of misclassifying employees.

95. As an independent and separate basis for this claim, Defendants also failed to timely pay Class Members according to Labor Code § 204 by failing to pay their earned and accrued wages. Defendants paid Class Members on "arrears" with payments for the prior month being paid as late as 15 days after the amounts were earned and work performed: "S3 Recruiters receive a base salary established pursuant to their individual employment agreement, paid semi-monthly on the 15th and last day of each month. Salaries are paid one payroll period in arrears. For example, compensation for the period Jan 1 – Jan 15 will be paid on the Jan 31 paycheck; compensation for the period Jan 16 – Jan 31 will be paid on the Feb 15 paycheck, etc."[7]

96. <u>Relief.</u> Defendants' failure to pay Plaintiff and those Class Members wages on their regularly scheduled pay dates subjects Defends to civil penalties in the amount of $100 per employee per initial violation and $200 per employee for every subsequent violation of Labor Code § 204 pursuant to Labor Code § 210.

97. <u>Failure to Pay Upon Termination.</u> Plaintiff and many Class Members have left Defendants' employ during the Class Period. As discussed above, Defendants knowingly failed to pay Plaintiff and Class Members all earned wages upon termination. Instead, Defendants willfully and intentionally refused to pay the earned rest and/or meal period premiums and earned minimum/overtime wages as alleged herein to Plaintiff and Class Members in violation of Labor Code §§ 201 and 202.

98. <u>Relief.</u> Defendants' failure to pay Plaintiff and those Class Members who are no

---

[7] Defendants cannot rely on Labor Code § 204c to avoid liability as this payment structure also fails to comply with that safe harbor as payments were not made within seven days of their monthly payroll period.

longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employment, violates Labor Code §§ 201 and 202. Plaintiff and Class Members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a 30-day maximum penalty under Labor Code § 203.

## EIGHTH CAUSE OF ACTION

### *Cal. Bus. & Prof. Code §§16600, 16600.1, 16600.5*

### *and Labor Code Section 432.5*

### Illegal Noncompete Agreements

### (Plaintiff and Classes Against Defendants)

99.     Plaintiff incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

100.    "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600.

101.    As of January 1, 2024, under Section 16600.1, it is illegal for an employer "to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement" Cal. Bus. & Prof. Code § 16600.1.

102.    Further, employers are required under Section 16600.1 to provide a curative notice "in the form of a written individualized communication" to employees employed after January 1, 2022, whose contracts include a barred non-compete clause or agreement.

103.    All noncompete clauses or agreements covered under Section 16600-16600.5 are void and an impacted "employee, former employee, or prospective employee may bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both." Cal. Bus. & Prof. Code § 16600.5. A prevailing employee is also entitled to recover reasonable attorney's fees and costs. *Id*.

104.    Separately, under Labor Code § 432.5, "[n]o employer, or agent, manager,

superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law." Cal. Lab. Code § 432.5.

105.    Defendants required their employees to enter into employment contracts and/or required as a condition of employment that employees agree to refrain, during their employment or for a period of one year after their separation, from soliciting, advising, or facilitating any other employee of Defendant from leaving their employment, accepting employment with others, or providing services to others.

106.    Defendants also required their employees to enter into employment contracts and/or required as a condition of employment that employees agree to refrain, during their employment or for a period of one year after their separation, from soliciting business from or providing any consulting services to any of Defendants' customers.

107.    These requirements violate Cal. Bus. & Prof. Code § 16600 and are not covered by any exemption to that chapter.

108.    Defendants also failed to provide a curative notice "in the form of a written individualized communication" to employees employed after January 1, 2022 in which the notified employees that these requirements were void.

109.    Defendants' actions violated Cal. Bus. & Prof. Code §§ 16600, 16600.1, and 16600.5. Class Members are entitled to injunctive relief and actual damages, and legal fees to remedy these violations.

## NINTH CAUSE OF ACTION

### *California Labor Code §§ 558, 2698, et seq.*

### *Private Attorneys General Act ("PAGA") Penalties*

### (Plaintiff and Classes Against Defendants)

110.    Plaintiff incorporates by reference all the allegations of this Complaint as though fully set forth herein.

111.    <u>Entitlement to Penalties.</u> Under the California Private Attorneys General Act

("PAGA"), Labor Code § 2698, *et seq.*, an aggrieved employee may bring a representative action as a private attorney general, on behalf of herself and other current or former employees as well as the general public, to recover penalties for an employer's violations of the Labor Code and IWC Wage Orders. These penalties are in addition to any other relief available under the Labor Code and are allocated seventy-five percent to the Labor and Workforce Development Agency and twenty-five percent to the affected employees.

112.    These penalties may be "stacked" separately for each of Defendants' violations of the Labor Code. *See, e.g.*, *Hernandez v. Towne Park, Ltd.*, No. CV 12-02972, 2012 WL 2373372, at *17 n.77 (C.D. Cal. June 22, 2012) ("[F]ederal courts applying California law have concluded that stacking is appropriate."); *see also O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2016 WL 3548370, at *7 (N.D. Cal. June 30, 2016) ("Finally, Plaintiff ignore the potential for stacking of PAGA penalties related to wage-and-hour claims other than the gratuities and expense reimbursement claim, i.e., meal and rest breaks, minimum wage and overtime, and workers' compensation.").

113.    Plaintiff is an "aggrieved employee" under PAGA, as she was employed by Defendants during the applicable statutory period and suffered the Labor Code violations alleged herein. Accordingly, she seeks to recover, on behalf of herself and all other current and former aggrieved employees of Defendants, the civil penalties provided by PAGA, including civil penalties for Defendants' violations of Labor Code §§ 201, 202, 203, 204, 210, 226, 226.3, 226.7, 233, 246, 248, 248.2, 248.5, 432.5, 510, 512, 558, 1182.12, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 1401, 2802, 2698 *et seq.*, and Industrial Wage Order No. 4, plus reasonable attorneys' fees and costs.

