Elliot J. Siegel (Bar No. 312272)
elliot@kingsiegel.com
**KING & SIEGEL LLP**
724 S. Spring Street, Ste. 201
Los Angeles, California 90014
Tel:  (213) 465-4802 / Fax: (213) 465-4803

Xavier Villegas (Bar No. 293232)
xavier@xaviervillegaslaw.com
**LAW OFFICE OF XAVIER VILLEGAS, APC**
2390 Las Posas Road, C168
Camarillo, CA 93010
Tel: (805) 250-7488 / Fax: (805) 250-7499

Attorneys for Plaintiff and the Settlement Class

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Paula Norton**, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>**Strategic Staffing Solutions-S3, L.L.C.**, a Florida limited liability company; **Cynthia J. Pasky**, an individual; and **Does 1-100**, inclusive;<br><br>Defendants. | CASE NO. 3:23-cv-06648-JSC<br><br>Assigned to Hon. Jacqueline Scott Corley<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR:**<br><br>**(1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**(2) APPROVAL OF NOTICE TO CLASS MEMBERS AND RELATED MATERIALS; AND**<br><br>**(3) SETTING HEARING FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Date: January 23, 2025<br>Time: 10:00 a.m.<br>Dept.: 8 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on January 23, 2025, or the earliest available date to be assigned by the Court, in Courtroom 8 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Jacqueline Scott Corley, Plaintiff Paula Norton on behalf of herself individually and on behalf of all members of the Settlement Class as defined, hereby moves this Court for entry of an Order:

1. Certifying the Class for purposes of settlement;

2. Preliminarily appointing Ms. Norton as Class Representative;

3. Appointing Elliot J. Siegel of King & Siegel LLP and Xavier Villegas of Law Office of Xavier Villegas, APC as Class Counsel for purposes of settlement;

4. Preliminarily approving the Settlement as fair, adequate, and reasonable, based upon the terms set forth in the Joint Stipulation of Settlement and Release of Class Action ("Settlement Agreement" or "Settlement"), including payment by Defendant of the non-reversionary Maximum Settlement Amount ("MSA") of $5,250,000.00;

5. Preliminarily approving payment of reasonable attorneys' fees from the Maximum Settlement Amount in an amount of one-third of the Maximum Settlement Amount (*i.e.*, $1,750,000.00), plus reasonably incurred litigation costs of up to $50,000.00 (but currently estimated at approximately $30,000);

6. Preliminarily approving a Class Representative enhancement payment to Named Plaintiff in an amount of up to $35,000, to be paid out of the Maximum Settlement Amount, to compensate her for the burdens, responsibilities, time, effort and risks involved in coming forward on behalf of the Class;

8. Preliminarily approving Apex Class Action LLC as Settlement Administrator and further approving the distribution of up to $50,000.00 from the Maximum Settlement Amount to cover the Settlement Administrator's expenses in administering this Settlement (but currently estimated at $10,000);

9. Preliminarily approving payment to the Labor and Workforce Development

1  Agency ("LWDA") in the amount of $550,000.00 from the Maximum Settlement Amount;

2      10.    Approving the proposed Notice of Proposed Class Action Settlement and

3  Hearing Date for Court Approval ("Class Notice") and ordering it be disseminated to the

4  Class as provided in the Settlement Agreement; and

5      11.    Setting a date for a final fairness hearing to determine, following dissemination

6  of notice to the Class, whether to grant final approval of the Settlement.

7      This motion is based upon this Notice of Motion and Motion; the Memorandum of

8  Points and Authorities in Support thereof; the declarations of Elliot J. Siegel, Xavier Villegas,

9  Paula Norton, Sean Hartranft, and Doan Nguyen in Support thereof; the Joint Stipulation of

10  Settlement and Release of Class Action; the proposed Notice of Proposed Class Action

11  Settlement; the [Proposed] Order Preliminarily Approving Class Action Settlement; the other

12  records, pleadings, and papers filed in this action; and upon such other documentary and

13  verbal evidence or argument as may be presented to the Court at the hearing of this motion.

14  Dated: December 19, 2024          Respectfully submitted,
15                                     **KING & SIEGEL LLP**

16

17                                     By: _Elliot J. Siegel_____
18                                     Elliot J. Siegel
19                                     Julian Burns King
                                       Attorney for Plaintiff and the Settlement Class

20

21  Dated: December 19, 2024          Respectfully submitted,
22                                     **LAW OFFICE OF XAVIER VILLEGAS, APC**

23

24                                     By: _____
25                                     Xavier Villegas
                                       Attorney for Plaintiff and the Settlement Class

26

27

28

King & Siegel ⦀ LLP

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II.  RELEVANT FACTUAL BACKGROUND.................................................... 2

   A.  THE PARTIES AND THE SETTLEMENT CLASS ..............................................2

   B.  PROCEDURAL HISTORY, DISCOVERY, AND MEDIATION ...............................2

III.  SUMMARY OF THE PARTIES' CLAIMS AND DEFENSES ...........................5

   A.  DEFENDANT'S FAILURE TO PAY MINIMUM WAGES.....................................6

   B.  DEFENDANT'S FAILURE TO PAY OVERTIME WAGES .................................7

   C.  DEFENDANT'S FAILURE TO PROVIDE MEAL PERIODS ...............................7

   D.  DEFENDANT'S FAILURE TO PROVIDE REST PERIODS ................................8

   E.  PLAINTIFF'S REIMBURSEMENT FOR NECESSARY BUSINESS EXPENSES CLAIM ..........8

   F.  PLAINTIFF'S WAGE STATEMENT CLAIM ................................................8

   G.  PLAINTIFF'S WAITING TIME PENALTY CLAIM ........................................9

   H.  PLAINTIFF'S NON-COMPETITION CLAIM ...............................................9

   I.  PLAINTIFF'S PAGA CLAIM .................................................................10

   J.  PLAINTIFF'S UNFAIR COMPETITION CLAIM...........................................10

   K.  DEFENDANT'S DENIAL OF LIABILITY AND ITS LEGAL AND FACTUAL DEFENSES ... 10

   L.  FAIR VALUATION OF THE CLASS'S CLAIMS ................................................10

IV.  SUMMARY OF THE PROPOSED SETTLEMENT AND CLAIMS PROCESS 13

   A.  THE SETTLEMENT SUM, ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD 13

   B.  NET FUNDS AVAILABLE TO CLASS PARTICIPANTS ....................................14

   C.  RELEASE BY CLASS AND PLAINTIFF ......................................................15

   D.  CLASS NOTICE AND ADMINISTRATION....................................................16

   1.  OPPORTUNITY TO BE EXCLUDED OR OBJECT ..........................................19

   2.  THE NOTICE PERIOD ........................................................................19

   3.  SHARE FORMS...................................................................................20

   E.  PAYMENT OF THE MAXIMUM SETTLEMENT AMOUNT AND DISTRIBUTIONS..........20

   F.  TAX TREATMENT ...............................................................................21

King & Siegel ⦀ LLP

G.  CERTIFICATION REPORTS............................................................................ 21

V.  PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS UNDER THE LESSER STANDARD OF SCRUTINY FOR SETTLEMENT-ONLY CERTIFICATION IS APPROPRIATE FOR PURPOSES OF SETTLEMENT .......22

B.  NUMEROSITY AND ASCERTAINABILITY ...................................................... 23

C.  COMMONALITY AND TYPICALITY ............................................................... 23

D.  ADEQUACY................................................................................................24

E.  SUPERIORITY............................................................................................ 25

VI.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, WHICH IS FAIR, ADEQUATE, AND REASONABLE.........................................26

A.  LEGAL STANDARD .................................................................................... 26

B.  THE SETTLEMENT IS THE RESULT OF INFORMED, NON-COLLUSIVE NEGOTIATIONS ...........................................................................................28

C.  THE EXTENT OF DISCOVERY AND LITIGATION WAS SUFFICIENT TO PERMIT PRELIMINARY APPROVAL OF THE SETTLEMENT ............................................28

D.  THE SETTLEMENT AND REFLECTS A FAIR COMPROMISE OF CLAIMS AND RISK......28

E.  THE CLASS NOTICE PLAN CONFORMS TO ALL APPLICABLE STATUTES AND RULES29

F.  THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY RELATIVE TO EACH OTHER......................................................................................................30

G.  CLASS COUNSEL ARE EXPERIENCED IN SIMILAR WAGE-AND-HOUR LITIGATION..30

H.  THE ATTORNEYS' FEES UNDER THE SETTLEMENT AGREEMENT ARE FAIR........... 31

I.  THE CLASS REPRESENTATIVE ENHANCEMENT AWARD IS FAIR AND APPROPRIATE34

J.  THERE ARE NO OTHER RELATED AGREEMENTS ...................................................... 35

K.  COMPARABLE OUTCOMES IN SIMILAR CLASS ACTION SETTLEMENTS.................... 35

VII. APEX LLC SHOULD BE APPROVED AS ADMINISTRATOR ......................36

VIII. THE CY PRES RECIPIENT COMPORTS WITH F.R.C.P. 23 ......................36

IX.  CONCLUSION ..............................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Alaniz v. California Processors, Inc.*, 73 F.R.D. 269 (N.D. Cal. 1976) ............................28

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................22, 26

*Arnett v. Bank of Am.*, N.A., No. 3:11-cv-1372-SI (D. Or. Sep. 18, 2014) ....................19

*Arredondo*, 2022 WL 396575 (E.D. Cal) ....................................................................12

*Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) ......................................................................................................................13

*Balderas v. Massage Envy Franchising, LLC*, No. 12–cv–06327, 2014 WL 3610945 (N.D. Cal. July 21, 2014) ........................................................................................12, 13

*Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 U.S. Dist. LEXIS 10848 (E.D. Cal. Jan. 21, 2020) ..............................................................................................24

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) .....................................34

*Boyd v. Bank of Am. Corp.*, No. 13-cv-0561, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014)..........31

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) .........................................28

*Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365 (2005) ...................10

*Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43 (2008).............................................. 32, 33

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)..................................27

*Cicero v. DirecTV, Inc.*, 2010 WL 2991486 (C.D. Cal. July 27, 2010).........................31

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974)...................................12

*Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ..........................23

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ...........................................................34

*Cooley v. Indian River Transp. Co.* (E.D. Cal. Jan. 24, 2019) No. 1:18- CV-00491, 2019 WL 316634......................................................................................................................13

*DJ Orthopedics, Inc. Sec. Litig.*, No. 01-CV-2238KRBB, 2004 W.L. 1445101 (S.D. Cal. June 21, 2004) ............................................................................................................28

*Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990)....................34

*East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 (1977). ...........................25

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ......................................................................................................31

*Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) .........................................................................................................................34

*Ferrell v. Buckingham Property Mgmt.* (E.D. Cal. Jan. 21, 2020) Case No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042..................................................................................13

*Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016)....................................................36

