UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA NORTON,<br><br>          Plaintiff,<br><br>     v.<br><br>STRATEGIC STAFFING SOLUTIONS, L.C., et al.,<br><br>          Defendants. | Case No.  3:23-cv-06648-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. Nos. 37, 40 |

In this wage and hour action, Plaintiff alleges Strategic Staffing Solutions-S3, LLC and Cynthia Pasky, S3's Chief Executive Officer, systematically misclassified its recruiters as exempt employees.  Plaintiff now moves for preliminary approval of a class action settlement resolving these claims.  (Dkt. No. 37.[1])  Having considered the briefing and relevant legal authority, including Plaintiff's two supplemental submissions and revised notices, and having had the benefit of oral argument on January 23, 2025, the Court GRANTS the motion for preliminary approval.

**BACKGROUND**

Plaintiff initially filed this putative class action in the San Francisco County Superior Court bringing claims for: (1) failure to pay minimum wages for all hours worked; (2) failure to pay overtime wages; (3) failure to provide meal periods or premium pay in lieu thereof; (4) failure to provide rest periods or premium pay in lieu thereof; (5) failure to reimburse necessary business expenses; (6) failure to provide and maintain accurate payroll records; (7) failure to pay wages when due; (8) PAGA penalties; and (9) violation of California's Unfair Competition Law.  (Dkt. No. 2-1.)  Defendant removed the action to this court asserting jurisdiction under the Class Action

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2)(A).

Following removal, the parties stipulated to amendment of the complaint and Plaintiff filed the now operative First Amended Complaint pleading an additional claim challenging Defendants' requirement employees sign noncompete agreements and adding a proposed class of non-exempt employees asserting many of the same labor code violations. (Dkt. Nos. 24, 27.) The parties then agreed to private mediation and exchanged formal and informal discovery in preparation. On September 6, 2024, the parties attended an all-day mediation with Judge Peter D. Lichtman (Ret.) and reached a classwide resolution of Plaintiff's claims. The now pending motion for preliminary approval followed. Prior to the hearing on the motion for preliminary approval, the Court issued an Order requesting the parties be prepared to address certain issues at the hearing. (Dkt. Nos. 37, 38.) Plaintiff submitted a response to the Court's Order which included a revised notice and amended notice plan. (Dkt. No. 40.) At oral argument, the Court requested additional changes to the notice, which the parties made and submitted a supplemental notice. (Dkt. Nos. 42, 43.)

**THE SETTLEMENT AGREEMENT**

**A.     The Settlement Class**

The Settlement Class is composed of two classes:

> 1. The Non-Exempt Class: All non-exempt persons who worked at least one 3.5-hour shift for Defendants, whether as a direct-hire or agency employee, in the State of California during the Release Period.
>
> 2. The Exempt Class: All persons who worked at least one 3.5-hour shift for Defendants in the State of California and were classified as an exempt employee during the Release Period.

(Dkt. No. 37-2, Settlement Agmt. § 17.)

**B.     Payment Terms**

The Settlement Agreement requires Defendants to establish a non-reversionary Gross Settlement Fund of $5,250,000. (*Id*. at ¶ 22.) Under the Settlement Agreement, the following amounts may be deducted from the Gross Settlement Fund to yield the Net Settlement Fund:

1) $1,700,000 in attorneys' fees, subject to Court approval;

2) $50,000 in litigation costs, subject to Court approval;

3) $35,000 as a Class Representative incentive payment, subject to Court approval;

2

4) $8,500 in estimated settlement administration costs, subject to Court approval; and

5) $550,000, for the PAGA released claims, with 75 percent ($412,500) paid to the California Labor and Workforce Development Agency and 25 percent ($137,500) paid to class members, subject to Court approval.

The remaining Net Settlement Fund of at least $2,856,500 will be distributed to class member in pro rata shares based on the number of workweeks worked. Workweeks worked by exempt employees shall be weighted at 5:1 to the workweeks worked by non-exempt employees to account for the difference in their legal claims. (*Id*. at ¶ 57.) The minimum payment to any given class member shall be no less than $25 dollars. (*Id*.)

**C.  Scope of Release**

Class members who do not timely opt out of the settlement, release the following:

> those claims asserted in the Complaint or that reasonably could have been alleged based on the factual allegations contained in the operative complaint or LWDA letter, including but not limited to all of the following claims for relief: (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to provide meal periods or premium pay in lieu thereof, (4) failure to provide rest periods or premium pay in lieu thereof, (5) failure to reimburse necessary business expenses, (6) failure to provide accurate itemized wage statements, (7) failure to pay wages when due or at the end of employment, (8) civil penalties under the Private Attorneys General Act ("PAGA"), and (9) unfair business practices.

