Elliot J. Siegel (Bar No. 286798)
elliot@kingsiegel.com
Julian Burns King (Bar No. 298617)
julian@kingsiegel.com
**KING & SIEGEL LLP**
724 S. Spring Street, Ste. 201
Los Angeles, California 90014
Tel:  (213) 465-4802 / Fax: (213) 465-4803

Xavier Villegas (Bar No. 293232)
xavier@xaviervillegaslaw.com
**LAW OFFICE OF XAVIER VILLEGAS, APC**
2390 Las Posas Road, C168
Camarillo, CA 93010
Tel: (805) 250-7488 / Fax: (805) 250-7499

Attorneys for Plaintiff and the Settlement Class

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Paula Norton**, individually and on behalf of all similarly situated individuals,<br><br>                Plaintiff,<br><br>    vs.<br><br>**Strategic Staffing Solutions-S3, L.L.C.,** a Florida limited liability company; **Cynthia J. Pasky**, an individual; and **Does 1-100**, inclusive;<br><br>                Defendants. | Case No.: 3:23-cv-06648-JSC<br><br>Assigned to Hon. Jacqueline Scott Corley<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>*[Declarations of Elliot Siegel, Xavier Villegas, and Ryan McNamee and [Proposed] Order filed concurrently]*<br><br>Date:   April 24, 2025<br>Time:  10:00 a.m.<br>Ctrm.:  8 |

King & Siegel ‖ LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on April 24, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8C of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 8 – 19th Floor, San Francisco, CA 994102, before the Honorable Jacqueline Scott Corley, Plaintiff Paula Norton, as an individual and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order: (1) granting final approval of the class action settlement achieved in this matter and entering judgment pursuant to the terms of the settlement; (2) fully and finally approving and directing distribution of the Net Settlement Amount pursuant to the terms of the settlement; (3) fully and finally approving the award of attorneys' fees in the amount of $1,750,000; (4) fully and finally approving the reimbursement of actual litigation costs in the amount of $28,098.29; (5) fully and finally approving an incentive payment totaling $35,000 to named Plaintiff and Class Representative Paula Norton; (6) fully and finally approving Settlement Administration Costs in the amount of $8,500.

This motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in Support thereof; the declarations of Elliot J. Siegel, Xavier Villegas, Paula Norton, and Ryan McNamee in support thereof; the Joint Stipulation of Settlement and Release of Class Action; the other records, pleadings, and papers filed in this action; and upon such other documentary and verbal evidence or argument as may be presented to the Court at the hearing of this motion.

Dated: March 24, 2025            Respectfully Submitted,

**KING & SIEGEL LLP**


By: *Elliot J. Siegel*
Elliot J. Siegel
Attorneys for Plaintiff and the Settlement Class

Dated: March 24, 2025

Respectfully Submitted,
**LAW OFFICE OF XAVIER VILLEGAS, APC**

By: _____

Xavier Villegas
Attorney for Plaintiff and the Settlement Class

King & Siegel ⸾⸾⸾ LLP

ii

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................1

II.  THE CLASS HAS BEEN GIVEN ADEQUATE NOTICE ...................................1

III. THE COURT SHOULD GRANT FINAL APPROVAL ........................................3

   A.  LEGAL STANDARD .......................................................................................3

   B.  STRENGTHS OF THE CASE AND RISKS OF CONTINUED LITIGATION ............5

     1. SUMMARY OF CLAIMS...................................................................................5

     2. EXTENT OF DISCOVERY AND STAGE OF PROCEEDINGS ...............................5

     3. THE SETTLEMENT AND REFLECTS A FAIR COMPROMISE IN LIGHT OF THE STRENGTH OF THE CASE AND DEFENDANTS' REALISTIC EXPOSURE................................7

   C.  COUNSEL BELIEVES THE SETTLEMENT IS IN THE BEST INTEREST OF THE CLASSES .....9

   D.  THE CLASS'S NEAR UNANIMOUS APPROVAL OF THE SETTLEMENT—ZERO OBJECTORS AND ONLY TWO OPT-OUTS—FURTHER SUPPORTS FINAL APPROVAL ...11

IV.  THE FEE COSTS, AND INCENTIVE AWARDS SHOULD BE GRANTED.....11

V.   CONCLUSION ...................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*Barnes v. Equinox Grp., Inc.*, 2013 WL 3988804 (N.D. Cal. Aug. 2, 1013) ..........................4

*Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013).....................11

*Churchill Village v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)..........................................4

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................................11

*Contreras v. Worldwide Freight Services, Inc.*, 2020 WL 2083017 (E.D. Cal. 2020) .........12

*Cylink Sec. Litig.*, 274 F. Supp. 2d 1109 (N.D. Cal. 2003) ................................................6

*Donohue v. Amn Servs.*, 11 Cal.5th 58 (Cal. 2021)............................................................5

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .........................................................2

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980)....................................9

*Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008
     WL 8150856 (C.D. Cal. July 21, 2008) ....................................................................12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................4

*Isby v. Bayh,* 75 F.3d 1191 (7th Cir.1996) ........................................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ...................................2

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)...............4

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ......................................................2

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ..........................................4

*Taylor v. Populus Grp., LLC*, No. 20-CV-0473- BAS-DEB, 2023 WL 139898
     (S.D. Cal. Jan. 9, 2023) ........................................................................................12

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ........................................4

*Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ...............4

## STATUTES

28 U.S.C. §§ 1715(a)-(b) ...............................................................................................3

Fed. R. Civ. Proc. 23(c)(2)(B) ........................................................................................2

Fed. R. Civ. Proc. 23(e)(1) .............................................................................................3

Fed. R. Civ. Proc. 23.......................................................................................................3

Labor Code § 227.3 ........................................................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This motion seeks final approval of a wage and hour class action settlement between Plaintiff Paula Norton and Defendants Strategic Staffing Solutions-S3, L.L.C. and Cynthia J. Pasky ("Defendants") (collectively, the "Parties").

After receiving notice of the Settlement, the reaction of Class Members to the Settlement has been *overwhelmingly* positive. Zero Class Members have objected and only two Class Members have requested exclusion, a 99.6% participation rate.[1] *Id.* ¶ 14.

The near-unanimous participation is not surprising because the Settlement is a excellent result for the class: it results in the recovery of 82.3% of the value of Defendants' *risk-adjusted, realistic, maximum* exposure (over 23% of the total maximum damages exposure)—and is a non-reversionary, guaranteed fund that will be automatically disbursed to all Class Members without the need for making a claim. See Dkts. 45-1 at ¶ 28.

Following entry of an Order granting final approval, Class Members will receive an average payment of $6,497.52, with the highest payment being $31,467.68, less applicable taxes. McNamee Decl. ¶ 16. This firmly establishes that the Settlement is well within the "zone of reasonableness," justifying final approval—and is an excellent result, meeting or exceeding settlements in similar wage and hour cases based on the percentage of recovered damages or on average recovery.

Plaintiff and Class Counsel respectfully ask the Court to grant final approval.

### II. THE CLASS HAS BEEN GIVEN ADEQUATE NOTICE

In approving a class action settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members

---

[1] While Class Counsel specifically instructed the Settlement Administrator to provide *both* email and mail service of the Notice in accordance with the Court's Order, it appears that, due to a personnel change at Apex while Notice was being prepared for distribution, the Notice was only mailed to the Classes. McNamee Decl. ¶ 8; Siegel Decl., ¶ 51. Class Counsel sincerely apologizes for not catching Apex's mistake earlier and is prepared to re-submit Notice to the Class and continue the hearing if the Court requires it as a remedial measure.

King & Siegel ‖‖‖ LLP

who can be identified through reasonable effort." Fed. R. Civ. Proc. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The notice satisfies due process if it contains a description of the litigation and explanation of the right to opt-out of the settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The notice packet was thorough and accurately informed Class Members of their rights. It explained the Settlement; how to object; how to request exclusion; the deadlines for objecting/requesting exclusion; the attorneys' fees to be paid under the Settlement; the incentive award to be sought under the Settlement; and individual Class Members' estimated recovery under the Settlement net of expenses, fees, incentive awards, and costs, which are all specified in the notice papers. It informed Class Members that those who chose not to opt out would be bound by the Settlement. *Id*., Ex. A.

