UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA NORTON,<br><br>   Plaintiff,<br><br> v.<br><br>STRATEGIC STAFFING SOLUTIONS, L.C., et al.,<br><br>   Defendants. | Case No. 3:23-cv-06648-JSC<br><br>**ORDER RE: MOTION FOR FINAL APPROVAL AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Re: Dkt. Nos. 45, 47 |

  In this wage and hour action, Plaintiff alleges Strategic Staffing Solutions-S3, LLC and Cynthia Pasky, S3's Chief Executive Officer, systematically misclassified its recruiters as exempt employees.  The Court previously granted preliminary approval of the parties' class action settlement. (Dkt. No. 44.[1])  Plaintiff now moves for final approval of the class action settlement and for attorneys' fees, costs, and a class representative service award. (Dkt. Nos. 45, 47.) Having considered the briefing and the relevant legal authority, and having had the benefit of oral argument on June 12, 2025, the Court GRANTS the motion for final approval and GRANTS IN PART the motion for attorneys' fees, costs, and a service award.

**BACKGROUND**

  Plaintiff initially filed this putative class action in the San Francisco County Superior Court bringing claims for: (1) failure to pay minimum wages for all hours worked; (2) failure to pay overtime wages; (3) failure to provide meal periods or premium pay in lieu thereof; (4) failure to provide rest periods or premium pay in lieu thereof; (5) failure to reimburse necessary business expenses; (6) failure to provide and maintain accurate payroll records; (7) failure to pay wages

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

when due; (8) PAGA penalties; and (9) violation of California's Unfair Competition Law. (Dkt. No. 2-1.) Defendants removed the action to this court asserting jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2)(A).

Following removal, the parties stipulated to amendment of the complaint and Plaintiff filed the now operative First Amended Complaint pleading an additional claim challenging Defendants' requirement that employees sign noncompete agreements and adding a proposed class of non-exempt employees asserting many of the same labor code violations. (Dkt. Nos. 24, 27.) The parties then agreed to private mediation and exchanged formal and informal discovery in preparation. On September 6, 2024, the parties attended an all-day mediation with Judge Peter D. Lichtman (Ret.) and reached a classwide resolution of Plaintiff's claims.

Prior to the hearing on the motion for preliminary approval, the Court issued an Order requesting the parties be prepared to address certain issues at the hearing. (Dkt. Nos. 37, 38.) Plaintiff submitted a response to the Court's Order which included a revised notice and amended notice plan. (Dkt. No. 40.) At oral argument, the Court requested additional changes to the notice, which the parties made and submitted a revised notice. (Dkt. Nos. 42, 43.) The Court thereafter granted preliminary approval on January 27, 2025. On March 24, 2025, Plaintiff filed the motion for final approval and noted due to an oversight notice had only been provided by mail, not mail and email as the Court ordered. (Dkt. No. 47 at 6.) Accordingly, the Court ordered the Settlement Administrator to provide email notice and extended the deadline to request exclusion or file an objection. (Dkt. No. 48.)

**THE SETTLEMENT AGREEMENT**

**A.     The Settlement Class**

The Settlement Class is composed of two classes:

1. The Non-Exempt Class: All non-exempt persons who worked at least one 3.5-hour shift for Defendants, whether as a direct-hire or agency employee, in the State of California during the Release Period.

2. The Exempt Class: All persons who worked at least one 3.5-hour shift for Defendants in the State of California and were classified as an exempt employee during the Release Period.

(Dkt. No. 37-2, Settlement Agmt. ¶ 17.)

### B.     Payment Terms

The Settlement Agreement requires Defendants to establish a non-reversionary Gross Settlement Fund of $5,250,000. (*Id*. at ¶ 22.) Under the Settlement Agreement, the following amounts may be deducted from the Gross Settlement Fund to yield the Net Settlement Fund:

1) $1,700,000 in attorneys' fees, subject to Court approval;

2) $50,000 in litigation costs, subject to Court approval;

3) $35,000 as a class representative incentive payment, subject to Court approval;

4) $8,500 in estimated settlement administration costs, subject to Court approval; and

5) $550,000, for the PAGA released claims, with 75 percent ($412,500) paid to the California Labor and Workforce Development Agency and 25 percent ($137,500) paid to class members, subject to Court approval.