114.    <u>Representative Action.</u> Plaintiff seeks to recover the PAGA civil penalties through a representative action as permitted by PAGA and the California Supreme Court in *Arias v. Superior Court*, 46 Cal. 4th 969 (2009). Therefore, class certification of the PAGA claims is not required, but Plaintiff may choose to seek certification of the PAGA claims.

115.    Labor Code § 2699(a), which is part of PAGA, provides:

FIRST AMENDED CLASS ACTION COMPLAINT

Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of themselves or themselves and other current or former employees pursuant to the procedures specified in § 2699(a).

116.    Penalties. Labor Code § 2699(f), which is part of PAGA, provides:

For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . . (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

117.    Based on the foregoing, Plaintiff and aggrieved employees are entitled to civil penalties, to be paid by Defendants and allocated as required by PAGA in the following formula: (a) in an amount set forth as a civil penalty in the underlying statute; or (b) $100 per initial violation per employee per pay period, and $200 for each subsequent violation per employee per pay period.

118.    Labor Code sections 1194.2 and 1197.1 authorizes employees to recover liquidated damages in an amount equal to the wages unlawfully withheld and interest thereon. Labor Code 1197.1 also authorized civil penalties as follows: $100 for any initial violation intentional committed per employee per pay period in which a violation occurs, and $250 per subsequent violation per employee per pay period in which a violation occurs, regardless of whether the first violation was intentional.

119.    Plaintiff is also entitled to recover for himself, other aggrieved employees, and the

State of California, civil penalties pursuant to Labor Code § 210 (entirely independent and apart form, any other penalty provided in this article) in the amount of $100 per employee per initial violation of the timely payment requirements of Labor Code § 240 (semimonthly payments) and $200 per employee for each subsequent violation, plus 25% of the amount unlawfully withheld.

120.    Labor Code § 558 provides:

> (a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:
>
> > (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid
> >
> > (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid.

121.    Plaintiff, the aggrieved employees, and the State of California are entitled to recover the maximum civil penalties allowed by law for the violations of the Labor Code and IWC Wage Order No. 4 as alleged in this Complaint.

122.    <u>Procedural Requirements Met.</u> On November 7, 2023, Plaintiff electronically filed a notice of claims with the LWDA and sent a copy to Defendants by certified mail. Plaintiff has not received notice from the LWDA that it was exercising jurisdiction over the allegations set forth in the notice. As of 65 days from date of electronic filing, all requirements for administrative exhaustion for bringing these PAGA claims will have been met. Labor Code § 2699.3(a)(2).

## TENTH CAUSE OF ACTION

### *California Business and Professions Code §§ 17200, et seq.*

### *Violation of California's Unfair Competition Law*

### **(Plaintiff and Classes Against Defendants)**

123.    Plaintiff repeats and incorporates by reference every allegation in this complaint as

1  if fully set forth herein.

2      124.    Defendants are each a "person" as defined by California Business & Professions

3  Code § 17201, as it is a natural person, corporation, firm, partnership, joint stock company, and/or

4  association.

5      125.    <u>Unlawful Business Practices.</u> Defendants' knowing violations of the Labor Code and

6  IWC Wage Order No. 4 constitute an unlawful business practice as set forth in Business &

7  Professions Code § 17200, *et seq.*

8      126.    Further, "[a] violation of [Cal. Bus. & Prof. Code § 16600.1] constitutes an act of

9  unfair competition within the meaning of Chapter 5 (commencing with Section 17200)." Cal. Bus.

10  & Prof. Code § 16600.1.

11      127.    Defendants' failure to abide by the laws discussed herein provide Defendants an

12  unfair advantage over their competitors at the expense of their workers. Instead, Defendants cut

13  corners in the name of higher profits and at the expense of employee well-being. Defendants'

14  action thereby constitutes an unfair, fraudulent, and/or unlawful business practice under Business

15  & Professions Code § 17200, *et seq.*

16      128.    <u>Relief.</u> Plaintiff brings this cause of action seeking equitable and injunctive relief to

17  stop Defendants' willful and ongoing misconduct, and to seek restitution of the amounts

18  Defendants acquired through the unfair, unlawful, and fraudulent business practices described

19  herein. In addition, Plaintiff seeks an award of costs and attorneys' fees pursuant to California

20  Code of Civil Procedure § 1021.5.

21                    **DEMAND FOR JURY TRIAL**

22          Pursuant to California Code of Civil Procedure § 631, Plaintiff demands a trial by jury on

23  all issues so triable.

24

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays judgment as follows:

A.    For an Order:

    a.  Certifying the Class;

    b.  Appointing Plaintiff as representative of the Class;

    c.  Appointing Plaintiff's counsel as Class Counsel;

B.    For actual and liquidated damages according to proof at trial;

C.    For statutory and civil penalties and special damages, according to proof at trial;

D.    For pre- and post-judgment interest on monetary damages;

E.    For preliminary and permanent injunctive relief;

F.    For reasonable attorney's fees and costs and expert fees and costs as allowed by law; and

G.    For such other relief as this Court deems just and proper.

Dated: June 25, 2024          Respectfully submitted,

                             **KING & SIEGEL LLP**

                             By: *Elliot J. Siegel*

                             Elliot J. Siegel, Esq.
                             Attorneys for Plaintiff and the Putative Class

Dated: June 25, 2024          Respectfully submitted,

                             **LAW OFFICE OF XAVIER VILLEGAS, APC**

                             By: *Xavier Villegas*

                             Xavier Villegas, Esq.
                             Attorney for Plaintiff and the Putative Class