*Franco v. Ruiz Food Prods.*, No. 1:10-CV-02354-SKO, 2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012) ........................................................................................24

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)..........................................................................34

*Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ..................................................................................................35

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996) ................................................ 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................. 25, 27

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ............................................. 24

*Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959 (N.D. Cal. 2019) ................ 22

*Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2019 U.S. Dist. LEXIS
    196964 (S.D. Cal. Nov. 13, 2019) .................................................................................... 24

*Huy Nguyen v. Wells Fargo Bank, N.A.*, No. 15-cv-05239, 2016 WL 5390245 2016 U.S.
    Dist. LEXIS 131710 (N.D. Cal. 2016) ................................................................................ 9

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) .............................................. 23

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504 (C.D. Cal. 2012) .................................. 23

*Laffitte v. Robert Half Intern. Inc.*, 180 Cal.Rptr.3d 136 (2014) ...................................... 32

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ....................................................... 36

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) ..................................... 33

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ............................ 25

*Louie v. Kaiser Found. Health Plan, Inc.*, CASE NO. 08cv0795 IEG RBB, 2008 U.S.
    Dist. LEXIS 78314 (S.D. Cal. Oct. 6, 2008) ................................................................... 34

*Ma v. Covidien Holding, Inc.* (C.D. Cal. Jan. 31, 2014) No. SACV 12-02161- DOC, 2014
    WL 360196 ....................................................................................................................... 13

*Martin v. FedEx Ground Package System, Inc.*, 2008 WL 5478576 (N.D. Cal. Dec. 31,
    2008) ................................................................................................................................. 32

*Munyan v. Nationwide Medical, Inc.*, No. BC579015, 2017 WL 6452647 ......................... 13

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) .................................... 23

*Naranjo v. Spectrum Sec. Servs.*, 13 Cal.5th 93 (Cal. 2022) .............................................. 8

*Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997). ...................................................... 34

*Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB,  2007 WL 3492841 (E.D.
    Cal. Nov. 14, 2007) .......................................................................................................... 33

*Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001
    (E.D. Cal. June 11, 2012) ................................................................................................ 13

*Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593 (E.D. Cal. 2015) ........................... 24

*Singer v. Becton Dickinson & Co.*, No. 08–CV–821–IEG, 2010 WL 2196104 (S.D. Cal.
    June 1, 2010) .................................................................................................................... 33

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) .................................................. 23

*Solis v. Bottomley Distribution Co., Inc.*, No. 15-CV-287797, 2017 WL 1046615 ............. 13

*Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. 2008) .......... 13

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-2540, 2015 WL 3776765 (N.D. Cal.
    June 17, 2015) ............................................................................................................. 12, 13

*Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug.
    9, 2010) ............................................................................................................................. 32

*Suastez v. Plastic Dress-Up Co.*, 31 Cal.3d 774 (1982) ...................................................... 6

*Thompson v. Costco Wholesale Corp.* (S.D. Cal. May 11, 2017) No. 14-CV-2778-CAB-
    WVG, 2017 WL 1957552 .................................................................................................. 13

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ............................... 23

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ...............................34

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ............................... 33

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................................... 23

*Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ............................................................................................................................... 33

*Wilson v. Kiewit Pacific Co.*, No. 09-cv-03630, ECF No. 119 (N.D. Cal. 2012) ..........................32

*Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ......................................................................................................................................28

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ............................................25

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................................................................................26

Cal. Bus. & Prof. Code § 16600.1 .......................................................................................................9

Cal. Bus. & Profs. Code § 17208 ......................................................................................................10

Cal. Bus. & Profs. Code §§ 17200-17204 .......................................................................................10

Cal. Lab. Code § 226(a)(1), 226(a)(2), and 226(a)(5) ........................................................................8

Cal. Lab. Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 ..................................................... 3, 5

Cal. Lab. Code §§ 17200, et seq .........................................................................................................6

Cal. Lab. Code § 515 ............................................................................................................................6

Cal. Lab. Code §§ 1182.12 ..................................................................................................................3

Cal. Lab. Code §§ 201, 202, 203, 204 ........................................................................................ 3, 6

Cal. Lab. Code §§ 226 .........................................................................................................................3

Cal. Lab. Code §§ 226.7 ......................................................................................................................3

Cal. Lab. Code § 512 ............................................................................................................................3

Cal. Lab. Code §§ 558, 2698, et seq ............................................................................................ 3, 6

Cal. Labor Code 210(c) ........................................................................................................................9

Private Attorney General Act ..............................................................................................................2

**RULES**

F.R.C.P. 23(a) .....................................................................................................................................22

Rule 23(b) ...........................................................................................................................................25

Rule 23(b)(3) ......................................................................................................................................25

Rule 8.115(e)(2) .................................................................................................................................32

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This motion seeks preliminary approval of a wage-and-hour class action settlement for approximately 115 hourly non-exempt employees and 326 exempt employees (i.e., a total of 441 settlement class members) employed by Defendant who worked at least one shift in California from November 7, 2019 through September 6, 2024 ("Class Members") in the gross amount of $**5,250,000.00**—representing an approximate average gross recovery of $11,904.76 per Class Member. After all required deductions, there will be an estimated **$2,994,000** in settlement funds distributed to all Participating Settlement Class Members.

| | |
|---|---|
| Maximum Settlement Amount | **$5,250,000** |
| Attorneys' Fees | ($1,750,000) |
| Litigation Costs (estimated) | ($50,000) |
| Class Representative Enhancement Payment | ($35,000) |
| Settlement Administration Costs (estimated) | ($8,500) |
| LWDA's Portion of PAGA Payment | ($412,500) |
| **Net Settlement Amount** | **$2,994,000** |

No claim form will be required to be eligible to receive an individual settlement payment, and all Class Members who do not opt-out will automatically receive their individual settlement payments and be subject to the Release set forth in the Settlement Agreement. Settlement Agmt., ¶ 40; *see also* Class Notice (Declaration of Elliot J. Siegel ("Siegel Decl.") in Support of Preliminary Approval, Exhibit (1)(A)). Defendants will also pay all required payroll taxes in addition to the Maximum Settlement Amount. Settlement Agmt., ¶ 34.

As demonstrated below, the Settlement is a very strong result for the Class and within the zone of reasonableness justifying approval. Plaintiff requests that the Court enter an Order for the following: (1) conditionally certifying the Class under Federal Rule of Civil Procedure 23 for settlement purposes only and preliminarily approving Class Counsel and the Settlement; (2) approving their proposed Class Notice to be disseminated to Class Members

King & Siegel ‖ LLP

pursuant to the Settlement Agreement[1]; (3) appointing Apex Class Action LLC as the Settlement Administrator; and (4) scheduling a hearing for final approval.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The Parties and the Settlement Class

Through this Motion, Plaintiff seeks preliminary approval of this Settlement for a Settlement Class comprised of the following two Classes of employees:

1.    *The Non-Exempt Class: "All non-exempt persons who worked at least one 3.5-hour shift for Defendants, whether as a direct-hire or agency employee, in the State of California during the Release Period."*

2.    *The Exempt Class: "All persons who worked at least one 3.5-hour shift for Defendants in the State of California and were classified as an exempt employee during the Release Period."*

Siegel Decl., ¶ 10; *see also* Siegel Decl., Exhibit 1 (Settlement Agmt.), § 17.

As of September 6, 2024, based on Defendant's representations[2] and the data produced in formal and informal discovery, the Settlement Class is estimated to comprise of 115 Non-Exempt Class Members and 326 Exempt Class Members (i.e., a total of 441 Settlement Class Members), who worked a total of 23,298 workweeks from November 7, 2019 through September 6, 2024. Siegel Decl., ¶ 11, fn. 1. At all relevant times, Plaintiff and Class Members of Defendant were subject to the same policies, practices, and procedures at issue in this litigation. Siegel Decl., at ¶ 6; Norton Decl., at ¶ 6.

### B.    Procedural History, Discovery, and Mediation

On November 7, 2023, Plaintiff gave notice to the LWDA and Defendants of her intent to file suit and bring claims under the Private Attorney General Act ("PAGA").[3] *Id.*, ¶ 4.

---

[1] The Settlement is attached to this Motion as **Exhibit 1**. The proposed Notice of Class Action Settlement is attached to the Settlement Agreement as **Exhibit A**.

[2] Defendant's representations regarding the number of Class Members/workweeks are a material part of the Settlement and are ensured through an escalator provision. *See* Settlement, ¶ 87.

[3] Plaintiff gave notice of the Settlement to LWDA on September 26, 2024. *Id.* Class Counsel is also serving a copy of this Motion on the LWDA contemporaneous with the filing. *See* Proof of Service. As of the date of this Motion, Plaintiff has not received a response from the LWDA regarding the PAGA Notice or the Settlement—indicating the LWDA's tacit approval of the Settlement. *Id.*

King & Siegel ⦀ LLP

King & Siegel ‖ LLP

On November 7, 2023, Plaintiff filed this Class Action Complaint in San Francisco County Superior Court alleging class action claims on behalf of a putative class of misclassified exempt employees for (1) Failure to Pay Minimum Wages (Lab. Code §§ 1182.12, 1194, 1197.1, 1198); (2) Failure to Pay Overtime Wages (Lab. Code §§ 510 and 1198); (3) Failure to Provide Meal Periods or Premium Pay in Lieu Thereof (Lab. Code §§ 226.7, 512, 558, 1198); (4) Failure to Provide Rest Periods or Premium Pay in Lieu Thereof (Lab. Code §§ 226.7, 512, 558, 1198); (5) Failure to Reimburse Necessary Business Expenses; (6) Failure to Provide and Maintain Complete and Accurate Records (Lab. Code §§ 226, 1174); (7) Failure to Timely Pay Wages During Employment (Lab. Code §§ 204, 210); (8) PAGA Penalties (Lab. Code §§ 558, 2698, et seq.); and (9) Unfair Competition. *Id., ¶¶ 9; 28.*

On December 28, 2023, Defendants removed the action to Federal Court under the Class Action Fairness Act ("CAFA"). *Id.* On June 26, 2024, Plaintiff filed her First Amended Complaint, which provided an additional cause of action for Illegal Noncompete Agreements and adding a proposed class of non-exempt, non-misclassified employees. *Id.*, ¶ 10.

Defendants, through their counsel, at all times vigorously denied liability, denied the material allegations of Plaintiff's claims, and asserted various affirmative defenses to the legal claims set forth in the Complaint.

After the filing of the complaint, Plaintiff's and Defendants' counsel engaged in comprehensive discussions regarding Plaintiff's claims. Siegel Decl., ¶ 13. As part of these discussions, the Parties agreed to attend private mediation to be held on September 6, 2024 with the Hon. Judge Peter Lichtman (Ret.) of Signature Resolution, a well-respected mediator of wage and hour matters, and further agreed to exchange discovery for use at mediation. *Id.*

Following the Parties' agreement to mediate, Defendants provided Plaintiff, through formal and informal discovery, with several rolling productions of data and documents relating to the Class, including per-shift time data and payroll information for all Class Members from both Classes, plus representative itemized wage statements; a list of all Class Members containing individual pay rates, classifications, location, and start and end dates of employment; and all relevant policy documents, including policies regarding compensation,

security, payroll, time-keeping, time tracking, PTO, and meal/rest periods, in effect during the relevant period; as well as information relevant to potential damages, including Defendant's positions as to shifts worked and total pay periods of the Class and other aggregate data and information related to their defenses. *Id.,* ¶ 14.