(*Id*. at ¶ 39.)

Aggrieved employees also release any

> civil penalties under PAGA asserted in the Complaint or LWDA letter, or that could have reasonably been alleged based on the factual allegations contained in the Operative Complaint and PAGA Notice.

(*Id*. at ¶ 41.)

The Class Representative, Paula Norton, releases a broader set of claims arising out of her employment. (*Id*. at ¶ 81.)

**D.  Notice**

Subject to Court approval, the parties agree to engage Apex Class Action LLC to administer the Settlement and to act as the Settlement Administrator to administer the settlement process, which includes but is not limited to distributing and responding to inquiries about the

notice packet, determining the validity of any workweek disputes and opt-outs, and calculating all amounts to be paid from the Net Settlement Amount.  (*Id*. at ¶¶ 63-76.)

### E.     Opt-Outs and Objections

Class members have 35 days from the date notice is mailed/emailed to file a request for exclusion or notice of objection.  (*Id*. at ¶¶ 43, 44.)

## DISCUSSION

A class action settlement agreement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). When, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

## I.     CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.     Rule 23(a)

The Rule 23(a) factors are satisfied.

First, the class is sufficiently numerous.  Class Counsel estimates there are 441 class

4

1 members. (Dkt. No. 37-1, Siegel Decl. at ¶ 27.)

2 Second, the typicality requirement is satisfied. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (cleaned up). Here, Plaintiff challenges a course of conduct that applied to all putative class members; namely, that Defendants systematically misclassified recruiters as exempt and subjected exempt and non-exempt employees to labor code violations, thus injuring all class members in the same or a similar way. (Dkt. No. 37-14, Norton Decl. at ¶ 3-5, 6.)

Third, the commonality requirement is similarly satisfied because there are common questions of law and fact that relate to Defendants' alleged violation of California wage and hour laws. "The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims depend upon a common contention that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *A.B.*, 30 F.4th at 839 (cleaned up).

Finally, the adequacy of representation requirement is met as to both the Class Representative and Class Counsel. Adequacy of representation requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (cleaned up). There is no apparent conflict between the Class Representative and class members, and the Class Representative and Class Counsel have vigorously pursued this action on behalf of the class.

**B.     Rule 23(b)(3)**

As previously discussed, Rule 23(b)(3) requires a plaintiff to establish the predominance of common questions of law or fact and the superiority of a class action relative to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) includes the

following non-exhaustive list of factors pertinent to the predominance and superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

### 1. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation marks omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id*. (quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id*. (quotations omitted).

The Court is satisfied that the core common questions in this case—whether Defendants properly classified class members as exempt; whether Defendants failed to authorize and/or permit timely and/or uninterrupted meal periods; whether Defendants filed to pay overtime premiums; whether Defendants failed to reimburse class members for business-related expenses; whether Defendants failed to provide timely and accurate pay statements; and whether Defendants included illegal noncompete provisions in class member employment agreements —predominate over any differences regarding its implementation of those policies with respect to individual employees. Accordingly, the Court concludes that common questions of law and fact predominate.

### 2. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the

1  difficulties likely to be encountered in the management of a class action. *Id.*

2  First, there is no indication members of the proposed class have a strong interest in individual litigation or an incentive to pursue their claims individually. *See Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010). Second, any concerns over manageability of the class action in this case would not weigh in favor of individual litigation given that Defendants' liability to class members depends on common proof regarding the allegedly unlawful employment practices at issue. Finally, class actions are preferred in wage-and-hour actions when individual employees may forgo pursuing their claims due to fear of retaliation. *See Williams v. Superior Ct.*, 3 Cal. 5th 531, 558 (2017) (noting that fear of retaliation cuts in favor of "facilitating collective action so that individual employees need not run the risk of individual suits").

\*\*\*

Accordingly, the Court concludes conditional certification of the class for settlement purposes is proper.

## II. PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

> (1) the strength of the plaintiffs case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The Ninth Circuit has identified three such signs:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> 3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).

**A.     Whether the Settlement is Fair, Adequate, and Reasonable**

**1.     Settlement Process**

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel

8

1    conducted prior to reaching an agreement." *Id*.

2    The settlement here was reached on a well-developed record after extensive factual and
3    legal investigation of the claims including:

> (a) numerous telephonic conferences with Plaintiff regarding her experiences at Defendants' facility and interpretation of the data provided; (b) inspection and analysis of numerous time records, payroll, policy documents, and other information produced by Defendants in formal and informal discovery; (d) investigation into the viability of class treatment of the claims asserted in the operative Complaint; (e) analyses of potential class-wide damages, including information sufficient to understand Defendants' potential defenses to Plaintiff's class-wide and individual claims; (f) research of the applicable law with respect to the claims asserted in the operative Complaint and the potential defenses thereto; (g) assembly and analysis of data for calculating damages; (h) contacting, interviewing, and obtaining declarations and statements from putative Class Members regarding the claims at issue; and (i) hiring the services of an expert to analyze and prepare Defendants' exposure.