The Court's Order granting approval mandated that the Class Notice be distributed by both email and mail service. While Class Counsel specifically instructed the Settlement Administrator to both mail and email the Notice to the Classes in accordance with the Court's Order, it appears that, due to a personnel change at Apex while Notice was being prepared for distribution, the Notice was only mailed to the Classes. McNamee Decl. ¶ 8. Class Counsel sincerely apologizes for not catching Apex's mistake earlier and is prepared to re-submit Notice to the Class and continue the hearing on Final Approval if the Court requires it as a remedial measure.

Apex Class Action LLC ("Apex" or "Administrator") mailed the Court-approved notice to all Class Members by first class mail on February 7, 2025. McNamee Decl. ¶ 7, Ex. A (final Court-approved notice). The deadline to opt out of or object to the settlement was 35 days thereafter, on March 14, 2025. *Id*. ¶ 11. Class Members were not required to file a claim in order to participate in the settlement; the administration of the settlement payments to Class

Members is an automatic process. *Id.* ¶ 14. A total of seventeen (17) notice packets were returned as undeliverable to the Administrator. The Administrator made reasonable efforts to find a valid mailing address for each of these Class Members by using standard skip-tracing devices. *Id.* ¶ 9. After the Administrator made diligent efforts to identify a correct mailing address, only three (3) notice packets were returned as undeliverable. *Id.* ¶ 10.

The reaction of the Class was overwhelming positive. After the close of the notice period, zero Class Members have objected to the Settlement and only two Class Members have requested exclusion. McNamee Decl. ¶¶ 11-13.

In addition, Class Counsel provided notice of the Settlement to the Labor and Workforce Development Agency, as required by PAGA, on September 26, 2024. Siegel Decl. ¶ 49. The LWDA did not object to the Settlement. *Id.*

Finally, as required by the Class Action Fairness Act ("CAFA"), the Parties have given notice regarding the Settlement to the appropriate federal agencies. Under CAFA, a defendant is required to submit notice of the settlement to "the appropriate State official of each State in which a class member resides and the appropriate Federal official," including notice of the settlement, notice of any scheduled hearings and information regarding the number of class members and their proportionate share of the settlement. 28 U.S.C. §§ 1715(a)-(b). CAFA further provides that such notice must be issued at least 90 days prior to an order giving final approval of a proposed settlement. 28 U.S.C. § 1715(b). Defendants issued the required notice to the United States and California Attorneys General on December 23, 2024, meaning that the 90-day requirement ended on March 24, 2025. *See* Dkt. No. 41, ¶ 2.

The Court should grant final approval to the Settlement in light of the overwhelming backing of the Settlement by Class Members after they have been afforded the full and adequate notice of the Settlement and given an opportunity to participate in its approval.

## III.    **THE COURT SHOULD GRANT FINAL APPROVAL**

### A. **Legal Standard**

Federal Rule of Civil Procedure 23 provides that class actions may only be settled, voluntarily dismissed, or compromised with the Court's approval. Fed. R. Civ. Proc. 23(e)(1).

3

The Court should engage in a two-step process to evaluate a proposed class action settlement. First, the Court must decide whether the Settlement merits preliminary approval. *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004). Second, after notice is given to class members, the Court must determine whether final approval is warranted. *Id*. A court should approve a class settlement under Rule 23(e) if it "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).

Courts in the Ninth Circuit look to the following eight factors to assess whether final approval of a settlement is warranted: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011); *Churchill Village v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998). "Not all of these factors will apply to every class action settlement" and "[u]nder certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telcomms.*, 221 F.R.D. at 525-26. In addition, Ninth Circuit courts consider the manner by which the settlement was reached to ensure that it is not a product of fraud or collusion. *See Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

In considering these factors, courts recognize a strong judicial policy favoring settlements, particularly in the context of complex class litigation. *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). The Court is should not ask whether the settlement is ideal or the best outcome, but "only whether the settlement is fair, free of collusion, and consistent with Plaintiff's fiduciary obligations to the class." *Barnes v. Equinox Grp., Inc.*, 2013 WL 3988804, at *2 (N.D. Cal. Aug. 2, 1013) (*quoting Hanlon*, 150 F.3d at 1027).

**B.  Strengths of the Case and Risks of Continued Litigation**

The strengths of the case and risks of continued litigation are thoroughly detailed in the Motion for Preliminary Approval and supplemental papers. Dkt. Nos. 37, 40, 43. Class Counsel summarized them here for the Court's ease of reference.