The remaining Net Settlement Fund of at least $2,856,500 will be distributed to class member in pro rata shares based on the number of workweeks worked. Workweeks worked by exempt employees shall be weighted at 5:1 to the workweeks worked by non-exempt employees to account for the difference in their legal claims. (*Id*. at ¶ 57.) The minimum payment to any given class member shall be no less than $25 dollars. (*Id*.) Class members do not need to submit a claim to obtain a payment under the settlement, but can dispute the workweek calculation.

### C.     Scope of Release

Class members who do not timely opt out of the settlement, release the following:

> those claims asserted in the Complaint or that reasonably could have been alleged based on the factual allegations contained in the operative complaint or LWDA letter, including but not limited to all of the following claims for relief: (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to provide meal periods or premium pay in lieu thereof, (4) failure to provide rest periods or premium pay in lieu thereof, (5) failure to reimburse necessary business expenses, (6) failure to provide accurate itemized wage statements, (7) failure to pay wages when due or at the end of employment, (8) civil penalties under the Private Attorneys General Act ("PAGA"), and (9) unfair business practices.

(*Id*. at ¶ 39.)

Aggrieved employees also release any

> civil penalties under PAGA asserted in the Complaint or LWDA letter, or that could have reasonably been alleged based on the factual

3

allegations contained in the Operative Complaint and PAGA Notice. (*Id*. at ¶ 41.)

The Class Representative, Paula Norton, releases a broader set of claims arising out of her employment. (*Id*. at ¶ 81.)

### D.     Notice

The Court appointed Apex Class Action LLC as the Settlement Administrator.  (Dkt. No. 44.)  On February 7, 2025, Apex mailed notice to all 445 individuals on the class list.  (Dkt. No. 50-1 at ¶ 7.)  Following mailing, 19 of these notices were returned as undeliverable and Apex conducted skip tracing and remailed the packets to the 16 updated addresses it was able to locate. (*Id.* at ¶ 9.)  In total, only three packets were undeliverable.  (*Id*. at ¶ 10.)  While the Court ordered Apex to also provide email notice, it did not do so until April 18, 2025.  (*Id*. at ¶ 11; Dkt. No. 48.) As a result of the belated email notice, the Court extended the deadline for requesting exclusion or filing objections to May 22, 2025.  (Dkt. No. 48.)

### E.     Request for Exclusion and Objections

The Settlement Administrator received two requests for exclusion but no objections have been received.   (Dkt. No. 50-1 at ¶¶ 13, 14.)

## DISCUSSION

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

At the second stage, "after notice is given to putative class members, the Court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v.*

*Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness hearing, the Court must finally determine whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

## I. CLASS CERTIFICATION

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on January 27, 2025, this Order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the Order granting preliminary approval. (Dkt. No. 44 at 4-7.)

## II. ADEQUACY OF NOTICE

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice includes "[n]otice of the motion [for attorney's fees which] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1).

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B); *see also Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (cleaned up). Although Rule 23 requires reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds the notice plan previously approved by the Court, as implemented by the Settlement Administrator, complies with Rule 23(c)(2)(B). First, the Settlement Administrator provided two types of notice: email notice and mail notice. (Dkt. No. 50-1 at ¶¶ 7-11.) Second, the notice clearly and concisely provides an overview of the lawsuit, class members options under the settlement, an estimate of each class member's recovery, the process for requesting exclusion or objecting to all or part of the settlement, provides contact information for Class Counsel and the Settlement Administrator, and directs class members to a website, email, and toll-free number for additional information. Finally, between February 7, 2025, the mail notice date, and May 27, 2025, the Settlement Administrator received two requests for exclusion, and no objections. (Dkt. No. 50-1 at ¶¶ 13-14.)

Given the above, the Court concludes the parties have sufficiently provided the best practicable notice to class members.

### III. FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

To grant final approval, the Court must find that the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e). *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). In making this determination, courts generally must consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Under the revised Rule 23(e), the Court must also consider whether the settlement resulted from collusion among the parties. *See Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (holding that courts must apply the collusion factors set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011), to post-class action settlements as well as those settled before certification.) When the settlement is reached pre-certification, however, the

6

court must apply "an even higher level of scrutiny" and "substantively grapple with whether the *Bluetooth* warning signs created an unfair settlement." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 608 (9th Cir. 2021) (cleaned up).