Prior to and concurrent with mediation discussions, Plaintiff's counsel engaged in extensive factual and legal investigation and prosecution of the Class's claims, which included: (a) numerous telephonic conferences with Plaintiff regarding her experiences as Defendants' employee and interpretation of the data provided; (b) inspection and analysis of numerous time records, payroll, policy documents, and other information produced by Defendants in formal and informal discovery; (c) analysis of the legal positions taken by Defendants; (d) investigation into the viability of class treatment of the claims asserted in the operative Complaint; (e) analyses of potential class-wide damages, including information sufficient to understand Defendants' potential defenses to Plaintiff's class-wide and individual claims; (f) research of the applicable law with respect to the claims asserted in the operative Complaint and the potential defenses thereto; (g) assembly and analysis of data for calculating damages; (h) contacting and interviewing numerous witnesses and Class Members regarding the claims at issue and obtaining putative Class Member declarations signed under penalty of perjury for use at mediation; and (i) hiring the services of an expert to analyze and prepare Defendants' exposure. *Id.*, ¶ 15.

Plaintiff's counsel analyzed all of the data provided by Defendants and retained the services of an expert from the EconOne Research, Inc., who conducted numerous data analyses, including but not limited to, identifying employees underpaid the statutory minimum wage requirements for exemption; PTO accrual, usage, and loss; the amounts of all underpayments of regular and overtime wages; the amount of hours that qualified for overtime treatment; the number of late, short, and missed meal periods based on time punch data; the value of missed rest periods; and the maximum and realistic exposure for each claim alleged in the Complaint. Defendant's production was fulsome and allowed Plaintiff's counsel to develop a sound understanding of the merits of the claims; their value; and the viability of

King & Siegel ‖ LLP

the defenses asserted by Defendants. *Id.*, ¶ 16.

On September 6, 2024, the Parties and their counsel attended mediation with Judge Peter D. Lichtman (Ret.) of Signature Resolution, a well-respected mediator of wage and hour class actions and employment litigation. *Id.,* ¶ 17. Negotiations lasted all day and were conducted at arm's length. *Id.* At the end of the mediation, the Parties agreed to settle the entire action, subject to Court approval, for the MSA of $5,250,000.00. *Id.* at ¶ 18. The Parties executed a Memorandum of Agreement ("MOA") containing the key deal points that formed the basis for the Settlement now before the Court for preliminary approval. *Id.* On November 22, 2024, the Parties executed the Settlement. *Id.*, ¶ 19.

Class Counsel's factual investigation, comprehensive discussions between the Parties' counsel, and the formal and informal discovery conducted in this matter have been adequate to give the Class Representative and Class Counsel a sound understanding of the merits of his position and to evaluate the worth of the claims of the Class. *Id.,* ¶¶ 20, 28, 29-51. The extensive formal and informal discovery conducted in this Action, and the information exchanged by the Parties before, after, and during the mediation, was sufficient to reliably assess the merits of the claims; their value; and the viability of the defenses asserted by Defendant and to settle the matter on a fair and equitable basis. *Id.*

Class Counsel believes that the Settlement set forth below confers substantial benefits upon the members of the Class and should be approved. *Id.*, ¶ 27. Based on their own independent investigation and evaluation, Class Counsel has determined that the agreed upon Settlement is in the best interests of the Settlement Class and now seeks Court approval. *Id.*

## III.    <u>SUMMARY OF THE PARTIES' CLAIMS AND DEFENSES</u>

In the operative Complaint, Plaintiff alleged ten causes of actions on behalf of herself and two Classes for: (1) Failure to Pay Minimum Wages for All Hours Worked (Lab. Code §§ 1182.12, 1194, 1197.1, 1198); (2) Failure to Pay Overtime Wages (Lab. Code §§ 510 and 1198); (3) Failure to Provide Meal Periods or Premium Pay in Lieu Thereof (Lab. Code §§ 226.7, 512, 558, 1198); (4) Failure to Provide Rest Periods or Premium Pay in Lieu Thereof (Lab. Code §§ 226.7, 512, 558, 1198); (5) Failure to Reimburse Necessary Business Expenses; (6)

Failure to Provide and Maintain Accurate Payroll Records (Lab. Code §§ 226, 1174); (7) Failure to Pay Wages When Due (Lab. Code §§ 204, 210); (8) Illegal Noncompete Agreements (Cal. Bus. & Prof. Code §§ 16600, 16600.1, 16600.5 and Lab. Code § 432.5); (9) PAGA Penalties (Lab. Code §§ 558, 2698, et seq.); and (10) Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq.). Siegel Decl., ¶¶ 9; 28.

Class Counsel summarizes the factual and legal bases for the Classes' claims below. Plaintiff's detailed claim-by-claim analysis, valuation, and risk discount of Defendant's defenses, utilized to arrive at a fair valuation of Plaintiff's claims, is set forth in the Declaration of Elliot J. Siegel at Paragraphs 111-125 for the Court's consideration.

**A.    Defendant's Failure to Pay Minimum Wages**

Plaintiff alleged that Exempt Class Members were improperly classified as exempt as they were (a) paid less than twice the minimum wage or less than the applicable minimum wage for computer software professionals under Lab. Code ¶ 515.5[4]; (b) they did not spend more than 50% of their time on exempt activities; or (c) a combination thereof. *Id.*, ¶ 29.

Under Lab. Code § 515, "[p]ayment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary." Thus, Plaintiff alleged that due to this misclassification, Exempt Class Members were not paid for all hours worked as they worked significant amounts of time outside their regular 40-hour workweek, which was not compensated by law at either minimum or overtime wages. Siegel Decl., ¶ 30.

Plaintiff also alleged that both Non-Exempt and Exempt Class Members were deprived of owed wages based on Defendants' implementation of an illegal vacation pay policy.

"[V]acation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed." *Suastez v. Plastic Dress-Up Co.*, 31 Cal.3d 774, 779 (1982) (*citing People v. Bishop*, 56 Cal.App.3d 8, 11 (1976)). Because vacation pay qualifies as vested wages, "an employment contract or employer policy *shall not* provide for forfeiture of vested vacation time[.]" *Id.*

---

[4] Under Lab. Code § 515.5, **computer software professionals** must be paid a specific hourly rate ($55.58 an hour), monthly salary ($9,646.96 a month), or a yearly salary ($115,763.35).

Plaintiff alleged that, as of February 1, 2023, Defendants implemented an "unlimited" Paid Time Off policy but when this "unlimited" policy was implemented, Defendants forced Class Members to forfeit their previously accrued and vested PTO, rather than paying it out as required under the Labor Code—resulting in the illegal non-payment of wages. *Id.*, ¶ 32.

Plaintiff also alleged that prior to the implementation of the new "unlimited" policy, during the time period Defendants had a "traditional" earned vacation policy, Defendants forced employees to forfeit accrued and vested PTO over time by illegally limiting the amount of carryover allowed to less than 1.5 times the yearly accrual amount—resulting in the non-payment of wages for each pay period in which PTO was illegally forfeited. *Id.*, ¶ 33.

## B. Defendant's Failure to Pay Overtime Wages

Plaintiff alleged that throughout the Class Period, Exempt Class Members were not paid overtime premiums for all of the hours they worked in excess of eight hours in a day, in excess of twelve hours in a day, in excess of eight hours on the seventh consecutive day of work in a workweek, and/or in excess of 40 hours in a week because all hours worked were not recorded as compensable time as a direct consequence of Defendants' misclassification of non-exempt employees as exempt. Siegel Decl., ¶ 34; Norton Decl., ¶¶ 10-12.

While the FAC alleged this claim on behalf of both Classes, Counsel was unable to substantiate any Class-wide violations as to the Non-Exempt Class. Siegel Decl., ¶ 35;

## C. Defendant's Failure to Provide Meal Periods

Plaintiff alleged that, by virtue of its misclassification policies and practices, Defendants failed to relieve Exempt Class Members from all duty when on their meal periods or authorize them in the first instance. Instead, Exempt Class Members were required take late meal periods, interrupt them, skip them and/or remain on duty. Siegel Decl., ¶ 37. Plaintiff alleged that, despite these policies and practices, Defendant did not pay Class Members all meal period premium wages when meal periods were missed, late, short, or subject to employer control. *Id*. Plaintiff also alleged that Defendants failed to provide Non-Exempt Class Members all required meal periods and instead pressured them to skip, interrupt, or miss meals while working for Defendants' customers so as to maximize revenue.

**D.    Defendant's Failure to Provide Rest Periods**

Plaintiff alleged that, by virtue of its misclassification policies and practices, Defendants failed to relieve Exempt Class Members from all duty when on their rest periods or authorize them in the first instance. Instead, Exempt Class Members were required to interrupt rest periods, skip them and/or remain on duty. Siegel Decl., ¶ 38. Plaintiff alleged that, despite these policies and practices, Defendant did not pay Class Members premium wages when rest periods were missed, short, or subject to employer control. *Id.*, ¶ 39.

Defendants also failed to relieve all Non-Exempt Class Members from duty when on their rest period by requiring Class Members to comply with an unlawful and systematic policy and practice that interfered with their ability to take compliant rest periods whereby they required and/or pressured Class Members to prioritize completing assigned work by working through their rest periods, or by interrupting their rest periods. Siegel Decl., ¶ 40.

Despite these policies and practices, Defendant did not pay Class Members all rest period premium wages based on their failure to provide compliant rest periods. Plaintiff alleged that this resulted in violations of Labor Code §§ 226.7, 512, 558, and 1198.

**E.    Plaintiff's Reimbursement for Necessary Business Expenses Claim**

Plaintiff alleged that Defendant failed to reimburse Class Members for all business-related expenses that were necessary to perform their job, including but not limited to requiring Plaintiff and the Class to use of their personal cell phones and/or Internet subscriptions for Defendants' business. Siegel Decl., ¶ 42.

**F.    Plaintiff's Wage Statement Claim**

Plaintiff claimed Defendant systematically provided Class Members with incomplete and inaccurate wage statements in violation of Labor Code sections 226(a)(1) and 226(a)(5). Siegel Decl., ¶ 44. Plaintiff alleged that Defendant's failure to furnish Plaintiff and members of the Class with complete and accurate, itemized wage statements containing an accurate recitation of hours worked, all gross and net pay, and all premium pay earned[5] resulted in actual

---

[5] *Naranjo v. Spectrum Sec. Servs.*, 13 Cal.5th 93, 121 (Cal. 2022) ("[F]ailure to report premium pay for

injury, as these failures led to, among other things, the non-payment of all wages earned, including overtime, and deprived them of the information necessary to identify discrepancies in Defendant's reported data. *Id.,* ¶ 45.