(Dkt. No. 37-1, Siegel Decl. at ¶ 15.) The parties reached the settlement following a full-day mediation session with a retired judge who specializes in mediation of wage and hour class actions and employment litigation. (*Id.* at ¶ 17.) The settlement thus appears the product of serious, informed, non-collusive negotiations. This factor weighs in favor of approval.

### 2.    Lack of Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947.

The only preferential treatment is the service award for the named Plaintiff, subject to Court approval. Such "[i]ncentive awards are fairly typical in class action cases ... to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958 (9th Cir. 2009) (cleaned up). While the Court has concerns regarding the $35,000 service award sought here as it is substantially higher than amounts typically awarded by courts in this Circuit, *see, e.g*., *Staton v. Boeing Co*., 327 F.3d 938, 976-78 (9th Cir. 2003), the Court will defer ruling on the appropriateness of the amount requested until final approval. At this stage, there is

no indication the service award in general constitutes "preferential treatment" such that it would defeat preliminary approval.

### 3. Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiff's case.

The Settlement Agreement is within the range of possible approval. Plaintiff estimates the maximum potential damages and penalties recoverable for both classes—before accounting for any risks or present value discount—was $22,252,525. The gross settlement amount of $5,250,000 represents 23.6% of the total exposure. (Dkt. No. 37-1, Siegel Decl., at ¶ 108.) Although Plaintiff and Class Counsel believe the classes' claims have merit and that they could have certified the classes and claims, they recognized the potential risk, expense, and complexity posed by litigation, such as unfavorable decisions on class certification, summary judgment, at trial and/or on the damages awarded, and/or on an appeal that can take several more years to litigate. (*Id*. at ¶ 129). Given these risks, the Court concludes that the settlement amount is reasonable and in keeping with the range of reasonableness. *See Stovall-Gusman v. W.W. Granger, Inc*., No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (collecting cases).

### 4. Obvious Deficiencies

Finally, the Court considers whether there exist any obvious deficiencies in the settlement agreement. *Harris*, 2011 WL 1627973, at *8. This factor weighs in Plaintiff's favor as no obvious deficiencies exist on the face of the settlement agreement.

\* \* \*

Having weighed the relevant factors, the Court preliminarily finds the settlement agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

## III. PAGA REPRESENTATIVE ACTION SETTLEMENT APPROVAL

A PAGA representative action is a" type of qui tam action" in which a private plaintiff "sues as an 'agent or proxy'" of the State. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639,

1   645 (2022). Accordingly, there are "fundamental differences between PAGA actions and class

2   actions." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (cleaned up).

3   However, like a class action settlement, courts must review and approve any settlement

4   "because a settlement of PAGA claims compromises a claim that could otherwise be brought by

5   the state." *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708-LHK, 2017 WL 3670794, at

6   *2 (N.D. Cal. Aug. 25, 2017) (quoting Cal. Lab. Code § 2699(l)(2)). Moreover, "[a] party seeking

7   approval of a PAGA settlement must simultaneously submit the proposed settlement to the

8   [LWDA] to allow the LWDA to comment on the settlement if the LWDA so desires." *Id*. at *3.

9   When reviewing a PAGA settlement the court should review it "to determine whether it is fair,

10  reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations,

11  deter future ones, and to maximize enforcement of state labor laws." *Moniz v. Adecco USA, Inc.*,

12  72 Cal. App. 5th 56, 77 (2021), disapproved of by *Turrieta v. Lyft, Inc*., 16 Cal. 5th 664 (2024).

13  Here, as discussed above, the Settlement Agreement provides robust relief for the class

14  members' labor code claims. Additionally, the PAGA allocation represents about 10 percent of

15  Plaintiffs' potential PAGA recovery at trial, and about 10 percent of the overall settlement

16  recovery. (Dkt. No. 37-1, Siegel Decl. at ¶ 133.) That the PAGA recovery—as a percentage of

17  the total recovery—is roughly proportional with its percentage of Defendants' overall exposure

18  weighs suggests the proportions are reasonable and adequate.

19  Accordingly, at the preliminary approval stage, Plaintiff's PAGA representative action

20  settlement is fair, adequate, and reasonable in light of PAGA's purposes.