**1.  Summary of Claims**

Defendants misclassified Plaintiff and Exempt Class Members as exempt to avoid complying with minimum wage, overtime, meal and rest periods, and other wage and hour laws and protections. Plaintiff and the Class were *not* properly classified as exempt because they consistently were paid less than twice the state minimum wage and failed the commission duties test as they not spend more than 50% of their time on work directly related to the management policies or general business operations of Defendants or Defendants' customers.

Additionally, Defendants implemented two separate illegal PTO policies applicable to the Exempt Class:

First, up until February 1, 2023, Defendants imposed an illegal cap on PTO accrual forced employees to forfeit accrued and vested PTO over time by illegally limiting the amount of carryover to a maximum of 40 hours despite allowing exempt employees to earn between 80 and 128 hours per year.

Second, as of February 1, 2023, Defendants switched to an "unlimited" PTO policy, but in doing so, required exempt employees to forfeit their accrued PTO at the time of the switch and failed to pay it out at their final rate of pay in accordance with Labor Code § 227.3

Defendants also employed numerous non-exempt employees. These employees have the same PTO and 204 claims but, in addition, have claims for failure to provide meal periods as Defendants *admit* that they did not track rest periods for *any* of its employees. This failure creates a presumption of non-compliance. *See Donohue v. Amn Servs.*, 11 Cal.5th 58, 61 (Cal. 2021) ("[W]e hold that time records showing noncompliant meal periods raise a rebuttable presumption of meal period violations, including at the summary judgment stage.").

**2.  Extent of Discovery and Stage of Proceedings**

The extent of discovery and procedural status of the action impacts final approval

because it indicates whether the parties have had an "adequate opportunity to assess the pros and cons of settlement and further litigation." *In re Cylink Sec. Litig.*, 274 F. Supp. 2d 1109, 1112 (N.D. Cal. 2003).

As set forth in detail in the Motion for Preliminary Approval, Dkt. 37, Class Counsel required significant evidence and documentation as a condition of engaging in early mediation. Following the Parties' agreement to mediate, Defendants provided Plaintiff, through formal and informal discovery, with several rolling productions of data and documents relating to the Classes and their claims, including per-shift time data and payroll information for all Class Members from both Classes, plus representative itemized wage statements;[2] a list of all Class Members containing individual pay rates, classifications, location, and start and end dates of employment; all relevant policy documents, including policies regarding compensation, security, payroll, time-keeping, time tracking, PTO, and meal/rest periods, in effect during the relevant period; as well as information relevant to potential damages, including Defendant's positions as to shifts worked and total pay periods of the Class and other aggregate data and information related to their defenses and contentions. Siegel Decl. ¶ 11.

Prior to and alongside these discussions, Plaintiff's counsel engaged in extensive factual and legal investigation into the claims, which included (a) numerous telephonic conferences with Plaintiff regarding her experiences at Defendants' facility and interpretation of the data provided; (b) inspection and analysis of numerous time records, payroll, policy documents, and other information produced by Defendants in formal and informal discovery; (d) investigation into the viability of class treatment of the claims asserted in the operative Complaint; (e) analyses of potential class-wide damages, including information sufficient to understand Defendants' potential defenses to Plaintiff's class-wide and individual claims; (f) research of the applicable law with respect to the claims asserted in the operative Complaint

---

[2] After mediation, Class Counsel received—as required by the Parties' Settlement—the time and payroll records for the Classes for the period after mediation through December 10, 2024.

and the potential defenses thereto; (g) assembly and analysis of data for calculating damages; (h) contacting, interviewing, and obtaining declarations and statements from putative Class Members regarding the claims at issue; and (i) hiring the services of an expert to analyze and prepare Defendants' exposure. Defendant's production was fulsome and allowed Plaintiff's counsel to develop a sound understanding of the merits of the claims; their value; and the viability of the defenses asserted by Defendants.

Plaintiff's counsel analyzed all of the data provided by Defendants and retained the services of an expert from EconOne Research, Inc., who conducted numerous data analyses, including but not limited to, identifying employees underpaid the statutory minimum wage requirements for exemption; PTO accrual, usage, and loss; the amounts of all underpayments of regular and overtime wages; the amount of hours that qualified for overtime treatment; the number of late, short, and missed meal periods based on time punch data; the value of missed rest periods; and the maximum and realistic exposure for each claim alleged in the Complaint.