### A. The Fairness Factors

#### 1. The Strength of Plaintiff's Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court first considers "the strength of [Plaintiff's] case on the merits balanced against the amount offered in the settlement." *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). Although this action settled before the Court ruled on the merits of Plaintiff's claims, the Court need not reach an ultimate conclusion about the merits of the dispute "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.*

Here, although Plaintiff believes she has a strong case, she recognizes the expense, risk, and length of continued proceedings necessary to prosecute the action through trial and potential appeal. (Dkt. No. 37-1 at ¶ 129). Plaintiff notes Defendants contest the merits of her claims as well as the appropriateness of class certification. Given the risks posed by continuing to litigate Plaintiff's claims, the certainty of class member recovery under the settlement weighs in favor of granting final approval.

#### 2. Settlement Amount

When considering the fairness and adequacy of the amount offered in settlement, "it is the

7

complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc*., 221 F.R.D. at 527. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id*. (collecting cases).

The Court previously concluded the amount of the settlement, $5,250,000, was within the range of possible approval. (Dkt. No. 44 at 10.) Plaintiff estimates the maximum potential damages and penalties recoverable for both classes—before accounting for any risks or present value discount—was $22,252,525; thus, the gross settlement amount represents 23.6% of the total exposure. (Dkt. No. 37-1, Siegel Decl., at ¶ 108.) Under the Settlement Agreement, Class Members will receive a pro rata share of the Net Settlement Amount of at least $2,878,401.71, with an estimated average net individual settlement payment, inclusive of individual PAGA payments, of $6,497.52, with the highest individual settlement payment of $31,467.68, and the lowest individual settlement payment of $118.75. (Dkt. No. 47-1, Supp. Siegel Decl. at ¶ 20.)

This factor thus weighs in favor of final approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Rather, a court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). The Court's preliminary approval order discussed the litigation history and the discovery obtained prior to settlement. (Dkt. No. 44 at 9.) The settlement was reached here with the assistance of an experienced mediator. (Dkt. No. 37-1, Siegel Decl. at ¶ 17.)

The Court thus concludes this factor likewise weighs in favor of final approval.

### 4. Experience and Views of Counsel

The experience and views of counsel also weigh in favor of approving the settlement. Class Counsel has extensive experience in class action litigation and strongly support approval of the settlement given the risks and challenges involved. (Dkt. No. 47-1 at ¶¶ 3-9.)

### 5. Presence of a Government Participant

No government entity is a party to this action. However, because Defendant removed this action pursuant to CAFA, the relevant state and federal officials had to be notified of the settlement pursuant to 28 U.S.C. § 1715(b). *See Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co*., 844 F.3d 1133, n.2 ("In addition to §§ 1332(d) and 1453, CAFA also includes §§ 1711-1715, which relate to approval of settlements in class actions."). The parties provided notice to the relevant agencies on December 23, 2024. (Dkt. No. 47-1 at ¶ 49.) Further, Plaintiff provided notice of the settlement to the Labor and Workforce Development Agency, as required by PAGA, on September 26, 2024. (*Id*. at ¶ 41.)

### 6. Reaction of Class Members

As previously discussed, the Settlement Administrator provided mail and email notice to the 445 individuals on the class list. (Dkt. No. 50 at ¶¶ 7-14.) Of the mailed notice, 19 were returned and 16 were resent to updated addresses leaving only 3 packets undeliverable. Only two requests for exclusion and no objections were received. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., In*c., 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill*., 361 F.3d at 577 (holding approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

***

In sum, the fairness factors weigh in favor of granting Plaintiff's motion for final approval of the class action settlement.

### B. The *Bluetooth* Factors

Finally, the Court must determine whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion. *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011). In determining whether the settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members

to infect the negotiations." *Id*. The Ninth Circuit has identified three such signs:

> (1) when counsel receive a disproportionate distribution of the 11 settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* at 947 (internal quotation marks and citations omitted).

For the first *Bluetooth* factor, the Court compares the class payout to class counsel's fees claim. *See In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 675 (9th Cir. 2025) ("class counsel receiving a disproportionately large fee award compared to what the class members received signals potential collusion.") The Settlement Administrator estimates an average class member recovery of $6,497.52. (Dkt. No. 50-1 at ¶ 18.) Class Counsel seeks one-third ($1,750,000) of the gross settlement fund. This high percentage is a red flag and is over five times Class Counsel's lodestar, but the Court addresses this through a reduction of the fees as discussed below.