### G.  Plaintiff's Waiting Time Penalty Claim

During the relevant time period, Plaintiff alleged that Defendant willfully failed to pay former Class Members the earned and unpaid wages set forth above, including but not limited to overtime wages and premium pay, either at the time of discharge, or within seventy-two hours of leaving Defendant's employ. Siegel Decl., ¶ 46.

Additionally, Plaintiff alleged that current Exempt Class Members were paid late— with payments for time worked being made up to 14 days after such pay was earned, in violation of Labor Code 204. *Id.* This failure allowed the Exempt Class to collect PAGA penalties for this failure as Sections 204 and 210 do not otherwise have a private right of action. *Huy Nguyen v. Wells Fargo Bank, N.A.*, No. 15-cv-05239, 2016 WL 5390245, at *10, 2016 U.S. Dist. LEXIS 131710, at *31 (N.D. Cal. 2016); Labor Code 210(c).

### H.  Plaintiff's Non-Competition Claim

As of January 1, 2024, under Section 16600.1, it is illegal for an employer "to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement" Cal. Bus. & Prof. Code § 16600.1. Further, employers are required under Section 16600.1 to provide a curative notice "in the form of a written individualized communication" to employees employed after January 1, 2022, whose contracts include a barred non-compete clause or agreement.

Plaintiff alleged that Defendants included illegal noncompete provisions into their employment agreements with Class Members of both stripes and failed to provide the required curative notice. However, prior to the parties' mediation, Defendants produced documents and data showing that they timely provided the necessary corrective disclosures

---

missed breaks can support monetary liability under section 226 for failure to supply an accurate itemized statement reflecting an employee's gross wages earned, net wages earned, and credited hours worked.").

to impacted employees and that other Class Members were never bound by non-competition language in their employment agreements. As a result, Class Counsel's attributed no further value to this claim. Siegel Decl., ¶ 49.

## I.    Plaintiff's PAGA Claim

The Private Attorney General Act of 2004 allows an aggrieved employee to bring suit against an employer for civil penalties based on violations of most Labor Code provisions. Suits brought under PAGA do not affect the employee's right to recover other remedies under state or federal law. *See* Labor Code § 2699(g). Under PAGA, Plaintiff and the Class Members are, in addition to other remedies, entitled to civil penalties for the Labor Violations set forth above, in addition to attorneys' fees and costs. Labor Code § 2699(g)(1).

## J.    Plaintiff's Unfair Competition Claim

Plaintiff contends that by failing to pay Class Members for overtime, failing to provide meal periods or premium pay in lieu thereof, and committing the above-described Labor Code violations, Defendant engaged in unlawful, unfair, and/or fraudulent business practices in violation of Cal. Bus. & Profs. Code §§ 17200-17204 and is liable for restitution to the Class. Furthermore, this cause of action lengthens the statute of limitations of the class claims to four (4) years. Cal. Bus. & Profs. Code § 17208; Siegel Decl., ¶ 50.

## K.    Defendant's Denial of Liability and its Legal and Factual Defenses

Defendants denied and continued to deny generally the claims, contentions, and all material allegations made in the Complaint. Siegel Decl., ¶ 52.

Defendant asserted various defenses against certification, liability, and damages at mediation and throughout litigation, which are detailed in depth—along with Class Counsel's assessment of these defenses—in the Siegel Declaration at Paragraphs 53-82.

## L.    Fair Valuation of the Class's Claims

The Settlement was only entered into after Class Counsel determined its merits based on their damage calculations, risk assessment, and non-collusive, third-party mediated negotiation with Defendant. Siegel Decl., ¶ 83.

Prior to agreeing to any settlement, Class Counsel conducted its factual investigation,

obtained aggregate and individual Class Member data, and numerous wage-related and policy documents as part of formal and informal discovery. This included (1) per-shift time data and payroll information for all Class Members from both Classes, plus representative itemized wage statements; (2) a list of Class Members containing individual pay rates, classification, and start and end dates of employment; (3) all relevant policy documents, including policies regarding compensation, security, payroll, time-keeping, time tracking, PTO, and meal/rest periods, in effect during the relevant period; and (4) additional information relevant to potential damages, such as Defendant's positions as to the average shift length for the Class and other aggregate data. Siegel Decl., ¶ 84.

Plaintiff's counsel analyzed all of the data provided by Defendant and retained the services of an expert, who conducted numerous data analyses, including but not limited to, identifying employees underpaid the statutory minimum wage requirements for exemption; PTO accrual, usage, and loss; the amounts of all underpayments of regular and overtime wages; the amount of hours that qualified for overtime treatment; the number of late, short, and missed meal periods based on time punch data; the value of missed rest periods; and the maximum and realistic exposure for the claims alleged. *Id.*

The extensive formal and informal discovery conducted, Class Counsel's investigation, and the information exchanged by the Parties before, after, and during the mediation, was sufficient to assess reliably the merits of the respective Parties' positions. *Id.*, ¶ 127.

In coming to a determination that this Settlement was fair and reasonable and in the best interests of the Class, Plaintiff and Class Counsel took into consideration the merits of the action on balance with the risk of the court not certifying the class based on common issues not predominating; the risk of finding Defendant complied with Labor Code mandates regarding compensable time and/or compliant meal and/or rest break policies or implemented compliant practices regarding the same; the risk that the Court would rule against Plaintiff on the claims as to minimum wage and overtime payments, meal and rest periods, or reimbursements; the risk of the court not awarding waiting time penalties, and/or other civil or PAGA penalties based on a lack of willfulness or difficulties in establishing bad faith; and

other potential defenses of Defendant on the merits. Siegel Decl., ¶ 109.

If Defendant prevailed on any of these defenses, the claims of the Class would potentially be worth little to nothing. *Id*. Class Counsel also took into account the value of an immediate and guaranteed Settlement against the uncertainty and delay that would occur before the Class's claims could be heard at trial, extended by any potential appeals. Siegel Decl., ¶ 104. In considering these significant risks and others, as well as the time, expense and cost of litigation, trial and appeals, Class Counsel determined that Settlement was appropriate, fair and reasonable. Siegel Decl., ¶ 128.

To be clear, Class Counsel believes that the claims have merit, and that the Class would ultimately prevail at certification and trial; however, Class Counsel is mindful of the risks inherent in continued litigation and the potential adverse outcomes to the Class by proceeding with litigation. Siegel Decl., ¶ 129. In contrast, the Settlement will yield a *prompt*, *certain*, and *substantial* recovery for Class Members, which also benefits the parties and the Court. *Id*.

The Settlement takes those risks and others into account in arriving at the non-reversionary Maximum Settlement Amount of $5,250,000.00—which is a significant recovery of 82.3% of the value of Defendant's overall *risk-adjusted, realistic, maximum* damages and 23.6% of Defendants' unadjusted maximum damages (not including any discount for the time value of money). Class Counsel setting forth their detailed unadjusted and risk-adjusted exposure for Defendants as to each Class, as well as collectively in the Siegel Declaration at Paragraphs ¶ 125.

The Settlement is well within the "zone of reasonableness" justifying preliminary approval and notice dissemination to the Class—and meets or exceeds settlements in similar wage and hour cases based on the percentage of recovered damages or on average recovery.[6]

---

[6] *See, e.g.*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2nd Cir. 1974); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-2540, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement where net amount represented 7.3 percent of plaintiffs' estimated trial award); *Balderas v. Massage Envy Franchising, LLC*, No. 12–cv–06327, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial); *Arredondo*, 2022 WL 396575, at *14-15 (E.D. Cal) (granting preliminary approval of

1   *See supra* Comparable Outcomes, ¶ VI.J; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

2   459 (9th Cir. 2000) (affirming district court's approval of class settlement representing one-

3   sixth of the potential recovery); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-2540, 2015

4   WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement where net amount

5   represented 7.3 percent of plaintiffs' estimated trial award); *Balderas v. Massage Envy*

6   *Franchising, LLC*, No. 12–cv–06327, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014)

7   (granting preliminary approval of a net settlement amount representing 5% of the projected

8   maximum recovery at trial);

9   **IV.    SUMMARY OF THE PROPOSED SETTLEMENT AND CLAIMS PROCESS**

10          The Settlement Agreement entered into by the parties is attached as **Exhibit 1** to the

11  Declaration of Elliot J. Siegel and incorporated herein by reference in its entirety. The

12  following is a summary of the principal terms of the Settlement Agreement:

13          **A.    The Settlement Sum, Attorneys' Fees, Costs, and Enhancement Award**

14          The non-reversionary Maximum Settlement Amount ("MSA") of $5,250,000.00 to

15  be paid by Defendant in full settlement includes: (1) Class Counsel's attorney's fees in a sum

16  $1.25 million settlement that represented 11% of the theoretical maximum recovery); *Ferrell v.*

17  *Buckingham Property Mgmt.* (E.D. Cal. Jan. 21, 2020) Case No. 1:19-cv-00332-LJO-SAB, 2020 WL

18  291042, *17-20 (granting preliminary approval of $600,000 wage and hour class and collective action

19  settlement that represented 5.2% of the original valuation of the claims); *Cooley v. Indian River Transp.*

20  *Co.* (E.D. Cal. Jan. 24, 2019) No. 1:18- CV-00491, 2019 WL 316634, at *8 (granting preliminary

21  approval of $1.4 million wage and hour class settlement representing 11% of potential liability);

22  *Thompson v. Costco Wholesale Corp.* (S.D. Cal. May 11, 2017) No. 14-CV-2778-CAB-WVG, 2017 WL

23  1957552, at *8 (granting preliminary approval of $2 million wage and hour class settlement reflecting

24  approximately 10% of exposure); *Ma v. Covidien Holding, Inc.* (C.D. Cal. Jan. 31, 2014) No. SACV 12-

25  02161- DOC, 2014 WL 360196, at *5 (granting preliminary approval of $2.5 million wage and hour

26  class settlement that represented 9.1% of total exposure as within "range of reasonableness");

27  *Munyan v. Nationwide Medical, Inc.*, No. BC579015, 2017 WL 6452647, at *6 (Cal. Super. Oct. 12,

28  2017) (approving settlement of $400,000, which represented 12% of potential recovery in wage-and-

hour case); *Solis v. Bottomley Distribution Co., Inc.*, No. 15-CV-287797, 2017 WL 1046615, at *3 (Cal.

Super. Mar. 03, 2017) (approving wage-and-hour class settlement that represented 8.1% of total

potential recovery of $3,307,479); *see also Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465

JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sorenson v. PetSmart,*

*Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. 2008) (wage and hour class action settlement

approved where average class member recovery was approximately $60); *Schiller v. David's Bridal,*

*Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 (E.D. Cal. June 11, 2012) (finding that

average payment to class members of less than $200 was a "good" result).