21  **IV.   CLASS NOTICE PLAN**

22  For any class certified under Rule 23(b)(3), class members must be afforded "the best

23  notice that is practicable under the circumstances, including individual notice to all members who

24  can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly

25  state the following:

26  > (i) the nature of the action; (ii) the definition of the class certified; (iii)
27  > the class claims, issues, or defenses; (iv) that a class member may
    > enter an appearance through an attorney if the member so desires; (v)
    > that the court will exclude from the class any member who requests
28  > exclusion; (vi) the time and manner for requesting exclusion; and (vii)

11

the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

While the Court initially had concerns regarding the class notice which were raised at and before the hearing on the motion for preliminary approval, the parties have since twice revised the notice and notice plan. (Dkt. Nos. 40, 43.) The revised class notice and notice plan address the Court's concerns including that the notice now advises class members they can object to the request for attorney's fees and costs and the incentive award in addition to objecting to the settlement as a whole, as well as how and when they can view the motion for attorneys' fees and costs. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding class members must "have an adequate opportunity to oppose class counsel's fee motion."). However, the revised notice plan would only afford class members 10 days to review the motion for attorney's fees and costs and lodge any objection. (Dkt. No. 43 at 2.) This is not sufficient. Accordingly, Plaintiff shall file her motion for attorney's fees and costs and the class representative incentive award within 21 days of this Order.

The notice otherwise complies with Rule 23(c). (Dkt. No. 43-2.) It describes the allegations and claims in plain language; defines the two different settlement classes; includes contact information for Class Counsel and the settlement administrator; summarizes the settlement amount and includes the proposed share form to specify each class member's estimated recovery; and directs class members to a website, email, and toll-free number for additional information. (Dkt. Nos. 43-2.) The notice also adequately describes the options available to class members, including instructions for requesting exclusion from the settlement and filing an objection. Finally, it informs class members they may appear at the final fairness hearing in person or through an attorney. The parties have also revised the notice plan to provide notice by email and U.S. Mail per the Court's suggestion. (Dkt. No. 40 at 2.)

## V. ATTORNEYS' FEES AND COSTS

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the

1  reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with
2  the lodestar method will reveal if the amount requested is unreasonable in light of the hours
3  reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

4      Here, Plaintiff indicates she intends to seek one-third of the settlement or $1,750,000 in
5  attorneys' fees.  Class counsel's current lodestar, however, is $281,667.40, which yields a
6  multiplier of 6.2.  (Dkt. No. 37-1, Siegel Decl., at ¶ 149.) While the Court has concerns regarding
7  the attorneys' fees request given, among other things, the early stage of this litigation, the Court
8  need not resolve this issue now. Plaintiff shall submit a motion for attorneys' fees, including
9  declarations and detailed billing records, so the Court may determine an appropriate lodestar
10 figure, and to allow Settlement Class Members the opportunity to object to the requested fees. *See*
11 *In re Mercury*, 618 F.3d at 995 (holding that class members must "have an opportunity to oppose
12 class counsel's fee motion" before the deadline for filing objections set forth in the class notice).

## VI. UNCLAIMED FUNDS

While the Settlement Agreement called for distribution of any unclaimed funds (checks not cashed within 180 days) to a *cy pres*, (Dkt. No. 37-2 at ¶¶ 72-73), the parties have agreed that any unclaimed funds will deposited with the California Unclaimed Property Fund.  (Dkt. No. 40.)

## CONCLUSION

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

1. This action is provisionally certified as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The Court preliminarily certifies the following Settlement Classes:

> *The Non-Exempt Class*: All non-exempt persons who worked at least one 3.5-hour shift for Defendants, whether as a direct-hire or agency employee, in the State of California during the Release Period.
>
> *The Exempt Class*: All persons who worked at least one 3.5-hour shift for Defendants in the State of California and were classified as an exempt employee during the Release Period.

2. The Court appoints Elliot J. Siegel of King & Siegel LLP and Xavier Villegas of Law Office of Xavier Villegas, APC as Class Counsel for settlement purposes. Class Counsel is

authorized to act on behalf of the class members with respect to the Settlement.

3. The Court appoints Paula Norton as Class Representative for settlement purposes.

4. The Court appoints Apex Class Action LLC as the Settlement Administrator.

5. Plaintiff shall file copies of the notice and share form within 10 days of dissemination of notice.

6. Within 21 days of this Order, Plaintiff shall file a motion for attorneys' fees and costs.

7. Plaintiff shall file a motion for final settlement approval on March 27, 2025

8. The Court will hear argument on the motion for attorneys' fees and costs and the motion for final settlement approval at the Final Approval Hearing, which will take place in person on April 24, 2025 at 10:00 a.m.

This Order disposes of Docket No. 37

**IT IS SO ORDERED.**

Dated: January 27, 2025

JACQUELINE SCOTT CORLEY
United States District Judge