Defendant's production was fulsome and allowed Plaintiff's counsel to develop a sound understanding of the merits of the claims; their value; and the viability of the defenses asserted by Defendants and to settle the matter on a fair basis to the Classes.

### 3. The Settlement and Reflects a Fair Compromise in light of the Strength of the Case and Defendants' Realistic Exposure

The settlement was the product of extensive arm's length negotiations and was mediated by a professional and well-respected third-party neutral. Siegel Decl., ¶ 13. The mediation and settlement negotiations were adversarial and non-collusive in nature. *Id*. The Settlement reached is the product of substantial effort by the Parties and their counsel and was entered into only after Class Counsel thoroughly investigated the merits and weaknesses of the claims and defenses applicable to the Action. *Id*.; *see generally*, Siegel Decl.

Class Counsel thoroughly investigated and evaluated the factual and legal strengths and weaknesses of this case before reaching the Settlement. As described above, the Settlement was reached after extensive investigation and research, calculations and risk evaluation, substantial exchanges of formal and informal discovery and production of

documents, numerous motions to compel discovery and impose sanctions, Class Counsel's thorough factual investigation and expert damages assessments, and interviews and declarations from putative Class Members—all of which was sufficient to evaluate Defendant's liabilities and defenses. Siegel Decl., ¶¶ 15-19. The Settlement came only after the case was thoroughly litigated by Class Counsel

Defendants maintained (and continues to maintain) that they have complied with California law in all respects, denies all liability of any kind associated with the claims and allegations, and further denies that Employees are entitled to any relief. Siegel Prelim. App. Decl. ¶ 52. also deny that these allegations are appropriate for class or representative treatment for any purpose other than the settlement. Id.

If Defendants prevailed on any of these defenses, the claims of the Class would potentially be worth little to nothing. Class Counsel also took into account the value of an immediate and guaranteed Settlement against the uncertainty and delay that would occur before the Class's claims could be heard at trial, extended by any potential appeals. Siegel FAM Decl. ¶ 45.

To be clear, Class Counsel believes that the claims have merit, and that the Class would ultimately prevail at certification and trial. That said, Class Counsel took into account the possibility of unfavorable decisions on class certification, summary judgment, at trial and/or on the damages awarded, and/or on an appeal; that any judgment, pre- and post-appeal might take several more years to litigate; the risk of Plaintiff not prevailing on one or more of the underlying claims; the risk that a court may not award waiting time penalties, wage statement penalties, and/or PAGA penalties; and the costs and time of continued litigation. Siegel FAM Decl. ¶ 47.

Based on the analysis set forth in the Siegel Prelim. App. Decl., Class Counsel determined that Defendants' *risk-adjusted, realistic* maximum damage exposure was approximately $6,377,635 for Exempt and Non-Exempt Classes combined (broken out by class, the *risk-adjusted, realistic* maximum damages are $5,365,066 for the Exempt Class and $1,012,569 for the Non-Exempt Class). The Settlement takes the above risks into account in arriving at the non-reversionary Maximum Settlement Amount of $5,250,000.00, which

8

represents a meaningful recovery of 82.3% of the value of Defendants' *risk-adjusted, realistic, maximum* exposure for damages and penalties across both Classes, or 23.6% of Defendants' unadjusted maximum damages (not including any discount for the time value of money).[3] Siegel FAM Decl. ¶ 36; Siegel Prelim. App. Decl., ¶¶ 124-125.

The Settlement provides fair and prompt relief to Class Members in lieu of lengthy and expensive continued litigation. Defendants contested liability and raised arguments against the possibility of certifying a class. But even if Plaintiff *had* succeeded in certifying the Class as to all claims, the Parties would have proceeded to trial, with the inherent possibility of a subsequent appeal. The immediate and substantial recovery now, versus a years-long trial and appeal process regarding various potential issues, weighs in favor of approval. *See Nat'l Rural Telecomms.*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

### C. <u>Counsel Believes the Settlement is in the Best Interest of the Classes</u>

Counsel's views and experience also weigh in favor of approving the Settlement. *See Isby v. Bayh,* 75 F.3d 1191, 1200 (7th Cir.1996) (noting that a district court is "entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate"); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.") *aff'd,* 661 F.2d 939 (9th Cir. 1981).