The second warning sign—a "clear sailing" provision—is also present here. *See Bluetooth*, 654 F.3d at 940, n.6 ("a 'clear sailing agreement,' wherein the defendant agrees not to oppose a petition for a fee award up to a specified maximum value."). Defendants agree not to oppose Plaintiff's request for fees up to $1,750,000. (Dkt. No. 37-2 at ¶ 14.)

The third warning sign—whether the parties have arranged for fees not awarded to the class to revert to the defendant rather than be added to the settlement fund, *see Bluetooth*, 654 F.3d at 948—is not present here. The Settlement Agreement is non-reversionary—all of the funds will be distributed to the class members. (Dkt. No. 37-2 at ¶¶ 21, 29.)

Despite the presence of two of three of *Bluetooth* warning signs, the Court concludes the Settlement Agreement did not result from, nor was it influenced by, collusion given the substantial monetary relief the settlement secured for class members and the Court's reduction of the fee

10

1  award as discussed below. The Settlement Agreement adequately satisfies the class members'
2  claims.
3  	* * *
4  In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not
5  indicate collusion. The Court is therefore satisfied the Settlement Agreement was not the result of
6  collusion between the parties and instead is the product of arms-length negotiations between
7  experienced and professional counsel. For each of these reasons, the Settlement Agreement passes
8  muster under Rule 23(e) and final approval is appropriate.

## IV.	PAGA SETTLEMENT APPROVAL

"A PAGA representative action is ... a type of qui tam action" in which a private plaintiff pursues "a dispute between an employer and the state LWDA on behalf of the state." *Iskanian v. CLS Transp. L.A., LLC*, 327 P.3d 129, 148 (Cal. 2014), abrogated on other grounds, by *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022). "[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state," courts must "review and approve any settlement." *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017) (quoting Cal. Lab. Code § 2699(l)(2)). The Court previously analyzed the appropriateness of the PAGA settlement here and because no facts that would affect this analysis have changed since the Court preliminarily approved the class on January 27, 2025, this Order incorporates by reference the Court's prior analysis and finally approves the PAGA settlement. (Dkt. No. 44 at 10-11.)

## V.	MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

### A.	Attorneys' Fees

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. Pro. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. In diversity actions such as this, state law applies to determine the right to fees and the method for calculating them. *See Mangold v.*

*California Pub. Utils. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995). Because Plaintiff's underlying class claims are state law claims, the Court must apply California law on attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The California Supreme Court has held that courts have discretion to choose among two different methods for calculating a reasonable attorneys' fee award. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (2016). The first is the "percentage method," when the fee is calculated "as a percentage share of a recovered common fund or the monetary value of [the] plaintiffs' recovery." *Id*. at 489. The second approach is "[t]he lodestar method, or more accurately the lodestar–multiplier method." *Id*. at 489. Under the lodestar method, the fee is calculated "by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate," then "increas[ing] or decreas[ing]" the lodestar figure based on "a variety of ... factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id*. (citation omitted). "The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts." *Id*. at 504. This approach aligns with the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1047 ("Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method.").

Both the California Supreme Court and the Ninth Circuit recommend that whether a court uses the lodestar or percentage-of-recovery method, the court should perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the amount of work done). *See, e.g.*, *Bluetooth*, 654 F.3d at 944-45; *Laffitte*, 1 Cal. 5th at 504 ("A lodestar cross-check ... provides a mechanism for bringing an objective measure of the work performed into the calculation of a reasonable attorney fee.").

### 1. Percentage-of-Recovery Method

The Ninth Circuit uses a 25 percent of the fund "benchmark" for awarding fees. *Bluetooth*, 654 F.3d at 942. "An adjustment, either up or down, must be accompanied by a reasonable

12

explanation of why the benchmark is unreasonable under the circumstances." *Reyes v. Experian Information Services, Inc*., 856 Fed. Appx. 108, 110 (9th Cir. 2021) (cleaned up). Courts consider

> several factors [ ] when assessing requests for attorneys' fees calculated pursuant to the percentage-of-recovery method: (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis.

*In re Optical Disk Drive Prod. Antitrust Litig*., 959 F.3d 922, 930 (9th Cir. 2020) (citation omitted). Here, Class Counsel seeks an award of attorneys' fees that would be 33 percent of the Gross Settlement Amount or $1,750,000.