-13-

King & Siegel ⫴ LLP

of up to $1,750,000.00; (2) litigation costs of up to $50,000, but currently estimated at $30,000; (3) Class Representative' enhancement payment of up to $35,000.00; (4) settlement administration costs to Apex Class Action LLC, currently estimated at $10,000, but up to $50,000.00; and (5) PAGA penalties in the sum of $550,000, with $412,500.00 to be paid to the California Labor Workforce and Development Agency ("LWDA") and $137,500.00 to be paid to the Class. Settlement Agmt., at ¶¶ 34-39. Defendants will pay applicable employer-side payroll taxes *in addition* to the MSA. *Id*. ¶ 34.

### B.    Net Funds Available to Class Participants

Members of the Settlement Class who do not opt out of this Settlement will receive a lump sum payment as consideration for the release of claims set forth in Settlement Agreement, in an amount determined by the Settlement Administrator based on a workweek analysis of their time working for Defendant. Settlement Agmt., ¶ 52.

After all Court-approved deductions from the non-reversionary MSA, it is estimated that a minimum of $2,994,000 (the "Net Settlement Amount" or "NSA") will be distributed to the Class Members. *Id., ¶¶* 39-41. The Individual Settlement Payment made to each member of the Settlement Class not excluding themselves will be determined by dividing the Net Settlement Amount by the total number of Participating Class Workweeks worked by all members of the Settlement Class during the Settlement Period (the "Weekly Amount") and then multiplying the Weekly Amount by the number of Adjusted Individual Workweeks worked by the individual Class Member as determined by the Settlement Administrator, less any applicable employee-side withholding taxes. *Id.*, ¶ 56. However, workweeks worked by exempt employees shall be weighted at 5:1 to the workweeks worked by non-exempt employees to account for the difference in their legal claims and the minimum payment to any given Class Member shall be no less than $25 dollars.[7] *Id.*

The Settlement will result in a meaningful recovery for each Class Member with

---

[7] The Individual PAGA Payment made to each Aggrieved Employee will be determined by calculating the total number of pay periods in the PAGA Period and multiplying that by each Aggrieved Employee's pro rata portion of the PAGA payment allocated to Aggrieved Employees. *Id.*

Settlement Class Members being entitled to an average individual gross recovery of $11,904.76 per Class Member and average individual net recovery of $6,789.12 per Class Member, which meets or exceeds settlements in similar wage and hour cases. *Id*, ¶ 27.

When broken down by Class, Exempt Class Members will receive an average individual gross recovery of $13,803.68, equating to an average gross per workweek recovery of $261.52, and Non-Exempt Class Members will receive an average individual gross recovery of $6,521.74, equating to an average gross per workweek recovery of $183.69. *Id*., ¶ 126.

### C.    Release by Class and Plaintiff

Upon payment by Defendants, Named Plaintiff and all members of the Settlement Class, except those who make a timely and valid Request for Exclusion from the Class ("Participating Class Members"), will be deemed to have fully, finally and forever released, settled, compromised, relinquished, and discharged with respect to all of the Released Parties and any and all Released Claims during the Release Period.[8] Settlement Agmt., ¶¶ 62-63.

The claims released by the Classes are tailored to the facts, claims, and allegations of the Complaint and extend *only* to those claims actually asserted in the Complaint or that reasonably could have been alleged based on the factual allegations contained in the complaint. *Id*., ¶ 40 (the "Released Claims" means "those claims asserted in the Complaint or that reasonably could have been alleged based on the factual allegations contained in the operative complaint or LWDA letter, including but not limited to all of the following claims for relief: (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to provide meal periods or premium pay in lieu thereof, (4) failure to provide rest periods or premium pay in lieu thereof, (5) failure to reimburse necessary business expenses (6) failure to provide accurate itemized wage statements, (7) failure to pay wages when due or at the end of employment, (8) civil penalties under the Private Attorneys General Act ("PAGA"), and (9)

---

[8] Participating Class Members will be deemed to have acknowledged and agreed that their claims for wages and/or penalties in the Action are disputed, and that their Individual Settlement Amount constitutes payment of all sums allegedly due to them. *Id*. Participating Class Members will be deemed to have acknowledged and agreed that California Labor Code Section 206.5 is not applicable to the Individual Settlement Payment. *Id*.

unfair business practices."). The "Release Period" for the Class Release is the period from November 7, 2019 to September 6, 2024. *Id.*, ¶ 40.

The "PAGA Released Claims" is a *limited* release that only releases "claims by Aggrieved Employees for civil penalties under PAGA asserted in the Complaint or LWDA letter, or that could have reasonably been alleged based on the factual allegations contained in the Operative Complaint and PAGA Notice."[9] *Id.*, ¶ 41. The "Release Period" for the PAGA Release is the period from November 7, 2022 to September 6, 2024." *Id.*, ¶ 40.

The Release Periods are appropriate as they start at the respective openings of the statute of limitations periods, based on the filing of the complaint and service of the PAGA Letter and close as of mediation, when the Parties signed the MOU.

The "Released Parties" shall mean shall mean (i) Defendants Strategic Staffing Solutions-S3, L.L.C. and Cynthia J. Pasky, (ii) its respective past and present direct and indirect subsidiaries and affiliates of any of the foregoing; (iii) the past and present shareholders, directors, officers, agents, employees, clients, attorneys, insurers, predecessors, successors and assigns of any of the foregoing; and (iv) any individual or entity which could be jointly liable with any of the foregoing. *Id.*, ¶ 42.

The Releases embodied in the Settlement will *only* take effect upon the full funding of the MSA by the Defendant. Settlement, ¶¶ 39 ("The Release will only take effect upon the latter of the Effective Date and full funding of the MSA by Defendant.") (same for PAGA).

Plaintiff will enter into a general release that releases any and all claims she might possess against Defendants. *Id.*, ¶ 95.

**D.    Class Notice and Administration**

Subject to Court approval, the Parties agree to engage Apex Class Action LLC to administer the Settlement and to act as the Settlement Administrator to administer the settlement process, which includes but is not limited to distributing and responding to inquiries about the Notice Packet, determining the validity of any Workweek disputes and

---

[9] No Aggrieved Employee may opt out of the PAGA Release and will be bound by this Release regardless of whether they cash their Individual PAGA Payment. *Id.*

opt-outs, and calculating all amounts to be paid from the Net Settlement Amount. *See generally* Settlement Agmt. Charges and expenses of the Settlement Administrator will be paid from the Maximum Settlement Amount. *Id.,* ¶¶ 4, 28. If the actual Settlement Administrator fees are less than the Parties' estimation, the difference between the actual and estimated Settlement Administrator fees will be included in the Net Settlement Amount. *Id.,* ¶ 28.

The Notice Packet shall include the jointly agreed upon Notice of Class Action Settlement and Share Form. *Id.,* ¶ 31. The Notice Packet shall provide: (a) information regarding the nature of the Action; (b) a summary of the Settlement's principal terms; (c) the Settlement Class definition; (d) each Class Member's estimated Individual Settlement Payment and Individual PAGA Payment, as well as the formula for calculating both[10]; (e) the dates which comprise the Class Period; (f) instructions on how to submit valid Requests for Exclusion or objections; (g) the deadlines by which the Class Member must fax or postmark Requests for Exclusions or file and serve objections to the Settlement; (h) the claims to be released, as set forth herein; and (i) the date for the Final Approval Hearing. Siegel Decl., at ¶ 46; *see also* Class Notice (Siegel Decl., Exhibit (1)(A)).

The Notice Packet is neutral as to the merits of the proposed Settlement and "adequate to 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *7-Eleven Owners for Fair Franchising.*, 85 Cal. App. 4th at 1164.

Apex will provide notice and other settlement administration functions under the Settlement. They will identify the Class Members and ensure that their addresses are updated, mail out the Notice Packets, and if returned as non-deliverable re-mail to the forwarding address, as to all members of the Class. Siegel Decl., ¶¶ 157-160.

Prior to mailing, the Settlement Administrator will perform a search based on the

---

[10] The Notice sets forth a Class Members estimated Individual Settlement Payment *separately* from their Individual PAGA Payment, where applicable, and will include a separate check for the Individual PAGA Payment. *See* Siegel Decl., Exhibit (1)(A). It also defines both releases separately for Class Members, *id.*, pp.5-6, and informs recipients that they *cannot* opt out of the PAGA release regardless of whether they cash their Individual PAGA Payment, *Id.*, p.7.

National Change of Address Database for information to update and correct for any known or identifiable address changes. Any Notice Packets returned to the Settlement Administrator as non-deliverable on or before the Response Deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto and the Settlement Administrator will indicate the date of such re-mailing on the Notice Packet. If no forwarding address is provided, the Settlement Administrator will promptly attempt to determine the correct address using a skip-trace, or other search using the name, address, and/or Social Security number (or other Taxpayer Identification Number, if applicable) of the Class Member involved and will then perform a single re-mailing. Those Class Members who receive a re-mailed Notice Packet, whether by skip-trace or by request, will have between the later of: (a) an additional fifteen (15) calendar days; or (b) the Response Deadline to fax or postmark a Request for Exclusion, or file and serve an objection to the Settlement. Settlement Agmt., ¶ 65.

Within five (5) calendar days following receipt of the Class List, which will be provided by Defendant within five (5) calendar days of Preliminary Approval, the Settlement Administrator shall mail copies of the Notice Packet, containing the Class Notice, Exclusion Form, Objection Form, and individualized, populated Share Form, to all Class Members via First-Class Mail.[11] *Id.*, ¶ 64.

The Settlement Administrator will also set up a website at the time that mailing commences that will contain key deadlines and links to the Notice Packet, approval motions, preliminary and final approval orders, and other important case documents. Siegel Decl., ¶ 160. Class Members will also be apprised of the final judgment in this action by way of the website. *Id.*; *see also* Notice, p.8. The website will also include instructions on how to access the case docket via PACER or in-person, the date and time of the final approval hearing, as well as a notice to Class Members to check the website for updates. *Id.*; Notice, p.8.

This method of notice is the best means available to reach the greatest number of Class Members as Defendant has record of Class Member's most recent addresses and U.S. mail is

---

[11] The Settlement Administrator will also translate the Notice packet into Spanish prior to mailing.

King & Siegel ⫴ LLP

the most cost-effective mechanism for placing notice in front Class Members (and is less likely to be sent to an email junkbox). *See, e.g.*, *Arnett v. Bank of Am.*, N.A., No. 3:11-cv-1372-SI, at *6 (D. Or. Sep. 18, 2014) ("The Court finds that notice of the Settlement was given to the Settlement Class by the best means practicable under the circumstances, including mailing the Class Notice to Settlement Class Members by U.S. Mail, and publishing the Class Notice, Settlement Agreement, and other relevant documents on the settlement website.").