Plaintiff's counsel has a significant history of litigating complex cases, including class actions, and has represented classes at settlement and class certification phases of numerous class actions. Siegel Decl. ¶¶ 3-9.

The lengthy and hard-fought litigation in this Action, along with the data productions and expert analysis, allowed Plaintiffs' counsel to develop a sound understanding of the

---

[3] When broken out by Class, the Settlement is a recovery of 86% of the Non-Exempt Class's and 81.6% of the Exempt Class's *risk-adjusted, realistic, maximum* exposure.

merits of the claims; their value; and the viability of the defenses asserted by Defendants. The Settlement came only after the case was thoroughly litigated by Class Counsel. Class Counsel believes that the Settlement set forth below confers substantial benefits upon the members of the Class and should be approved.

Based on their own independent investigation and evaluation, Class Counsel has determined that the agreed upon Settlement is in the best interests of the Settlement Class. The Settlement is well within the "zone of reasonableness," justifying final approval—and is an excellent result, meeting or exceeding settlements in similar wage and hour cases based on the percentage of recovered damages or on average recovery.[4]

---

[4] *See, e.g.*, *Arredondo*, 2022 WL 396575, at *14-15 (granting preliminary approval of $1.25 million settlement that represented 11% of the theoretical maximum recovery); *Ferrell v. Buckingham Property Mgmt.* (E.D. Cal. Jan. 21, 2020) Case No. 1:19-cv-00332-LJO-SAB, 2020 WL 291042, *17-20 (granting preliminary approval of $600,000 wage and hour class and collective action settlement that represented 5.2% of the original valuation of the claims); *Cooley v. Indian River Transp. Co.* (E.D. Cal. Jan. 24, 2019) No. 1:18- CV-00491, 2019 WL 316634, at *8 (granting preliminary approval of $1.4 million wage and hour class settlement representing 11% of potential liability); *Thompson v. Costco Wholesale Corp.* (S.D. Cal. May 11, 2017) No. 14-CV-2778-CAB-WVG, 2017 WL 1957552, at *8 (granting preliminary approval of $2 million wage and hour class settlement reflecting approximately 10% of exposure); *Ma v. Covidien Holding, Inc.* (C.D. Cal. Jan. 31, 2014) No. SACV 12-02161-DOC, 2014 WL 360196, at *5 (granting preliminary approval of $2.5 million wage and hour class settlement that represented 9.1% of total exposure as within "range of reasonableness"); *Munyan v. Nationwide Medical, Inc.*, No. BC579015, 2017 WL 6452647, at *6 (Cal. Super. Oct. 12, 2017) (approving settlement of $400,000, which represented 12% of potential recovery in wage-and-hour case); *Solis v. Bottomley Distribution Co., Inc.*, No. 15-CV-287797, 2017 WL 1046615, at *3 (Cal. Super. Mar. 03, 2017) (approving wage-and-hour class settlement that represented 8.1% of total potential recovery of $3,307,479); *see also Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net

King & Siegel LLP

**D. The Class's Near Unanimous Approval of the Settlement—Zero Objectors and Only Two Opt-Outs—Further Supports Final Approval**

The Court may appropriately infer that the Settlement is fair, adequate and reasonable when few class members object to it. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

The reaction of the Settlement Class Members has been one of *overwhelming* approval with *near-unanimous* support for the Settlement. There are zero objections to the Settlement and only two Class Members has requested exclusion. McNamee Decl. ¶¶ 11-12. This strongly positive response by the Classes militates in favor of final approval. *See Bolton v. U.S. Nursing Corp.*, 2013 WL 5700403, at *2, *4 (N.D. Cal. Oct. 18, 2013) (approving settlement where no objections filed and one of 2,765 class members requested exclusion from settlement). Siegel FAM Decl., ¶ 48.

## IV. THE FEE COSTS, AND INCENTIVE AWARDS SHOULD BE GRANTED

As detailed in Plaintiff's Motion for Attorneys' Fees, Costs, and Class Representative Incentive Payment, Plaintiff and Class Counsel respectfully request that the Court approve Class Counsel's application for attorneys' fees in the amount of $1,750,000 (one-third of the Gross Settlement Amount), reimbursement of actual litigation costs of $28,098.29 (well below the allotted $50,000 in the Settlement), Administrator's costs of $8,500, and a Class Representative incentive payment of $35,000.