Although the Court agrees the overall result and benefit to the class is significant, Plaintiff has not shown that it warrants an upward departure from the 25 percent benchmark. Contrary to Plaintiff's contention, under California law "[a] fee award of 25 percent '[i]s the 'benchmark' award that should be given in common fund cases.'" *Consumer Priv. Cases*, 175 Cal. App. 4th 545, 558, n.13 (2009). While the California Supreme Court affirmed a one-third attorneys' fee award in a wage and hour class action in *Laffitte v. Robert Half Int'l Inc*., the case involved extensive discovery, motions for summary judgment, a class certification motion, a motion for reconsideration, and two full-day mediations. *See Laffitte v. Robert Half Int'l Inc*., 180 Cal. Rptr. 3d 136, 140 (Cal. Ct. App. 2014), *aff'd*, 1 Cal. 5th at 506. This case, in contrast, settled without any motion practice less than nine months after it was removed to federal court. The Court must take this into account when considering both the level of risk and the burdens on Class Counsel. *Laffitte*, 1 Cal. 5th at 505 ("[c]ourts using the percentage method have generally weighed the time counsel spent on the case as an important factor in choosing a reasonable percentage to apply."). Under these circumstances, Counsel has not demonstrated the presence of unusual circumstances that would justify a departure from the 25 percent benchmark. *See In re Google Inc. St. View Elec. Commc'ns Litig*., 21 F.4th 1102, 1122 (9th Cir. 2021) ("the district court properly considered all relevant circumstances, including the value to the class members, and concluded that a 25% benchmark was appropriate."). For the same reasons, the Court concludes the 25 percent should

13

1    be on the Net Settlement Amount (the Gross Settlement Amount minus costs, class representative

2    service award, and the PAGA payment) rather than the Gross Settlement Amount.

### 2. Lodestar Method

The lodestar method "requires multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), amended on denial of reh'g, 808 F.2d 1373 (9th Cir. 1987).

Class Counsel calculates their lodestar at $343,162.50. (Dkt. No. 47-1 at ¶ 54.) This amount represents 502.2 hours of work by three attorneys and a paralegal. (*Id*. at ¶ 54; Dkt No. 45-1 at ¶ 54; Dkt. No. 45-8 at ¶ 13.) "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990). Class Counsel has submitted declarations attesting their hourly rates are in keeping with attorneys of similar skill and experience in the Bay Area and have previously been approved by other district courts. (Dkt. No. 45-1 at ¶¶ 59-61; Dkt. No. 45-8 at ¶ 13.) Further, the rates requested in this case are within the range of rates approved in wage and hour litigation in this District. *See Joh v. Am. Income Life Ins. Co*., No. 18-CV-06364-TSH, 2021 WL 66305, at *8 (N.D. Cal. Jan. 7, 2021) (collecting cases approving similar rates in wage and hour class actions). While the Court need not and does not decide that the exact rates requested by counsel are reasonable, they are at least within the range of reasonableness required to use the lodestar figure as a cross check. *Id*. at *7 ("Where a lodestar is merely being used as a cross-check, the court may use a rough calculation of the lodestar.") (internal quotation marks and citation omitted)).

Class Counsel also submitted detailed billing records as well as a summary of different categories of work performed on the case. (Dkt. No. 545-1 at ¶ 56; Dkt. No. 45-3; Dkt. No. 45-8 at ¶ 15; Dkt. No. 45-9.) Upon review, the reported hours spent litigating this case while high are

14

1    not plainly unreasonable. Based on the hourly rate charged by attorneys who worked on the case,
2    the total lodestar figure amounts to $343,162.50. (Dkt. No. 45-1 at ¶ 54; Dkt. No. 45-8 at ¶ 13;
3    Dkt. No. 47-1 at ¶ 54.) The requested fee amount is $1,750,000, which represents a multiplier of
4    approximately 5.1. However, as discussed above, the Court believes such a multiplier is not
5    supported and instead awards 25 percent of the Net Settlement Amount of $4,658,401.71[2] which is
6    $1,164,600.43. This amount represents a multiplier of 3.39 which is still quite large, but within
7    the range of reasonableness. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051, n.6 (9th Cir.
8    2002) (recognizing multipliers generally range from 1 to 4.) District courts within the Ninth
9    Circuit commonly apply multipliers in that range in California wage and hour class actions. *See,*
10   *e.g.*, *Kulik v. NMCI Med. Clinic Inc.*, No. 21-CV-03495-BLF, 2023 WL 2503539, at *9 (N.D. Cal.
11   Mar. 13, 2023) (applying a multiplier of 1.83); *Uschold v. NSMG Shared Servs., LLC*, No. 18-cv-
12   01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5, 2020) (applying a multiplier of 4); *De*
13   *Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2020 WL 1531331, at *18 (N.D. Cal. Mar. 31,
14   2020) (applying a multiplier of 1.09); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 999
15   (N.D. Cal. 2017) (applying a multiplier of 2.0).
16      Thus, while the lodestar cross-check does not support an award of one-third of the Gross
17   Settlement Amount, it does support an award of 25 percent of the Net Settlement Amount.
18                                          ***
19      Accordingly, the Court concludes an award of 25 percent of the Net Settlement Amount or
20   $1,164,600.43 is reasonable here.