### 1.  Opportunity to be Excluded or Object

The Notice Packet includes an Exclusion, Objection, and Share Form for Settlement Class Members to allow Class Members to more easily exercise their rights with respect to the Settlement. Settlement Agmt., at ¶ 19; *see also* Class Notice (Siegel Decl., Exhibit (1)(A)).

Class Members will have 35 days from the date the Notice Packets (*i.e.*, the Notice of Class Action Settlement and Share Form) are mailed by the Settlement Administrator to postmark their request for exclusion or notice of objection. Settlement Agmt., at ¶¶ 43, 44. The date of the initial mailing of the Notice Packet, and the date of the postmark on the return mailing envelope will be the exclusive means to determine whether a request for exclusion has been timely submitted. *Id.,* ¶ 43. The postmark date of the filing and service will be the means for determining that notice is timely. *Id.,* ¶ 43. The Administrator's decision as to the total number of Individual Workweeks shall otherwise be final.

The Class Notice utilizes the suggested notice language contained in the Procedural Guidelines as to both opt-outs and objections. To opt out, a Class Member need only clearly state the intent to opt out and provide sufficient information to identify the Class Member. No specific information beyond this is required. Notice, p. 7. To object, a Class Member must submit an objection in writing, through PACER or in-person, to the Court that states (1) the grounds for the objection, with specificity; (2) whether it applies only to that Member, to a specific subset of either Class, or to the entire Class or Classes; and (3) contains the Case Number and name. *Id.*, p.8.

### 2.  The Notice Period

Class Counsel believes that the 35-day window to object is appropriate based on the

Class's interests in quick resolution and payment of their Individual Settlement Amounts set off against their interests in adequate periods of time to assess the Settlement. The 35-day window is an appropriate compromise between these competing interests and sufficient to allow the Class to make an informed decision as to participation or exclusion.

### 3. Share Forms

For each Settlement Class member, the Share Form will identify the number of Individual Workweeks that she/he was employed and their estimated Individual Settlement Payment. *Id.,* ¶ 46; *see also* Class Notice (Siegel Decl., Exhibit (1)(A)). The Notice Packet will also inform the employee of their right to dispute this number by completing and returning the form by their Response Deadline, which will be thirty (30) calendar days from the postmark date of the Share Form. *Id.,* ¶¶ 30; 49; *see also* Class Notice (Exhibit (1)(A)).

No Class Member is required to fill out a Share Form to receive payment and no Class Member will be denied a payment based on filling out or not filling out a Share Form—it is merely a convenience to allow Class Members to more easily dispute their workweek allocation. ¶ 50; *see also* Class Notice (Siegel Decl., Exhibit (1)(A)). Absent the receipt of a Share Form, the number of workweeks identified in the Share Form shall be deemed to be accurate. *Id.,* ¶ 49. Workweek disputes will be resolved and decided by the Settlement Administrator in consultation with Class Counsel and counsel for Defendant. The Settlement Administrator's decision on all Workweek disputes will be final. Settlement Agrmt., ¶ 57, n.3.

### E. Payment of the Maximum Settlement Amount and Distributions

Within 7 calendar days of the Effective Date (*i.e.,* the date Final Approval is granted assuming no pending objections as further detailed in the Settlement Agreement), the Settlement Administrator will provide the Parties with an accounting of the amounts to be paid by Defendant pursuant to the terms of the Settlement. Settlement Agmt., ¶ 50.

Defendant will pay the Maximum Settlement Amount, plus all the employer-side payroll taxes, into a Qualified Settlement Account to be established by the Settlement Administrator within 14 days of the accounting. Settlement Agmt., at ¶ 50.

If a Class Member does not exclude themselves, they will be mailed a check no later

-20-

King & Siegel ⫴ LLP

than seven (7) calendar days after Defendant's deposit of payment. Settlement Agmt., at ¶¶ 51. Any settlement checks that remain uncashed for more than 180 calendar days after issuance shall be voided, and the Settlement Administrator will transmit the entire amount of each uncashed Net Settlement Payment to the Funds, plus any accrued interest, to the approved *Cy Pres* Recipient. Settlement Agmt., at ¶ 72.

**F.    Tax Treatment**

Thirty percent (30%) of all Individual Settlement Payments shall constitute unpaid wages in the form of back pay (and each Class Participant will be issued an IRS Form W-2 for such payment to him or her), forty percent (40%) shall constitute civil penalties, and forty percent (40%) shall constitute interest (and each Class Participant will be issued an IRS Form 1099 for such payment to him or her). *See* Settlement Agmt., at ¶¶ 75-77. Employment taxes and other legally required withholdings will be withheld from payments to the members of the Settlement Class. *Id.* Defendant will bear the cost of all employer-side payroll taxes, which shall not be paid from the Settlement Amount.

**G.    Certification Reports**

The Settlement Administrator will provide Defendant's counsel and Class Counsel a weekly report which certifies: (a) the number of Class Members who have submitted valid Requests for Exclusion; and (b) whether any Class Member has submitted a challenge to any information contained in their Share Form or Notice Packet. Settlement Agmt., at ¶ 53. Additionally, the Settlement Administrator will provide to counsel for both Parties any updated reports regarding the administration of the Settlement Agreement as needed or requested. *Id.* No later than thirty (30) days prior to the deadline for Class Counsel to file its motion in support of the Final Approval and Fairness Hearing, the Settlement Administrator will compile and deliver to Class Counsel and Defense Counsel a declaration with summary information of the Notice process, including but not limited to (a) the total amount of final Individual Settlement Payments of each Settlement Class Member (b) the number of Settlement Class Members to receive such payments, (c) the final number of Requests for Exclusion/Opt-Outs and objections, (d) the Settlement Administrator's qualifications for

administration, and (e) an explanation of the steps taken to implement the Notice process as set forth in this Agreement. *Id.*

**V.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS UNDER THE LESSER STANDARD OF SCRUTINY FOR SETTLEMENT-ONLY CERTIFICATION IS APPROPRIATE FOR PURPOSES OF SETTLEMENT**

Under the 2019 amendments to Rule 23, "a court must [] make a preliminary finding that it will likely be able to [] certify the class for purposes of judgment on the proposal" if no class has yet been certified. *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019). To certify a class, the Court must find: (1) numerosity of the class; (2) common questions of law or fact; (3) that the named plaintiff's claims and defenses are typical; and (4) that the named plaintiff can adequately protect the interests of the class. F.R.C.P. 23(a). At the settlement stage, the dominant concern of Rule 23(a) is whether the proposed class has sufficient unity so that it is fair to bind absent class members to the decisions of the class representatives. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997).

The Settlement Class is comprised of the following two Classes of employees:

1.    *The Non-Exempt Class:* "*All non-exempt persons who worked at least one 3.5-hour shift for Defendants, whether as a direct-hire or agency employee, in the State of California during the Release Period.*"

2.    *The Exempt Class:* "*All persons who worked at least one 3.5-hour shift for Defendants in the State of California and were classified as an exempt employee during the Release Period.*"[12]

---

[12] While the class definition for the Exempt Class in the Settlement differs from the definition in the operative Complaint—as the definition in the complaint includes all exempt employees in three specific roles/titles—the difference is not material for purposes of approval. Prior to mediation, Class Counsel received the time and payroll records for the *entirety* of the Exempt Class as defined in the Settlement (through that date) and used that information to calculate Defendants' realistic and maximal exposure.[12] Thus, the Settlement already incorporates the value of the Exempt Class's claims as that Class is defined in the Settlement and there is no dilution of the Exempt Class's recovery based on the additional Exempt Class Members in the Settlement definition (to the extent that there even are any). Additionally, Class Counsel has also secured an "escalator provision" that will protect the Classes in case that the Class size or workweeks worked by the Class increase due to a data error or misrepresentation by Defendants by increasing the GSA commensurately with that increase over a small threshold. Settlement, ¶ 87.

Ex. 1, ¶ 8. These definitions satisfy Rule 23 for settlement purposes.

## B.    Numerosity and Ascertainability

The numerosity requirement of Rule 23(a)(1) is satisfied when joinder of individual plaintiffs would be impracticable. "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000); *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012). A survey of representative cases indicates that classes of more than 75 people typically satisfy the numerosity requirement. 7A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1762. There are approximately 441 class members. Siegel Decl., ¶ 26. This satisfies Plaintiff's burden regarding numerosity. *See*, *e.g.*, *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011). Siegel Decl., ¶ 6; *see also* Settlement Agmt., ¶ 33.

## C.    Commonality and Typicality

A class has sufficient commonality if there are questions of law or fact common to the class. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). "Because the Ninth Circuit construes commonality liberally, it is not necessary that all questions of law and fact be common." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (internal quotation marks and alterations omitted). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. Thus, commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), abrogated on other grounds by *Johnson v. California*, 543 U.S. 499, 504-05 (2005)). Commonality can be met even if there is only "a single issue common to the proposed class." *Ferrell v. Buckingham Prop. Mgmt.*, No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042, at *9 (E.D. Cal. Jan. 17, 2020); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (stating that even a single common question will satisfy Rule 23(a)(2)); *True v. American Honda Motor Co.*, 749 F. Supp. 2d 1052, 1064 (C.D. Cal. 2010); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996) (same); *In re Paxil Litig.*,

King & Siegel ⫴ LLP

212 F.R.D. 539, 549 (C.D. Cal. 2003).

The typicality requirement is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class," meaning they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* at 1020. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). Settlement Agmt., ¶ 33.

Plaintiff's claims are typical of the Settlement Class Members. She was subject to the same policies as all other Class Members, and suffered the same injuries. Norton Decl., ¶¶ 4-5. This satisfies Plaintiff's burden of showing commonality. *See, e.g.*, *Benitez v. W. Milling, LLC*, No. 1:18-cv-01484-SKO, 2020 U.S. Dist. LEXIS 10848, at *15 (E.D. Cal. Jan. 21, 2020) (finding commonality where "[t]he proposed class action stems from the same factual and legal issues" including whether rest period policies were adequate); *Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2019 U.S. Dist. LEXIS 196964, at *13 (S.D. Cal. Nov. 13, 2019); *Franco v. Ruiz Food Prods.*, No. 1:10-CV-02354-SKO, 2012 U.S. Dist. LEXIS 169057, at *5-6 (E.D. Cal. Nov. 27, 2012). While typicality is satisfied by the presence of one shared claim between the class representative and the Class Members, *see Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015), Plaintiff shares numerous claims and injuries with her fellow Class Members. Accordingly, her claims are typical of the class.

Additionally, the Parties agree that as it pertains to settlement, the Settlement Class' claims have commonality and Plaintiff's claims are typical of the Settlement Class. Settlement Agmt., §§ 49(a)-(c).