---

recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. 2008) (wage and hour class action settlement approved where average class member recovery was approximately $60); *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 (E.D. Cal. June 11, 2012) (finding that average payment to class members of less than $200 was a "good" result); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 HKSC, 12-CV-0008-H-KSC, 2013 WL 4525428 (S.D. Cal. Aug. 26, 2013) (granting final approval of class action settlement with "very favorable" average recovery of approximately $108).

Class Counsel's justification for the award of one-third of the Settlement fund is detailed in the Motion for Fees filed on February 14, 2025. Dkt. No. 45.

Since the Motion was filed, the case for Class Counsel's fee award and Plaintiff's incentive award has only gotten *stronger* in light of the LWDA and the Classes' reaction to the requested fees and incentive award, *i.e.*, *zero* Class Members have objected to Class Counsel's request for fees in the amount of $1,750,000.00 after receiving notice of the request—further supporting the appropriateness of the requested fee award. *See Contreras v. Worldwide Freight Services, Inc.*, 2020 WL 2083017 (E.D. Cal. 2020) (approving fee award request of 33.33% of total settlement amount, noting that the average per class member recovery of $221.01 weighed in favor of an increase over the Ninth Circuit benchmark and that awards made in similar cases supported the requested award); *see also Taylor v. Populus Grp., LLC*, No. 20-CV-0473- BAS-DEB, 2023 WL 139898, at *3 (S.D. Cal. Jan. 9, 2023) (approving fee award request of 33.33%)*; Fernandez v. Victoria Secret Stores, LLC,* No. CV 06-04149 MMM SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008) (34% award).

Prior to preparing and filing the Motion for Final Approval, Class Counsel's unenhanced lodestar was approximately $324,430.00 after spending a reasonable and necessary 469.9 hours on this matter. Since filing the Motion for Fees, however, Class Counsel has spent an additional 32.3 hours on the Motion for Final Approval for a total of 502.2 hours and unenhanced lodestar of $343,162.50. The fees sought reflect an updated lodestar multiplier of 5.1. Siegel Decl., ¶ 54; Ex.1; Villegas Decl., ¶¶ 13; 14.

Class Counsel expects to bill an additional 10-15 hours preparing for and attending the hearing on the Motion for Final Approval, as well as overseeing the Notice and Settlement Administration process, which would result in an estimated lodestar multiplier of 4.9 by the time of the Final Approval Hearing. Siegel Decl., ¶ 55.

After filing the Motion for Attorneys Fees and Costs, Counsel for Plaintiff incurred additional costs. Prior to filing the Motion for Final Approval, Plaintiff was seeking $27,870.34, however Plaintiff's counsel has incurred an additional $227.95 in travel expenses related to attending the Hearing for Final Approval. Class Counsel is now seeking a total of

12

1    $28,098.29 in litigation costs. Siegel Decl., ¶ 56., Ex. 2.

2       These awards and reimbursements are all warranted in light of the work performed on

3   behalf of the Class by Class Counsel and Named Plaintiff, particularly in light of the Class

4   Members' overwhelming approval of the Settlement.

5   **V.**     **<u>CONCLUSION</u>**

6       For all of the foregoing reasons, the Plaintiff respectfully requests that the Court enter

7   an order granting final approval to the Settlement, approving distribution of the Settlement

8   funds to Class Members pursuant to the terms of the Settlement, approving Plaintiff's request

9   for an incentive award or enhancement payment, approving Plaintiff's request for an award

10   of attorneys' fees and litigation costs pursuant to the terms of the Settlement, and entering

11   final judgment as to all members of the Class in this action.

12

13   Dated: March 24, 2025         Respectfully Submitted,

14                          **KING & SIEGEL LLP**

15

16                          By: *Elliot J. Siegel*

                         Elliot J. Siegel

17                          Attorneys for Plaintiff and the Settlement Class

18

19   Dated: March 24, 2025         Respectfully Submitted,

20                          **LAW OFFICE OF XAVIER VILLEGAS, APC**

21

22                          By:

23                          Xavier Villegas

24                          Attorney for Plaintiff and the Settlement

25

26

27

28