**B.    Costs**

22   "There is no doubt that an attorney who has created a common fund for the benefit of the
23   class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v.*
24   *Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (cleaned up). Plaintiff requests $28,098.29 in
25   litigation costs and $8,500 in settlement administration costs. (Dkt. No. 45- at 23; Dkt. No. 47-2 at

---

[2] Gross Settlement amount ($5,250,000) minus litigation costs ($28,098.29) minus the PAGA allocation to the LWDA ($550,000) minus Plaintiff's service award ($5,000) minus settlement administration costs ($8,500).

15

¶ 56; Dkt. No. 46 at ¶ 18.) These costs are all well documented and reasonable. (*Id*.) Accordingly, the Court awards $36,598.29 in combined litigation and settlement administration costs.

### C.  Class Representative Incentive Awards

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). However, the decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Although incentive awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id*. at 960 (internal quotation marks and citation omitted). Thus, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

In determining whether an incentive award is reasonable, courts generally consider:

> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Covillo v. Specialtys Café*, No. C–11–00594-DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to

16

1  justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v.*
2  *GMRI, Inc*., 252 F.R.D. 652, 669 (E.D. Cal. 2008). Further, district courts must evaluate each
3  incentive award individually. *See Staton*, 327 F.3d at 977.

4  Plaintiff seeks $35,000 as a service award. Plaintiff attests she has spent at least 120 hours
5  on this case. (Dkt. No. 45-10 at ¶ 43.) While this number appears very high given Plaintiff was
6  not deposed and did not attend the mediation, Plaintiff's declaration attests her participation in the
7  case has caused significant personal difficulties. In particular, Plaintiff has faced professional
8  reputational harm as a result of her participation in this action and has been unable to find
9  employment in the staffing industry. (*Id*. at ¶ 44.) After a year and a half of looking for
10 employment in her industry, and after incurring significant personal debt, Plaintiff moved back
11 home with her parents and took a job at Walmart. (*Id*. at ¶¶ 45-46.) In addition, Plaintiff agreed
12 to a general release of any and all known and unknown claims arising out of their employment or
13 relationship with Defendants including all unknown claims covered by California Civil Code §
14 1542. (Dkt. No. 37-2 at ¶ 80.) Under these circumstances, the Court concludes a service award of
15 $10,000 is reasonable and does not "undermine the adequacy of the class representatives."
16 *Radcliffe v. Experian Info. Sols. Inc*., 715 F.3d 1157, 1163 (9th Cir. 2013).

**CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiff's motion for final approval of the parties' class action settlement. In addition, the Court GRANTS IN PART Plaintiff's motion for attorneys' fees and costs; specifically, the Court awards the following: $1,164,600.43 in attorneys' fees; $28,098.29 in litigation costs; $8,500 in settlement administration costs; and $10,000 for a service award for Plaintiff Paula Norton.

In accordance with the Northern District's Procedural Guidance for Class Action Settlements, "[w]ithin 21 days after the distribution of the settlement funds and payment of attorneys' fees," Class Counsel shall file "a Post-Distribution Accounting" that provides the following, to the extent applicable:

> The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms

17

> submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. Class Counsel shall "summarize this information in an easy-to-read chart that allows for quick comparisons with other cases," and "post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website." *See id*. To the extent the parties agree to a different schedule including a staged process for a motion to approve distribution as discussed at the final approval hearing, they shall file a stipulation with these dates.

This Order disposes of Docket Nos. 45, 47.

**IT IS SO ORDERED.**

Dated: June 12, 2025

JACQUELINE SCOTT CORLEY
United States District Judge