### D.    Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." This inquiry involves two prongs: (1) do the named plaintiff and their counsel have any conflicts of interest with Class Members and (2) will the named

plaintiffs and their counsel act vigorously on the Class's behalf. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

As noted above, Plaintiff's claims are typical of the Class and she has the same interest in this litigation—obtaining unpaid wages and civil penalties due to S3's Labor Code violations—as absent Class Members. Norton Decl., ¶ 3. Plaintiff is ready, willing, and able of performing her duties and understands the obligations she owes to Class Members. *Id.* ¶ 7.

Proposed Class Counsel has significant experience litigating complex cases, including employment cases, and has been appointed class counsel in wage and hour class actions similar to this one. Siegel Decl., ¶¶ 136-144. Class Counsel has diligently and vigorously represented the Class's interests in this matter. *See generally* Siegel Decl. Accordingly, Plaintiff and proposed Class Counsel satisfy the adequacy standard. Siegel Decl., ¶¶ 136-144; *see also* Settlement Agmt., ¶ 33. Neither Plaintiff nor proposed Class Counsel has any conflicts of interest with the Class Members. Siegel Decl., ¶ 153; Norton Decl., ¶ 38.

### E.    Superiority

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

The proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members. Predominance exists "[w]hen common questions present a

King & Siegel ⫴ LLP

significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Id.* As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 619-62. In this case, common questions of law and fact exist and predominate, including: whether Miller (1) unlawfully and/or willfully failed to compensate Class Members at a minimum wage for all hours worked as a result of its rounding policies; (2) has a common policy and/or practice of failing to maintain accurate payroll records in the State of California; (3) has a policy and/or practice of failing to pay Class Members final wages owed upon termination; and (4) violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, by violating the above provisions of law, by treating Class Members unfairly by depriving them of rest and/or meal periods, failing to provide them with compensation in lieu of meal and/or rest periods, failing to pay wages upon termination, failing to furnish accurate and timely itemized wage statements upon payment of wages, and failing to timely pay compensation. Siegel Decl. ¶ 42.

Further, the class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. *Id.* ¶ 43. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. *Id.* Individualized litigation also presents a potential for inconsistent or contradictory judgments. *Id.* In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. *Id.* Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## VI.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, WHICH IS FAIR, ADEQUATE, AND REASONABLE

### A.  Legal Standard

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action

settlements. F.R.C.P. 23(e). At the preliminary approval phase, the Court should consider whether it will be likely to: "(i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Further, the Court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." F.R.C.P. 23(e)(2).

Under F.R.C.P. 23(e)(2), the factors for determining if a settlement is fair and reasonable are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

> In conducting this analysis, district courts consider various factors:
>> *the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of class members to the proposed settlement.*

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

While courts must be careful to discern whether the settlement is a product of fraud, collusion, or overreaching by the negotiating parties, the court should not "intru[de] upon what is otherwise a private consensual agreement negotiated between the parties." *Id.* at 1027. In reviewing a motion for preliminary approval, courts should ultimately recognize that "[s]trong judicial policy favors settlements." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). To grant preliminary approval of this class action settlement, the Court need only find that the settlement falls within the range of possible approval, *i.e.*, "the range of reasonableness." *See, e.g., Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL

1  3050861, at *5 (N.D. Cal. 2006); *In re DJ Orthopedics, Inc. Sec. Litig.*, No. 01-CV-2238KRBB,

2  2004 W.L. 1445101, at *2 (S.D. Cal. June 21, 2004); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610,

3  615 (N.D. Cal. 1979); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976).

4  The Settlement meets and exceeds this threshold.

5  **B.    The Settlement Is The Result Of Informed, Non-Collusive Negotiations**

6  The settlement was the product of extensive arm's length negotiations and was

7  mediated by a professional and well-respected third-party neutral. Siegel Decl., ¶ 17. The

8  mediation and settlement negotiations were adversarial and non-collusive in nature. *Id*. The

9  Settlement reached is the product of substantial effort by the Parties and their counsel and

10 was entered into only after Class Counsel thoroughly investigated the merits and weaknesses

11 of the claims and defenses applicable to the Action. *Id*.; *see generally*, Siegel Decl.

12 **C.    The Extent Of Discovery And Litigation Was Sufficient To Permit**

13 **Preliminary Approval Of The Settlement**

14 Class Counsel thoroughly investigated and evaluated the factual and legal strengths

15 and weaknesses of this case before reaching the Settlement. As described above, the

16 Settlement was reached after extensive investigation and research, calculations and risk

17 evaluation, substantial exchanges of formal and informal discovery and production of

18 documents, numerous motions to compel discovery and impose sanctions, Class Counsel's

19 thorough factual investigation and expert damages assessments, and interviews and

20 declarations from putative Class Members—all of which was sufficient to evaluate

21 Defendant's liabilities and defenses. Siegel Decl., ¶¶ 20-21. The Settlement came only after

22 the case was thoroughly litigated by Class Counsel. *Id*.

23 **D.    The Settlement and Reflects a Fair Compromise of Claims and Risk**

24 To assess the fairness, adequacy, and reasonableness of a class action settlement, the

25 Court also should consider "[t]he strength of plaintiff's case, the risk, expense, complexity

26 and likely duration of further litigation, [and] the risk of maintaining class action status." *See*

27 *Dunk*, 48 Cal. App. 4th at 1801. As described above and detailed in the Siegel Decl.,

28 Defendant has asserted defenses to Plaintiff's claims, which create a real possibility that the

1    claims might not all be certified and/or might fail on the merits. Siegel Decl., ¶¶ 28-51.

2        Another risk inherent in continued litigation is the risk of non-certification and
maintaining class action status through trial, and appeal. There was risk that Defendant could

4    defeat class certification or merits as to the rounding and unpaid meal and rest period claims

5    and a very real possibility that the Court reduce the value available discretionary penalties,

6    which comprise a significant portion of the value of the Class's claims. Siegel Decl., ¶ 129.

7        In considering these risks, Class Counsel's analysis strongly militated towards the

8    Settlement. Siegel Decl., ¶¶ 73, 86-88. Proceeding with litigation would impose a significant

9    risk of substantially lower recovery as well as ongoing, substantial additional expenditures of

10   time and resources. If settlement were not achieved, continued litigation of the claims would

11   take a substantial amount time and possibly confer less benefit to Class Members. *Id.*

12       By contrast, the Settlement will yield a *prompt*, *certain*, and *substantial* recovery for the

13   Class, which also benefits the Parties and the Court. *Id.,* ¶ 125.

14       Although Plaintiff and Class Counsel believe the Class's claims have merit and that

15   they could have potentially certified the class and claims, they recognized the potential risk,

16   expense, and complexity posed by litigation, such as unfavorable decisions on class

17   certification, summary judgment, at trial and/or on the damages awarded, and/or on an

18   appeal that can take several more years to litigate. Siegel Decl., ¶ 129.

19       The resulting Settlement was based on Class Counsel's informed calculations, risk

20   assessment, and non-collusive negotiation; it takes the risks identified above and others into

21   account in arriving at the non-reversionary settlement of $5,250,000.00. *Id.*, ¶ 125.

22       **E.    The Class Notice Plan Conforms To All Applicable Statutes and Rules**

23       The proposed Class Notice should be approved, as it fully informs the Class Members

24   of the nature of the lawsuit and each Class Member's rights under the terms of the Settlement

25   Agreement and applicable law. *See* Settlement Agmt., Exhibit A. The manner in which the

26   Class Notice shall be disseminated, as outlined above, will ensure that all or nearly all of the

27   Class Members will be properly notified of the proposed Settlement. *Id.*

28       The notice plan and the Class Notice satisfy all the requirements under the FRCP and

afford Settlement Class Members with all due process protections required by the United States Constitution. Moreover, the contents of the Class Notice are in compliance with the Procedural Guidelines because the Notice includes, without limitation (1) a detailed explanation of the case, including the basic contentions or denials of the parties; (2) a statement that the court will exclude the member from the class if the member so requests by a specified date; (3) a procedure for the member to follow in requesting exclusion from the class; (4) a statement that the judgment, whether favorable or not, will bind all members who do not request exclusion; and (5) a statement that any member who does not request exclusion may, if the member so desires, enter an appearance through counsel. *See* Settlement Agmt., Exhibit A. The 35-calendar day response deadline for Class Members to exclude themselves, object, or challenge their Workweeks is reasonable, as it provides Class Members with ample time to do so and, if they so choose, to seek independent legal advice in the interim.

**F.    The Settlement Treats Class Members Equitably Relative To Each Other**

Matters of concern for the Court may include "whether apportionment of relief among class member takes appropriate account of differences among their claims." F.R.C.P. 23(e)(2), 2018 advisory committee notes. As noted above, the allocation of the NSA is to be made pro rata based on workweeks worked by the Settlement Classes, however, workweeks worked by exempt employees shall be weighted at 5:1 to non-exempt employees. This allocation is appropriate based on ratio of *realistic* maximum exposure for each Settlement Class's claims, which is roughly in line with a five-to-one ratio, *i.e.*, 16.66%. That is, the realistic maximum exposure for the Exempt Class is $5,365,065, while the realistic maximum exposure for the Non-Exempt Class is $1,012,569, which is a ratio of 18.87%, only 2% off the allocation ratio. Siegel Decl., ¶ 124. The 5:1 ratio represents a reasonable compromise between administration efficiency and the difference in expected value between the claims of the two Settlement Classes and is appropriate.

**G.    Class Counsel Are Experienced In Similar Wage-And-Hour Litigation.**

The view of the attorneys actively conducting the litigation is entitled to significant weight in deciding whether to approve the settlement. *Ellis v. Naval Air Rework Facility*, 87

F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 128 (2008) (court must take into account "the experience and view of counsel."). Class Counsel are experienced wage-and-hour practitioners and litigators who have worked for several of the country's top litigation firms and have been certified as adequate and competent class counsel in numerous other wage-and-hour class actions. Siegel Decl., ¶¶ 136-144; Villegas Decl., ¶¶ 2-10.

Class Counsel believes that this Settlement is fair and reasonable in light of the nature of the claims, realistic risk adjusted value of damages, complexities of the case, the state of the law, and uncertainties of class certification and litigation. Given the risks inherent in litigation and the defenses asserted, this Settlement is fair, adequate, and reasonable and in the best interests of Class Members and should be preliminarily approved. *Id.* The Settlement is also consistent with other similar settlements that have received approval in California Federal District Courts. Siegel Decl., ¶ 126, fn. 15.

**H.    The Attorneys' Fees Under the Settlement Agreement Are Fair**

Per the terms of the Settlement and engagement,[13] Class Counsel is requesting one-third of the MSA in attorneys' fees, or $1,750,000.00. Siegel Decl., ¶ 145. This is within the range of approved attorneys' fees and costs in other class actions and is justified under the facts of the case. Siegel Decl., ¶¶ 150-151.

Such awards are presumptively reasonable under California law for wage-and-hour class action cases, which arise under California law and require the application of California fee jurisprudence. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, No. 13-cv-0561, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (collecting cases; observing that "[d]ecisions in analogous wage and hour suits have found awards of one-third of the common fund appropriate"); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6–7 (C.D. Cal. July 27, 2010) ("[A] review of California cases in other districts reveals that courts usually award attorneys' fees in the 30-40% range in

---

[13] Counsel's engagement provides for fees up to one-third of the MSA. Siegel Decl., ¶ 124. The Settlement authorizes an application for up to one-third of the MSA in attorneys' fees, or $1,750,000, and up to $50,000 in costs. Ex. 1, ¶¶ 32-33.

King & Siegel ⦀ LLP

wage and hour class actions that result in recovery of a common fund under $10 million.").[14]

As California appellate courts have made clear, one-third of the common fund is a reasonable percentage for a trial court to award as attorneys' fees when a class action litigation establishes a monetary fund for the benefit of the class members. *See, e.g.*, *Laffitte II*, at 506 (affirming award of 33% of the common fund); *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); *Laffitte v. Robert Half Intern. Inc.*, 180 Cal.Rptr.3d 136, 149 (2014) ("*Laffitte I*") ("[T]he trial court's use of a percentage of 33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits").[15]

Among other things, an award of one-third is appropriate because "the amount of attorney fees typically negotiated in comparable litigation should be considered in the assessment of a reasonable fee in representative actions. . . Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law through class . . . actions, attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it will otherwise be economic for defendants to increase injurious behavior."[16]

---

[14] *See also Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297–98 (N.D. Cal. 1995) (citation to 73 district court opinions in which fees awarded ranged from 30 to 50%); *Martin v. FedEx Ground Package System, Inc.*, 2008 WL 5478576, at *8 (N.D. Cal. Dec. 31, 2008) (federal district court approved attorneys' fees of one-third of common fund); *Stuart v. RadioShack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010) (approving fee award of one-third of the total maximum settlement and noting that the fee award of one-third of the total settlement was "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Wilson v. Kiewit Pacific Co.*, No. 09-cv-03630, ECF No. 119 (N.D. Cal. 2012) (approving fee award of one-third of the common fund and noting that such award is fair, reasonable and appropriate); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, * 8 (S.D.Ca. June 1, 2010) (approving attorney fee award of 33.33% and holding that award was similar to awards in three other wage and hour class action cases where fees ranged from 30.3% to 40%).

[15] Because the California Supreme Court affirmed *Laffitte I* it may be cited as precedent. *See* California Rules of Court, Rule 8.115(e)(2).

[16] "Courts agree that, because the percentage-of-the-benefit approach is result-oriented rather than process-oriented, it better approximates the workings of the marketplace than the lodestar approach." *Lealao*, *supra* 82 Cal. App. 4th at 48.

King & Siegel ⫴ LLP

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 47 (2000). "Regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008).

Many other district courts have also found fee awards of one-third of the fund to be reasonable. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upholding district court's award of 33 1/3 percent of the settlement fund); *Williams v. MGMPathe Commc'n Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (33% awarded); *Singer v. Becton Dickinson & Co.*, No. 08–CV–821–IEG, 2010 WL 2196104 (S.D. Cal. June 1, 2010) (awarding 33.33% of $1 million settlement fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (awarding 33.33% of $300,000 settlement fund); *Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *30 (C.D. Cal. Nov. 23, 2013) (awarding 30% of the $2.5 million settlement fund); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (awarding fees of one-third of common fund in a wage and hour class action: "[f]ee awards in class actions average around one-third of the recovery.").

Indeed, Class Counsel has received final approval for fees of one-third of the common fund in two other wage and hour class action settlements approved by District Courts in the Ninth Circuit. *See* Siegel Decl., ¶ 147.

Moreover, Class Counsel prosecuted the putative class's claims on a contingency basis, thereby bearing the risk of no recovery despite investing hundreds of hours and thousands of dollars in expenses into prosecuting and resolving the case. Siegel Decl., ¶ 148.

Class Counsel continues to incur time on this matter and respectfully requests that the Court consider the fairness of any attorneys' fees and costs at the final approval hearing, for which Class Counsel will file a motion for fees and costs. In compliance with the Procedural Guidance § 6, Class Counsel's lodestar to date is approximately $281,667.50 after spending 414.3 hours on this matter.[17] Villegas Decl., ¶ 13; Siegel Decl., ¶ 149.

---

[17] Class Counsel's costs to date are approximately $26,889.56. *Id.*, ¶ 156.

King & Siegel ⫴ LLP

**I.      The Class Representative Enhancement Award is Fair and Appropriate**

The parties request payment of an $35,000 Enhancement Award from the MSA to the Class Representative in addition to her individual share of the NSA.

Incentive awards for representative plaintiffs are both proper and routine to induce people to step forward and assume the burdens and obligations of representing a class. *Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) (awarding $50,000 incentive payments to class representatives); *In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 377 (S.D. Ohio 1990) (awarding $35,000 to $55,000 incentive payments to class representatives).

In determining the appropriate amount of an incentive award, the Court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation, as well as the risk to plaintiff's professional reputation by prosecuting, lending "his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts v. Texaco*, 979 F. Supp. 185, 201 (S.D.N.Y. 1997); *see also Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985).

Given Plaintiff's significant involvement, assistance in prosecuting this case and the negotiation of this Settlement, reputation risk and harms she incurred in being the public face of the suit, and the value of the Settlement to the Class Members, the Payment should be approved. *See generally* Declaration of Paula Norton. The $35,000 Payment falls within the range of incentive payments in similar actions. *See e.g.*, *Louie v. Kaiser Found. Health Plan, Inc.*, CASE NO. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *18 (S.D. Cal. Oct. 6, 2008) (approving "$25,000 incentive award for each Class Representative" in wage and hour settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17, n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class"); *Glass v. UBS Fin.*

-34-

1  *Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *52 (N.D. Cal. Jan. 26, 2007)

2  (approving "payment of $25,000 to each of the named plaintiffs is appropriate).

3      **J.**      **There Are No Other Related Agreements**

4          Rule 23(e)(3) requires parties to identify "any agreement made in connection with"

5  the settlement. This provision is aimed at "related undertakings that, although seemingly

6  separate, may have influenced the terms of the settlement by trading away possible advantages

7  for the class in return for advantages for others." F.R.C.P. 23(e). Plaintiff and Class Counsel

8  have not entered into any such agreements.

9      **K.**      **Comparable Outcomes in Similar Class Action Settlements**

10         Settlement and litigation outcomes in comparable cases involving the same or similar

11 claims have received preliminary and final approvals in the Northern and Central District

12 Courts. The chart below summarizes these cases. *See* Siegel Dec., ¶¶ 164-179.

| Case Name | *Lim v. Transforce, Inc.* | *Nelson v. Avon Prods.* | *Sayaman v. Baxter Healthcare Corp.* |
|---|---|---|---|
| **Claims Released** | Misclassification as IC, overtime, meal/rest periods, regular rate, derivative penalties, UCL | Misclassification as exempt, overtime, derivative penalties, PAGA, UCL | Misclassification as exempt; overtime; derivative penalties, PAGA, UCL |
| **Settlement** | $15,500,000 | $1,800,000 | $2,600,000 |
| **Class Size** | 1,580 | 289 | 279 |
| **Notice** | U.S. Mail | U.S. Mail | U.S. Mail |
| **Participation** | 1,566; 99% (3 opt-outs) | 289; 100% | 241; 86.3%; 2 opt outs |
| **Average Recovery** | $6,176 average gross recovery | $6,228.37 average gross recovery | $9,319.00 average gross recovery |
| **Cy Pres** | partial reversion for payroll taxes; remainder to class | No *cy pres*; funds deposited with DLSE | partial reversion for payroll taxes; remainder to class |
| **Admin. Costs** | $82,113 | $17,911 | $22,598.05 |
| **Attorneys' Fees and Costs** | $4,350,000 in fees and $74,600 in costs (representing 28% of the common fund) | $600,000 in fees and $70,000 in costs (representing one- | $650,000 in fees and $30,000 in costs (representing 25% of the common fund) |

| | | third of the common fund) | |
|---|---|---|---|
| **Total Exposure** | "Plaintiffs do not provide an estimate of the potential recovery at trial" *Lim*, at *13 | $7,500,000 to $15 million (12%-24% of exposure) | $5 million (52%-54% of exposure) |
| **Incentive Award** | $13,750 for plaintiff | $100,000 for 18 plaintiffs | $50,000 for two plaintiffs |

## VII.   <u>APEX LLC SHOULD BE APPROVED AS ADMINISTRATOR</u>

Class counsel proposes that the Court appoint Apex Class Action LLC to serve as the Settlement Administrator. Siegel Decl., ¶ 157. Class Counsel solicited bids from several potential settlement administrators and selected Apex based on their bid amount (which was the most competitive), their experience in administering class action settlements, and Class Counsel's prior experience with Apex. Siegel Decl., ¶ 157. Apex provided a discounted, flat-fee quote of $8,500 to administer this Settlement with notice in both English and Spanish. Declaration of Sean Hartranft. Mr. Hartranft's declaration also attests to Apex's qualifications, data protection efforts, insurance coverage, and itemized administration costs/duties for this Settlements. Apex is experienced in administering class action settlements and is qualified to administer this Settlement. *See id.*

## VIII.   <u>THE *CY PRES* RECIPIENT COMPORTS WITH F.R.C.P. 23</u>

In the Ninth Circuit, a *cy pres* distribution of unclaimed funds is appropriate "as long as an appropriate nexus existed between the issues underlying the case and the *cy pres* recipients." *Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016); *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (*cy pres* "must account for the nature of the [] lawsuit, the objectives of the underlying statutes, and the interests of the silent class members."). The *Cy Pres* Recipient is the State Bar of California's Justice Gap Fund. Declaration of Doan Nguyen ("Nguyen Decl."), ¶¶ 3-8. The *Cy Pres* Recipient has a sufficient nexus to the case as it will use any residual monies to further the purpose of this suit by providing free legal assistance or grants to support indigent Californians' access to the Courts to, among other things, obtain

redress for employer non-compliance with the Labor Code.[18] *See* Nguyen Decl.

## IX.    CONCLUSION

For all of the foregoing reasons, the Plaintiff respectfully requests that the Court grant preliminary approval of the Parties' Settlement, order dissemination of notice to the Class, and set a hearing date for final approval on or after May 5, 2025.

Dated: December 19, 2024                     Respectfully Submitted,
                                            KING & SIEGEL LLP


                                            By: _____
                                            Elliot J. Siegel
                                            Attorneys for Plaintiff and the Class

Dated: December 19, 2024                     Respectfully Submitted,
                                            LAW OFFICE OF XAVIER VILLEGAS,
                                            APC


                                            By: _____
                                            Xavier Villegas
                                            Attorney for Plaintiff and the Class

---

[18] Neither the Parties nor Class Counsel have any interest or relationship, financial or otherwise, with the *Cy Pres* Recipient. Siegel Decl., ¶ 163.